CHRISTOPHER M. KELLER, ESQ.
Nevada Bar No. 7399
**HAWKINS MELENDREZ, P.C.**
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Phone: (702) 318-8800
Fax: (702) 318-8801
ckeller@hawkinsmelendrez.com
*Attorneys for Joleene Altum*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| AMY GRIFFIN, | Case No. 2:26-cv-01811 |
| Plaintiff, | **MOTION TO DISMISS PURSUANT DOCTRINE OF FORUM NON-CONVENIENS; OR, IN THE ALTERNATIVE ABATE OR STAY PURSUANT PRINCIPLES OF COLORADO RIVER** |
| v. | |
| JOLEENE ALTUM, | |
| Defendant. | |

COMES NOW, Joleene Altum, by and through her attorney of record, CHRISTOPHER M. KELLER, ESQ., of the law firm of HAWKINS MELENDREZ, P.C., and hereby presents the following Motion to Dismiss Pursuant to Doctrine of Forum Non-Conveniens, or in the Alternative Abate or Stay Pursuant Principles of Colorado River:

## I. **INTRODUCTION**

This action is a textbook case of reactive forum shopping, duplicative litigation, and, as a result, it should not proceed in Nevada. Months before Plaintiff Amy Griffin ("Ms. Griffin) filed this later Nevada defamation action, Ms. Altum (hereinafter "Jane Doe" or "Doe") had already filed the first action in Los Angeles Superior Court ("the "California Case" or the "first case") arising from the same nucleus of facts, the same book, the same alleged events, and the same dispute over whether Griffin appropriated Doe's life story and private trauma for publication in the nonfiction memoir, *The Tell*.

That California Case is not peripheral or dormant. It is the primary dispute. Doe sued Griffin, Penguin Random House, and Sam Lansky on March 4, 2026, alleging invasion of privacy and related claims arising from Griffin's bestselling memoir *The Tell* and the public controversy that followed publication, including reporting by *The New York Times* questioning the authenticity of the book and the reliability of drug-induced recovered memories.

On April 13, 2026, Griffin then voluntarily appeared in California, sought affirmative relief there, participated in discovery and motion practice there. On June 15, 2026—rather than filing a compulsory counterclaim in the first-filed California action—Griffin instead filed a demurrer, an anti-SLAPP motion, and this separate Nevada suit.

The facts Griffin now seeks to relitigate in Nevada are the same facts already being litigated in California: (i) Doe alleges that Griffin's memoir recounts-as Griffin's own experience- traumatic events that in fact happened to Doe; (ii) that Griffin and Doe attended the same Amarillo middle school, were in the same grade, and were connected to the same Sadie Hawkins dance; (iii) that Griffin lent Doe "the dress," a focal detail in the book; and (iv)that Doe is the real-life basis for "Claudia." In Doe's California opposition paper- filed on June 29, 2026- Doe submitted numerous declarations from contemporaneous witnesses and schoolmates from Amarillo, along with other supporting evidence, to corroborate that she is in fact the basis for the character "Claudia" and that the central rape scenes described in *The Tell* happened to Doe, not Griffin. [*RJN* Ex. 4-7].

The California action therefore already presents the broader, first-filed controversy, while this Nevada case functions as a later-filed fragment of that same dispute. Griffin's choice to sue here, after litigating in California and as adverse rulings loom there, is exactly the kind of tactical forum shopping that strips a plaintiff's forum choice of its usual deference and justifies dismissal under the doctrine of forum non conveniens.

At minimum, because the California action is first-filed, more comprehensive, and capable of resolving the same core factual and legal issues, this Court should stay this action under Colorado River and its progeny to avoid piecemeal litigation, inconsistent rulings, and unnecessary duplication of judicial and party resources.

For these main reasons, and the reasons stated therein, Griffin's Complaint for Defamation ("The Complaint") should be: (1) denied pursuant the doctrine of forum non-conveniens; or, in the alternative (2) be abated or stayed under the principles of Colorado River and its progeny. Without

HAWKINS MELENDREZ, P.C.
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

such relief, duplication of the same facts and legal theories will follow, wasting judicial and party resources, risking inconsistent rulings, and rewarding forum shopping.

## II. RELEVANT PROCEDURAL BACKGROUND

1.      On March 4, 2026, Plaintiff Jane Doe filed a Complaint against Amy Griffin, Penguin Random House, and Sam Lansky in the Superior Court of the State of California, County of Los Angeles (the "California Action" or "the lawsuit" or "the prior lawsuit". The Complaint alleges invasion of privacy and related claims arising out of the best-selling memoir *The Tell* and a *New York Times* investigation into the book's authenticity. *The Tell* centers on Griffin's account of how-while hallucinating on MDMA (commonly known as "tripping" or "rolling"), she recovered "memories" of being raped by her middle school teacher—memories, Griffin writes, that did not surface until after she ingested the drug. The California Action alleges, *inter alia*, that the book's depiction of central rape scenes disclosed the private facts of Jane Doe, who was Griffin's classmate in the same grade at the time of the underlying events occurred. [*RJN;* Ex. 1].

2.      On April 13, 2026, Griffin, of her own volition, <u>consented to California jurisdiction by filing an *ex parte* application to expedite discovery</u>, seeking to compel evidence from Jane Doe prior to being served in the action. The *ex parte* application was denied.

3.      On April 14, 2026, Griffin served discovery on Jane Doe.

4.      On April 24, 2026, Doe served discovery on Griffin.

5.      Over the following six weeks, the parties engaged in extensive motion practice, including motions to compel, motions for sanctions, numerous *ex parte* applications, and multiple proceedings before Court.

6.      On June 1, 2026 Penguin Random House filed its Answer to the Complaint, consisting of denials on fifty grounds and asserting no counterclaims. [*RJN;* Ex. 2].

7.      On June 15, 2026, Griffin's response to the Complaint was due. On that date, Griffin filed a Demurrer and an Anti-SLAPP Motion pursuant to Code of Civil Procedure section 425.16. Also on June 15, 2026, Penguin Random House filed its own Anti-SLAPP Motion. *See Generally* [*RJN;* Ex. 3-7].

8.      On June 15, 2026, Griffin filed a defamation action against Doe (Joleene Altum) in the United States District Court for the District of Nevada, Case No. 2:26-cv-01811. The Nevada action overlaps substantially in facts and legal issues with the California Action, as both arise from

HAWKINS MELENDREZ, P.C.
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

the events underlying *The Tell* in Amarillo, Texas, and the circumstances surrounding the book's creation. [*RJN;* Ex. 1-6].

9.    On June 29, 2026, Doe filed her Opposition to Griffin's Anti-SLAPP Motion, her Opposition to Penguin's Anti-SLAPP Motion, and her Opposition to Griffin's Demurrer. Within said motions is evidence of contemporaneous witness and documents that establish that Doe is the character on which "Claudia" is based and the that the central rape scenes in the book- which include a rape at the Sadie Hawkins dance and violent rape in middle school bathroom- actually occurred to Doe. [*RJN;* Ex. 1].

10.    All motions are currently pending. The hearing on the Anti-SLAPP Motions and Demurrer is scheduled for July 23, 2026.

## III. LEGAL STANDARDS

### A. Doctrine of Forum of Non-Convenience

The Supreme Court in Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp. (2007) outlines the Doctrine of Forum Non-Convenience, stating:

"A federal court has discretion to dismiss a case on the ground of *forum non conveniens* "when an alternative forum has jurisdiction to hear [the] case, and ... trial in the chosen forum would establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or ... the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *American Dredging Co. v. Miller,* 510 U.S. 443, 447–448, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), in turn quoting *Koster v. (American) Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)). Dismissal for *forum non conveniens* reflects a court's assessment of a "range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 723, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (citations omitted). We have characterized *forum non conveniens* as, essentially, "a supervening venue provision, permitting displacement of the

HAWKINS MELENDREZ, P.C.
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

**HAWKINS MELENDREZ, P.C.**
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." *430 American Dredging, 510 U.S., at 453, 114 S.Ct. 981; cf. In re Papandreou, 139 F.3d, at 255 (forum non conveniens "involves a deliberate abstention from the Exercise of jurisdiction").

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp*. (2007) 549 U.S. 422, 429–430 [127 S.Ct. 1184, 1190, 167 L.Ed.2d 15]

### B. Abstention and the Colorado River Doctrine

In *California ex rel. Bonta v. Exxon Mobil Corporation,* the Court outlines the grounds when it is proper for a federal court to abstain to state court proceedings, stating in pertinent part:

"The *Colorado River* doctrine provides that, in rare cases, **"there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts."** *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). "In the interest of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,' a district court can dismiss or stay 'a federal suit due to the presence of a concurrent state proceeding.'" *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1202 (9th Cir. 2021) (quoting *Colorado River*, 424 U.S. at 817–18). "The instances in which a court can stay an action pursuant to *Colorado River* 'are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist.' " *Id.* (quoting *Colorado River,* 424 U.S. at 817-18.)"

*California ex rel. Bonta v. Exxon Mobil Corporation* (N.D. Cal., Feb. 24, 2025, No. 3:24-CV-07288-RS) 2025 WL 595267, at *3–4 (emphasis added)

### C. Forum Shopping

The court states in *Williams v. WinCo Foods*, that the inference of forum shopping alters the weight given to plaintiff's choice of forum, stating in pertinent part.

**HAWKINS MELENDREZ, P.C.**
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

"[T]he general rule is that a plaintiff's choice of forum is afforded substantial weight [ ]" in determining whether transfer is "in the interests of justice." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). However, "[i]f there is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference." Id.; *see also LegalForce, Inc. v. Legalzoom.com, Inc.*, 2018 WL 6179319, at *3 (C.D. Cal. Nov. 27, 2018) ("A key 'interest of justice' factor is the prevention of forum shopping."). Concerns for forum shopping "'are potentially present when a plaintiff pursues litigation outside his home district.' *Meza v. Procter & Gamble Company* (C.D. Cal., Apr. 27, 2023, No. EDCV 23-91 JGB (SHKX)) 2023 WL 3267861, at *3… "Even then, the burden, albeit a lighter one, remains on the moving party to demonstrate that the combined concerns of convenience and the interest of justice are sufficiently strong to tip the balance in favor of the transfer." *Id.* (citing *Mayer v. Dev. Corp. of Am.,* 396 F.Supp. 917, 932 n. 26 (D.Del.1975)).

*Williams v. WinCo Foods*, LLC (E.D. Cal., Jan. 10, 2013, No. 2:12-CV-02690-KJM) 2013 WL 211246, at *3

### D. First to File

Although not directly applicable to the present case- because the original filing is in state court, The Court in *Marietta Drapery & Window Coverings Co., Inc. v. North River Ins. Co.*, explains the rationale behind first to file rule:

"The first-filed rule, upon which Defendants' Motion to Dismiss is predicated, is, in essence, a rule of venue. *E.g., Northwest Airlines, Inc. v. American Airlines, Inc.,* 989 F.2d 1002, 1006 (8th Cir.1993) (stating that "the 'first-filed' rule ... gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction."); *Kytel Intern. Group, Inc. v. Rent A Center, Inc.,* 43 Fed.Appx. 420, 421 (2d Cir.2002) (unpublished decision) ("The first filed rule, a change of venue principle, permits the transfer or dismissal of subsequently commenced litigation involving the same parties and the same issues when both suits are pending in federal courts."). Because a dismissal under

**HAWKINS MELENDREZ, P.C.**
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

the first filed rule is not a determination of the merits, *cf. Sinochem,* 127 S.Ct. at 1190–92 (explaining that doctrine of *forum non conveniens* is "a supervening venue provision" which constitutes a "non-merits ground for dismissal" (internal quotations omitted)), the Court need not establish that it has subject matter jurisdiction over this action before proceeding to consider whether the first filed rule should be applied in this case. *Id.* at 1191–92."

*Marietta Drapery & Window Coverings Co., Inc. v. North River Ins. Co.* (N.D. Ga. 2007) 486 F.Supp.2d 1366, 1368

## IV. ARGUMENT

### A. THE CASE SHOULD BE DISMISSED ON GROUNDS OF FORUM NON CONVENIES

#### 1. Forum Non-Conveniens Doctrine Rule

The forum non conveniens doctrine provides that a court selected by the claimant will not hear a cause of action if the court is an "inappropriate" forum. A trial court enjoys substantial discretion to determine whether it is an appropriate forum for a case, but that discretion is qualified by some important requirements.

Forum non-convenience shares some characteristics with jurisdiction and venue, but operates independently of those requirements. Thus, even if a plaintiff has chosen a court that enjoys personal jurisdiction, subject matter jurisdiction, and satisfactory venue, the court may refuse to hear the case if it determines that the court is the inappropriate forum. *Sinochem Intern. Co. Ltd. V. Malaysia Intern Shipping Corp.*, 549 U.S. 422, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) (" A district court…may dispose of an action by a forum non conveniens dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warranted." *American Dredging Co. v. Miller,* 510 U.S. 443, 453, 114 S. Ct. 981, 127 L. Ed. 2d 285(1994)( Forum non conveniens is "a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trail court thinks that jurisdiction ought to be declined."

Although the authority of a federal district court to dismiss on the ground of forum non conveniens is not expressly recognized in the Federal Rule of Civil Procedure, it is nevertheless settled that Court may draw upon their inherent power to employ the remedy in the appropriate situations. *Dietz v. Bouldin*. U.S. S. Ct. 1885, 195 L.Ed. 2d. 161 (2016) (noting also that the use of forum non conveniens is consistent with Rule 1 mandate to seek just, speedy, and inexpensive resolution of disputes.)

An important limit on a trial's court discretion to dismiss based on forum non conveniens grounds arises from the requirement that, before the court employs its discretion in the matter, it must first determine that an adequate alternative forum exists. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506-507, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)(hereinafter "Gulf") (Forum non conveniens…presupposes at least two forums in which the defendable is amendable process."

Generally the court will give substantial deference to a plaintiffs choice of forum. Gulf at 508. Thus for a defendant to prevail on a forum of conveniens motion the defendant must demonstrate the plaintiffs forum was significantly inappropriate. Two such exceptions to this general rule include when 1) when plaintiff is forum shopping and 2) when there are identical suits in different venues. *Ranza v. Nike, Inc*. 793 F.3d 1059 (9th Cir. 2015); *Research Automation, Inc. v. Sharder-Bridegport International*, Inc., 626 F.3d 973, 979 (7th Cir. 2010)

Once a trial court has identifies an adequate alternative forum in which the defendants will be subject to jurisdiction, it is authorized to weigh, on a case by case basis, the important factors of public and private interest in determining whether to grants defendant's motion.

The public interest facts include: (1) having local disputes settled locally; (2) avoiding problems of applying foreign law; and (3) avoiding burdening jurors with cases that have no impact on their community. *Alfadda v. Fenn*, 159 F.3d 41. 46 (2d Cir. 1998)(citing Piper Aircraft and Gulf Oil).

Private interest factors include: (1): ease of access to evidence; (2) the cost of witnesses to attend trial; (3) the availability of compulsory process; and (4) other factors that might shorten trial or make it less expensive. *Alfadda v. Fenn*, 159 F.3d 41. 46 (2d Cir. 1998)(citing Piper Aircraft and Gulf Oil).

Moreover the Court may apply the doctrine of Forum non conveniens sua sponte if, for example, the convenes of non-party witnesses was an important issue. Moreover, given that Courts

may only transfer- via 28 U.S.C. §1404- to other district Courts, the only remedy available to if the appropriate forum is to a  non district court (i.e. something outside the United States) is dismissal.

## 2. **Application of Forum Non-Conveniens To Present Case**

a. *Adequate Alternative Forum.* An adequate alternative forum exists because the California action is already pending and both Griffin and Doe have submitted to California jurisdiction. California can fully adjudicate the dispute, including Doe's privacy claims and Griffin's defamation theories, and no evidence suggests that California lacks jurisdiction over the parties or the controversy. The threshold requirement under Gulf is therefore satisfied.

b. *Deference to Plaintiff's Choice of Forum and Applicable Exceptions.* Although Courts ordinarily afford substantial deference to a plaintiff's chosen forum, that deference diminishes here because Griffin's Nevada filing constitutes forum shopping[1] and because the Nevada action overlaps almost entirely with the earlier-filed California case.

Here, Griffin filed the Nevada action only after the California case had been pending for several months and after she had already litigated in California, rendering the Nevada suit reactive rather than an independently chosen forum.  The overlap between the two actions is so extensive that Griffin's Nevada claim functions as a compulsory counterclaim to the California action. Pochiro v. Prudential Ins. Co. of America (9th Cir. 1987) 827 F.2d 1246, 1249 [9 Fed.R.Serv.3d 266, 1987 WL 1641322]("The question whether the Pochiros' claims are compulsory counterclaims which should have been pleaded in the earlier Prudential state court action is a question of state law").

Here, California Civil Procedure § 426.30 governs compulsory counterclaims. The compulsory cross-complaint statute is designed to prevent "piecemeal litigation." (*Carroll v. Import Motors, Inc.* (1995) 33 Cal.App.4th 1429, 1436, 39 Cal.Rptr.2d 791.) In discussing the legislative

---

[1]   Griffin's Nevada filing is precisely the kind of reactive, tactical forum shopping that courts give little deference. The California action was filed first, Griffin already appeared and litigated there, and she then filed the Nevada suit only after the California case had progressed and the same underlying facts were already being litigated, including the parties' competing claims over *The Tell* and Doe's identity as "Claudia." That sequence strongly suggests Griffin chose Nevada not because it was the natural forum, but because it was a more favorable one for a duplicative defamation suit outside the first-filed California case. Courts recognize that when a party chooses a forum for strategic advantage rather than genuine convenience, the choice receives little deference. Again, Griffin has fragmented her compulsory counterclaim in California into a duplicative lawsuit in Nevada. If the case were to proceed there is high likelihood of inconsistent rulings and duplicative proceedings, unnecessarily and vexatiously multiplying litigation costs for litigations, witness, and jurors.

HAWKINS MELENDREZ, P.C.
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

HAWKINS MELENDREZ, P.C.
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

purpose of former section 439, the predecessor of section 426.30, the Supreme Court explained that because "[t]he law abhors a multiplicity of actions ... the obvious intent of the Legislature ... was to provide for the settlement, in a single action, of all conflicting claims between the parties arising out of the same transaction. [Citation.] Thus, a party cannot by negligence or design withhold issues and litigate them in successive actions; he may not split his demands or defenses; he may not submit his case in piecemeal fashion. [Citation.]" (*Flickinger v. Swedlow Engineering Co.* (1955) 45 Cal.2d 388, 393, 289 P.2d 214; see also *Clark v. Lesher* (1956) 46 Cal.2d 874, 882, 299 P.2d 865.) In furtherance of this intent of avoiding a multiplicity of actions, numerous cases have held that the compulsory cross-complaint statute—both section 426.30 and its predecessor statute (former section 439)—must be liberally construed to effectuate its purpose. *Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 959 [102 Cal.Rptr.3d 343, 350–351, 30 IER Cases 307, 2009 Daily Journal D.A.R. 16641, 2009 WL 4068600].

Here, dismissal of the Nevada action furthers each of the goals underlying section 426.30 in the following ways:

*First*, dismissal avoids piecemeal litigation because the California action already encompasses the same core dispute over The Tell, Doe's identity as "Claudia," and the parties' competing accounts of the underlying events; adjudicating Griffin's claims separately in Nevada would fracture a single controversy into two proceedings addressing the same facts.

*Second*, dismissal prevents the multiplicity of actions that section 426.30 is designed to foreclose, since Griffin's Nevada claim arises from the identical transaction already before the California court and adds nothing that could not be resolved within that action.

*Third*, dismissal precludes the risk of inconsistent or conflicting rulings, as two courts applying different bodies of law to the same operative facts could reach contrary conclusions on the same factual questions, including the central dispute over Doe's identity and the parties' respective conduct. As such, allowing the Nevada action to proceed would therefore recreate the precise harm section 426.30 exists to prevent: duplicative litigation, wasted judicial resources, and the risk of irreconcilable judgments on a single set of facts.

Moreover, the dismissal of the Nevada action will not deprive Griffin of a forum in which to litigate those claims, since she remains free to raise them as a cross-complaint in the pending California proceeding, where the same evidence, witnesses, and legal theories are already at issue.

HAWKINS MELENDREZ, P.C.
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

c.    *Public Interest Factors*. The public interest factors favor California because the controversy is centered on the California litigation and implicates California privacy and anti-SLAPP law, which California courts are better positioned to apply. California holds the stronger local interest: the parties have already chosen to litigate there, the operative complaint alleges conduct occurring in California, and the California action encompasses the broader set of parties connected to the publication of The Tell. Nevada, by contrast, has little local interest in a dispute arising from a Los Angeles privacy action and a later-filed defensive defamation suit. Retaining the Nevada action would also burden a Nevada jury with a controversy already before a California court.

d.    *Private Interest Factors*. The private interest factors likewise favor dismissal because the key evidence, witnesses, and discovery all trace back to the California action and to the creation and publication of the book, not to Nevada. The California complaint identifies witnesses and evidence connected to Los Angeles, Palm Springs, Amarillo, and the publication process, while the Nevada complaint merely recasts the same underlying events as a defamation claim. California offers the more efficient forum because it can resolve the parties' overlapping factual disputes in a single proceeding, whereas maintaining the Nevada action would require duplicative discovery and risk inconsistent rulings.

## B.    THE CASE SHOULD BE ABATED OR STAYED UNDER COLORADO RIVER

### 1.    Colorado River Rule Statement and Factors

In all circuits, abstention pursuant to *Colorado River* is warranted only if the federal and state proceedings are truly parallel, meaning that resolution of one action will also resolve the other. If so, the federal court will determine whether the following factors weigh in favor of abstention:

1.    Whether the dispute involves property;
2.    The relative convenience of the forums;
3.    Avoidance of piecemeal litigation;
4.    The order in which jurisdiction was obtained;
5.    Governing law (state or federal law); and
6.    The adequacy of the state court action to protect the federal plaintiffs rights.

The Ninth Circuit, like the Third Circuit, applies the *Colorado River* doctrine narrowly, but notes that "[a] general preference for avoiding piecemeal litigation is insufficient to warrant abstention." *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017). The

Ninth Circuit employs an eight-factor analysis to assess whether abstention is proper. Id at 841. Courts in the Ninth Circuit "must stay, rather than dismiss, an action when they determine that they should defer to the state court proceedings under *Colorado River*." *Coopers & Lybrand v. Sun-Diamond Growers of CA*, 912 F.2d 1135, 1138 (9th Cir. 1990) plaintiff's rights.

With respect the "abstention test", Colorado River and its progeny provide a multi-pronged test for determining whether "exceptional circumstances" exist warranting federal abstention from concurrent federal and state proceedings. We evaluate eight factors in assessing the appropriateness of a *Colorado River* stay or dismissal:

(1) which court first assumed jurisdiction over any property at stake;

(2) the inconvenience of the federal forum;

(3) the desire to avoid piecemeal litigation;

(4) the order in which the forums obtained jurisdiction;

(5) whether federal law or state law provides the rule of decision on the merits;

(6) whether the state court proceedings can adequately protect the rights of the federal litigants;

(7) the desire to avoid forum shopping; and

(8) whether the state court proceedings will resolve all issues before the federal court. *Id* at 841–42,

These factors are not a "mechanical checklist"; indeed, some may not have any applicability to a case. *Cone Mem'l Hosp.*, 460 U.S. at 16, 103 S.Ct. 927. Rather, as instructed by the Supreme Court, one should examine them in "a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at 21, 103 S.Ct. 927.

**2.    Application of the Ninth Circuit Test**

As stated supra, Colorado River abstention applies where parallel proceedings are substantially similar and the balance of factors favors deference to the state court. The Ninth Circuit considers eight factors, and courts treat any inapplicable factor as neutral. As will shown below: here, seven of the eight factors favor stay, while the one outstanding factor is neutral- neither favoring or disfavoring abstention.

HAWKINS MELENDREZ, P.C.
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

1.    <u>Jurisdiction Over Property</u>. This factor is neutral. Neither the Nevada action nor the California action concerns property, res, or in rem jurisdiction, so this factor supports neither abstention nor retention.

2.    <u>Convenience of the Federal Forum</u>. This factor favors a stay. Nevada does not provide a convenient forum for resolving a dispute centered on California conduct, California witnesses, and California privacy claims that Doe already filed in California. The California court constitutes the more logical forum because the dispute is already pending there and the parties, witnesses, and evidence are concentrated in or connected to California.

3.    <u>Avoidance of Piecemeal Litigation</u>. This factor strongly favors a stay and carries the greatest weight here. Both actions arise from the same underlying events and require the same factual determinations regarding The Tell, Doe's identity as "Claudia," the alleged Palm Springs meeting, and Griffin's publication-related statements. Allowing both cases to proceed risks duplicative discovery and inconsistent rulings on identical facts, which is precisely the harm Colorado River exists to prevent.

4.    <u>Order in Which Jurisdiction Was Obtained</u>. This factor favors a stay. Doe filed the California action first, and that action has been pending significantly longer than the Nevada case. The California case is also further advanced, with discovery, motion practice, and a scheduled hearing already underway, while Griffin filed the Nevada case later and in reaction to the California proceeding.

5.    <u>Governing Law</u>. This factor favors a stay. California law governs the key claims in the first-filed action, including privacy-based causes of action that Nevada's legal framework does not recognize in the same form. (Nevada's privacy framework is materially different and narrower.) The California court is therefore better positioned to resolve the merits of the broader controversy, particularly because the anti-SLAPP and privacy issues are already live in that state case.

6.    <u>Adequacy of the State Forum</u>. This factor favors a stay. The California court can fully protect the parties' rights because Griffin is already litigating there and may raise any overlapping claim in that action. California therefore provides an adequate forum both procedurally and substantively, particularly because it recognizes the privacy causes of action directly implicated by this dispute.

7.    <u>Forum Shopping</u>. This factor favors a stay. Griffin's Nevada filing appears reactive because she filed it only after the California case had already been pending and after she had begun

HAWKINS MELENDREZ, P.C.
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

actively litigating there. That sequence supports the inference that Griffin chose Nevada for tactical advantage rather than convenience, which weighs in favor of abstention.

8.    <u>Whether the State Case Will Resolve All Issues.</u> This factor favors a stay. The California action will resolve the core factual and legal issues underlying both cases, including the identity of "Claudia," the alleged use of Doe's life story, and the parties' competing accounts of the relevant events. Griffin's Nevada claim overlaps functionally with the California action and can be raised there as part of the same controversy, so a stay avoids parallel litigation without sacrificing any claim.

Taken together, the factors weigh heavily in favor of a stay. At minimum, the Court should stay the Nevada action pending resolution of the earlier-filed California case, because that forum already addresses the same dispute and remains the only forum positioned to resolve the parties' overlapping claims in a single proceeding.

## C.   GRIFFIN IS FORUM SHOPPING

It is well settled: there is a general policy against forum shopping because it encourages gamesmanship, duplicates proceedings, and wastes resources.  Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas (2013) 571 U.S. 49, 65 [134 S.Ct. 568, 583, 187 L.Ed.2d 487.( "Not only would it be inequitable to allow the plaintiff to fasten its choice of substantive law to the venue transfer, but it would also encourage gamesmanship. Because § 1404(a) should not create or multiply opportunities for forum shopping"); Meza v. Procter & Gamble Company (C.D. Cal., Apr. 27, 2023, No. EDCV 23-91 JGB (SHKX)) 2023 WL 3267861, at *3("However, "[i]f there is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference."; see also LegalForce, Inc. v. Legalzoom.com, Inc., 2018 WL 6179319, at *3 (C.D. Cal. Nov. 27, 2018) ("A key 'interest of justice' factor is the prevention of forum shopping."). Concerns for forum shopping " 'are potentially present when a plaintiff pursues litigation outside his home district.' " LegalForce, 2018 WL 6179319, at *3 (quoting Mitchell v. Deutsche Bank Nat'l Tr. Co., 2015 WL 12867746, at *3 (C.D. Cal. Oct. 29, 2015)). "Forum shopping could [also] reasonably be inferred if the plaintiff files the same or similar case represented by the same law firm in a different district after receiving unfavorable rulings there." Id. (citing Carrera v. First Am. Home Buyers Prot. Co., 2012 WL 13012698, at *6 (C.D. Cal. Jan. 24, 2012)). "[E]vidence of [P]laintiff's attempt to avoid a particular precedent from a particular judge weighs heavily [in favor of transfer] and would often make the transfer of venue proper." Wireless Consumers All., Inc. v. T-Mobile USA,

Inc., 2003 WL 22387598, at *5 (N.D. Cal. Oct. 14, 2003); accord Vital Pharms., Inc. v. Monster Energy Co., 2020 WL 6162796, at *2 (C.D. Cal. Aug. 27, 2020) (Bernal, J.) (finding "sufficient evidence" to infer that the plaintiff was forum shopping based on litigation activity indicating that it was seeking to avoid unfavorable rulings in another district). Meza v. Procter & Gamble Company (C.D. Cal., Apr. 27, 2023, No. EDCV 23-91 JGB (SHKX)) 2023 WL 3267861, at *3.

Here, multiple circumstances indicate that Griffin's Nevada suit is forum shopping. First, Griffin fractured a single controversy into overlapping proceedings by pursuing in Nevada what is, in substance, the same dispute already being litigated in the first-filed California action. Second, she chose to litigate outside her home district and did so through the same law firm that first appeared for her in California. Third, the sequence of events suggests a tactical effort to avoid an impending anti-SLAPP ruling, to sidestep California authority governing the privacy torts at the center of the first-filed case, including publication of private facts and false light, and to evade the discovery stay imposed by Code of Civil Procedure section 425.16, subdivision (g). Under those circumstances, Griffin's choice of Nevada is entitled to little deference because it appears aimed at securing procedural and substantive advantages unavailable in the forum where the dispute was first brought.

The procedural history reinforces that conclusion. The California action was filed first, Griffin voluntarily appeared there, engaged in discovery and motion practice, and then filed this Nevada action only after the California court was already adjudicating the same underlying controversy. In that posture, the Nevada filing appears reactive rather than organic. Where a party files a later, overlapping action in a different forum after substantial activity has already occurred in the first-filed case, the choice of the second forum is entitled to reduced weight.

Accordingly, the procedural facts, when taken all together, lead to the inference Griffin is forum shopping.

DATED this 6th day of July 2026.

**HAWKINS MELENDREZ, P.C.**

*/s/ Christopher M. Keller*
CHRISTOPHER M. KELLER, ESQ.
Nevada Bar No. 7399
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
*Attorneys for Joleene Altum*

HAWKINS MELENDREZ, P.C.
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rules of Civil Procedure 5(b), I hereby certify that on the 6th day of July 2026, I served a true and correct copy of the foregoing **NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT DOCTRINE OF FORUM NON-CONVENIENS; OR, IN THE ALTERNATIVE ABATE OR STAY PURSUANT PRINCIPLES OF COLORADO RIVER** by electronically filing and served upon all parties and counsel of record appearing on the Court's electronic service list through the Court's electronic filing and service system.

/s/ Donna Simpson
An employee of Hawkins Melendrez, P.C.

**HAWKINS MELENDREZ, P.C.**
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801