# EXHIBIT 6

**MARTORELL LAW APC**
Eduardo Martorell, State Bar No. 240027
EMartorell@Martorell-Law.com
Christopher A. Rosario, State Bar No. 326436
CRosario@Martorell-Law.com
222 Pacific Coast Hwy N, Suite 1130
El Segundo, CA 90045
Tel: (323) 840-1200; Fax: (323) 840-1300

**Zach Rosenblatt (SBN# 345034)**
**ZSR LAW**
406 Broadway, #125
Santa Monica CA 90401
Telephone: (310)-529-1213
Email: zachsrosenblatt@gmail.com

Attorneys for Plaintiff,
JANE DOE

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/29/2026 11:49 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Lopez, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br><br>    v.<br><br>AMY GRIFFIN, AN INDIVIDUAL; SAM LANSKY, AN INDIVIDUAL; PENGUIN RANDOM HOUSE, LLC; DIAL PRESS; DOES 1-50; ROE CORPORATIONS 1-50,<br><br>    Defendants. | Case No. 26STCV07012<br><br>Assigned for All Purposes to<br>Hon. Richard L. Fruin, Dept. 307<br><br>**JANE DOE'S DECLARATION IN SUPPORT OF OPPOSITION TO DEFENDANT'S *ANTI-SLAPP MOTION***<br><br>Hearing Date:  July 13, 2026<br>Time:          8:30 a.m.<br>Dept.:         307<br><br>Action Filed:  March 4, 2026<br>Trial Date:    Not Set |

DECLARATION OF JANE DOE

*MARTORELL LAW APC*
*Litigation & Trial Counsel*

MARTORELL LAW APC
Litigation & Trial Counsel

## DECLARATION OF JANE DOE

I, Jane Doe, declare as follows:

### Background and Relationship with Amy Griffin

1.    I am the plaintiff in this action. I am over the age of 18 and competent to testify. I make this declaration based on my personal knowledge. I write this declaration in opposition to Defendant's anti-SLAPP Motion.

2.    I have blonde hair, blue eyes, and, when in middle school, I had blunt cut bangs. I currently reside in Nevada and was a resident of California when the more recent events relevant to my complaint occurred. I grew up in Amarillo, Texas, where, as a child, I lived in the Presbyterian Children's Home, a group home for abused and neglected children (alternatively, hereinafter the "Children's Home"). Attached hereto as "**Exhibit 1**" are records from the children home.

3.    While living at the Presbyterian Children's Home, I attended Stephen F. Austin Middle School in Amarillo.  I took a white bus to school.  During that time, I knew Amy Griffin (formerly Amy Mitchell).  We were classmates at Stephen F. Austin at the same school, and in the same grade.

4.    As a child, I came from a background of abuse and instability.  I was one of the very few girls at Stephen F. Austin Middle School who lived in a group home.  By contrast, Amy came from one of the most prominent and wealthy families in Amarillo.

5.    After middle school, I had no meaningful contact with Amy Griffin for decades.  I did not socialize with her in adulthood, and I had no involvement in her later life, career, or philanthropy.

6.    I have never sought media attention or tried to make my childhood sexual abuse public.  Before the events described below, I had never spoken publicly about what happened to me at Stephen F. Austin Middle School.

### The 8th Sadie Hawkins Dance (or "Austin Middle School Dance") and Assault

7.    When I was approximately 12 or 13 years old, in or around 1988 or 1989, Stephen F. Austin Middle School held a Sadie Hawkins or similar school dance. I was living at the Presbyterian Children's Home at the time. **Exhibit 1**.

8.    Before that dance, I borrowed a dress from Amy Griffin. The dress was "puffy" and decorated with flowers – it was pink and had pastel colors.  I remember feeling excited and grateful that Amy was willing to lend me one of her dresses, because I did not have many nice clothes of my

own. The rules at the children's home were that you had to wear clothes from the basement (where clothing was stored), you couldn't borrow clothes from other children.

9. I attended the dance wearing that floral, puffy dress. I went to the dance with my friend William Bryan Jennings, who was also living at the Presbyterian Children's Home. We carpooled together to the event.

10. During the dance, one of the male teachers at Stephen F. Austin Middle School summoned me and led me away from the main dance area. I followed him, believing he was a trusted adult.

11. The teacher took me to a more secluded area away from the main crowd, to a closet or supply room off the dance area. While we were alone there, he sexually assaulted me. During the assault, my dress and hair became disheveled, and my dress was soiled by what I understood to be bodily fluids.

12. After the assault, the teacher and I returned to the dance area. I remember feeling ashamed, confused, and terrified. I was aware that other students had seen me leave with the teacher and then return with my hair and clothes out of place.

13. When the dance ended and we were waiting for a ride back to the Presbyterian Children's Home, Bryan asked me what had happened when I left the dance with the teacher. Although I did not describe every detail, I told Bryan that there had been sexual contact between the teacher and me.

14. A short time after the dance, I confirmed to Bryan, in a more private conversation, that I had sexual relations or sexual contact with the teacher at that dance. I believed at the time that some of our classmates also suspected that something sexual had occurred between me and the teacher.

15. Soon after the dance, at or before a church youth group meeting that I attended, I returned the borrowed floral dress. I returned the dress in a plastic bag, as described in the Tell. Before I returned dress, I tried to remove the stain, but it did not work. The dress was still stained from the assault. I was extremely embarrassed and ashamed.

16. At that church youth gathering, I remember asking for the Lord's forgiveness because of what had happened with the teacher at the dance. I felt as though I had done something wrong, even though I was a child and he was an adult in a position of authority.

17. I did not report this assault to law enforcement or school officials at the time. I was a scared child living in a group home, and I feared that no one would believe me or that I would be punished.

MARTORELL LAW APC
Litigation & Trial Counsel

**Violent Assault in the School Bathroom**

18.     After the dance, when I was still a student at Stephen F. Austin Middle School, the same teacher sexually assaulted me again, this time in a school bathroom. This teacher was <u>not</u> ███ ███ – the teacher depicted as Mr. Mason in "the Tell".

19.     During this second assault, the teacher pushed me to the floor and put his boot on my back. He stuffed a bandana into my mouth, which caught on my braces. He slammed me against the wall and struck me with a belt. I was terrified and in pain. This assault was more brutal and violent because I think he wanted to make sure I would not tell anyone anything further after I had asked for the Lord's forgiveness at the church youth gathering.

20.     Once again, I did not report this assault to any authorities. I was only around 12 years old, living in a children's home, and I felt powerless and afraid that no one would help me or that I would be blamed.

21.     The details of these assaults – including the borrowed floral dress for a school dance, the teacher taking me away from the dance floor, my disheveled return, the soiled dress, and the later bathroom assault involving a boot on my back, a bandanna in my mouth, and a belt – are events that truly happened to me when I was a child.

**Privacy and Limited Disclosures**

22.     For many years after these assaults, I did not speak about these events. I carried the memories privately and tried to move on with my life.

23.     Over the decades, I confided in only a small number of trusted people about what happened to me as a child, including at least one family member and, at different times, mental-health professionals. I also disclosed them to other sexual assault victims, in confidential settings, when I worked in California at a center to help sexual assault victims. I did not disclose my story to the media or in any public forum.

24.     Until I learned of Amy Griffin's book *The Tell*, I had never authorized anyone to publish or commercially exploit my life story or my childhood sexual assaults. I had never signed any contract granting "life rights" or similar rights to any person, publisher, or producer.

25.     I considered the details of these assaults to be among the most private and painful facts of my life. I never intended for them to be shared with the public, and I relied on the confidentiality of my limited disclosures to therapists or close confidants.

DECLARATION OF JANE DOE

**Palm Springs Meeting with Amy Griffin**

26.    In or around late 2019, while I was living in Morongo Valley, California, I received a phone call from Amy Griffin. I believe the phone call was from a private number. She reminded me that we had known each other growing up in Amarillo

27.    Amy told me that she was in the Palm Springs area and suggested that we meet for coffee. We agreed to meet at a boutique coffee shop located of Palm Springs, California. When we met at the coffee shop, we talked about our memories of growing up in Amarillo. We discussed our shared fondness for Taco Villa, a local restaurant we both remembered from childhood. During this meeting, Amy described her involvement in a female business networking group and her support for women-owned businesses. She referred to herself as a "girlboss" and told me she considered me a "girlboss" as well. I told her I was working as a cleaning lady. She encouraged me to get a business licensed and insured. Upon that advice I got insurance and a license. Attached hereto as" **Exhibit 2**"is a true and correct copy of that "insurance."

28.    At no point during our conversation did Amy tell me that she believed she had been sexually abused by a teacher at our middle school. She did not mention any "repressed memories," MDMA-assisted therapy, or any investigation into past abuse.

29.    I did not discuss my own childhood sexual assaults with Amy at this meeting. I did not tell her that I had been assaulted by a teacher at Stephen F. Austin Middle School, nor did I share details about the Sadie Hawkins dance, the soiled floral dress, or the bathroom assault. Although, since she lent me the dress that was soiled and was at the Sadie Hawkins dance, she most certainly could have already known from childhood.

30.    Near the end of our meeting, Amy purchased two postcards that were for sale near the cashier. She suggested that we mail each other postcards to keep in touch. We each wrote our mailing address on a postcard and exchanged them. The postcard Amy gave me showed a statue of two children playing in a park in Palm Springs.

31.    A few days later, I wrote a brief message on the postcard I had addressed to Amy, relating to a childhood saying. I then mailed it. To my knowledge, I never received any postcard in return from Amy. After this meeting and postcard exchange, I did not have further contact with her. I understood this Palm Springs meeting to be a personal reconnection with someone from my past. I was not told that Amy was gathering information for a book, for an investigation into alleged abuse, or for any other commercial project.

MARTORELL LAW APC
Litigation & Trial Counsel

5

DECLARATION OF JANE DOE

**Calls from "Dominique" Posing as a Talent Agent**

32.    In or about April 2022, I received a phone call from a man who introduced himself as "Dominique." He told me he was a talent agent or producer and said he had heard from someone that I had led an unusual and interesting life that could be the basis for a book or film.

33.    Dominique – who is DOE 1, because I don't know if that's his real name or if he was just using that name – called me from telephone number 774-314-1449. Later, I wrote his name and this phone number down on a piece of paper so that I would have a record of it. When I received the phone call I was taking handwritten minute notes for Phin City Parrot Head club (a social club I had from 2020 to 2026). So when I got the call, I flipped the notebook pages forward a few pages and wrote his number on the side. I kept taking minute notes in that notebook moving forward. So the date on the page where Dominiques number is written sideways is not the same date as the other minute notes on that page.

34.    The person calling himself Dominique told me he was interested in developing my life story for commercial purposes. He said things like that my story could be turned into a movie or other entertainment project and that I could potentially be compensated for granting rights to my life story.

35.    Over the course of approximately a month, Dominique called me several times per week. During these calls, he asked detailed questions about my life, including my childhood in Amarillo, my time in the Presbyterian Children's Home, and traumatic events that had happened to me.

36.    In response to Dominique's questions, I told him, among other things, about being sexually assaulted by a teacher at Stephen F. Austin Middle School. I described the school dance where I wore a floral, puffy dress that I had borrowed from Amy, how the teacher took me away from the dance floor, how the dress became soiled during the assault, and how I later returned the stained dress. I also described the later bathroom assault involving the teacher's boot on my back, the bandana in my mouth, and being hit with a belt.

37.    Dominique told me that my life story was my "intellectual property" and that any deal would involve me granting exclusive rights to my story. He asked me questions about whether anyone else had the right to my story and suggested that I would need to warrant that I had the legal right to convey those rights.

38.    Dominique instructed me to keep our conversations confidential and not to speak with others about the potential project. I understood from him that our discussions were preliminary and

MARTORELL LAW APC
Litigation & Trial Counsel

6
DECLARATION OF JANE DOE

MARTORELL LAW APC
Litigation & Trial Counsel

that my story would not be used unless and until I signed a formal contract and agreed to specific compensation.

39.    After several weeks of calls, Dominique told me that a female associate would contact me to schedule an in-person meeting in Los Angeles with producers or directors to discuss a potential movie based on my life.

40.    Shortly thereafter, a woman called me and said she was working with Dominique. This is DOE 2 in the complaint, named "Robbie Banks". She told me that they wanted me to come to Los Angeles for a meeting where we would discuss the project further and that they would have a contract for me to review regarding the use of my life story and compensation.

45.    Before agreeing to travel to Los Angeles, I consulted an attorney. Based on his advice, I decided to conduct my own research into Dominique and his associate. I was unable to locate credible information showing that they had experience or credentials in producing films or books. When I asked the female associate detailed questions about their backgrounds and requested to see a draft contract in advance, she became defensive and abruptly ended the call.

46.    After that call, Dominique and his associate stopped calling me. There was no meeting in Los Angeles, and I never received any contract. My understanding at that time was that the potential project had simply fallen through.

47.    At no time did Dominique or his associate tell me that they were working for or with Amy Griffin, Sam Lansky, Penguin Random House, Dial Press, or any publisher. I was never told that my conversations were being recorded or transcribed, or that the information I shared about my childhood sexual assaults might be used in someone else's memoir.

48.    I would not have shared these intimate details of my life if I had known that they were being collected for use in Amy Griffin's book or for any project that would expose my private trauma without my knowledge and consent.

### Discovery of *The Tell* and Overlap with My Life

49.    In 2025, I was contacted by a reporter from The New York Times. The reporter told me that she was working on a story about Amy Griffin and Amy's memoir, *The Tell*. Until that call, I was unaware that Amy had written a book and had never heard of *The Tell*.

50.    After speaking with the reporter, I obtained a copy of *The Tell* and also listened to an audio version. As I read and listened, I became increasingly disturbed because many of the events described in the book as Amy's "recovered memories" matched traumatic events that had actually happened to me.

51.     In *The Tell*, Amy writes about a middle-school dance where she wore a borrowed dress and was raped by a teacher in a classroom. She describes the dress as frilly and the assault occurring at an evening school dance in eighth grade. She writes that the dress was pulled up over her head while she was bent over a desk and that she felt the weight of the dress blotting out the light.

52.     Although some details are changed, I recognized that this scene closely mirrors my own experience at the Sadie Hawkins dance: wearing a floral, puffy dress borrowed from Amy, being led away from the dance by a teacher, being sexually assaulted in a secluded area, and then returning to the dance disheveled and ashamed.

53.     In *The Tell*, Amy also writes about being violently assaulted by a teacher in the middle-school bathroom, describing being thrown to the floor, having her hands restrained, being hit, and suffering a traumatic, painful attack. I recognized this description as closely resembling the second assault I experienced in the school bathroom, when the teacher put his boot on my back, stuffed a bandanna in my mouth, slammed me against the wall, and hit me with a belt.

54.     The book further describes a classmate given the pseudonym "Claudia," who grew up in a difficult and unstable environment and who was on the margins of the social circle at our school . That description fits my own background as a girl living in the Presbyterian Children's Home who struggled for acceptance among more privileged classmates like Amy.

55.     Amy writes that "Claudia" borrowed a dress from her for a dance and later returned the dress, and that Amy felt a special connection between Claudia, the dress, and the teacher she calls "Mr. Mason." I immediately recognized this as referring to the floral, puffy dress I borrowed from Amy for the Sadie Hawkins dance and then returned to her afterward, stained from the assault.

56.     In *The Tell*, Amy also describes eventually tracking down "Claudia" decades later, meeting her at a coffee shop, and exchanging postcards, and she portrays this meeting as part of Amy's effort to confirm her own memories of abuse. I recognized this as a fictionalized version of our 2019 meeting in a Palm Springs coffee shop, where we talked about Amarillo, Taco Villa, and exchanged postcards with our addresses, as described above.

57.     In the book, Amy writes that "Claudia" spoke with Amy's investigators or lawyers and implies that Claudia was aware of and participated in an investigation into Amy's alleged abuse. I never knowingly spoke with any investigator working for Amy or her lawyers. The only people I spoke with in depth about my life story, outside my personal circle and therapists, were Dominique and his associate, who presented themselves as talent or production people interested in my own life story as a potential film or book.

MARTORELL LAW APC
Litigation & Trial Counsel

MARTORELL LAW APC

58.     After reading *The Tell* and the New York Times article, I understood that the intimate, graphic details of my childhood sexual assaults – including the borrowed floral dress, the school dance, the bathroom assault, my background in a group home, and the later coffee-shop and postcard episode – had been lifted from my life, altered in some ways, and then presented to the world as Amy Griffin's "recovered memories" or as surrounding context involving "Claudia."

59.     I never gave Amy Griffin, Sam Lansky, Penguin Random House, Dial Press, or anyone acting for them permission to use my life story or the details of my childhood sexual assaults in *The Tell* or any other publication. I never agreed that these experiences could be attributed to Amy or used to support her narrative.

### Emotional Distress and Treatment

60.     Learning that my most private and painful childhood trauma had been published in *The Tell* without my knowledge or consent has caused me severe emotional distress.

61.     When I first read *The Tell* and recognized my own experiences described as Amy Griffin's memories, I felt violated, betrayed, and re-traumatized. The sexual assaults I suffered as a child were among the most shameful and difficult experiences of my life.

62.     Seeing these intimate details – the borrowed floral dress, the school dance, the bathroom assault, the coffee shop meeting, and other elements from my life – published in a bestselling memoir and promoted in major media has reopened psychological wounds. I have sought treatment from mental health professionals to address the emotional harm caused by the publication of *The Tell*. I continue to experience anxiety, depression, humiliation, and feelings of powerlessness as a result of having my story taken from me and presented to the world without my permission. The unauthorized use of my life story has also caused me to feel unsafe and exposed. My privacy has been invaded, and my trauma has been commodified for the financial benefit of others.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on __29/06/202__ at Las Vegas, Nevada

By: _~~Jane Doe (Jun 29, 2026 16:49:33 PDT)~~_
JANE DOE

9
DECLARATION OF JANE DOE

# EXHIBIT 1

## PHYSICAL DESCRIPTION (at time of admittance)

Height _6 5_ Weight _124_ Complexion _fair_ General build _med._

Color of hair _Blnd._ Color of eyes _Blue_ Prominent features _____

Distinguishing marks or scars _on leftleg - birthmark on inner calf Braces of teeth._

### FOR OFFICE USE ONLY:

Child received in the Home_____, left _____
                          DATE                          DATE

To live with_____, _____
              NAME OF PERSON                    RELATIONSHIP

_____, _____, _____
       STREET              CITY            STATE AND ZIP

PHOTO

## PLACEMENT AGREEMENT WITH CHILD BEING ADMITTED

I understand and agree that I will attend church and Bible Class on Sunday in accordance with the Children's Home Policy and participate in other religious activities planned and/or requested by the Children's Home.

I also agree to attend school and observe study times as prescribed. I will co-operate with the teachers at school and the staff at the Children's Home in order to obtain the best education possible.

I agree to co-operate with my cottage parents and other staff members in doing my assigned chores both in the cottage and on the campus.

I give my consent for the Children's Home to use my picture and/or name for publicity concerning the Children's Home.

I agree to abide by all of the policies of the Children's Home while in residence at the Children's Home.

## CONTRACT AGREEMENT IN PLACEMENT

In consideration that the Presbyterian Home for Children, hereinafter called the Children's Home, does accept full care and custody of _____, I, being the (natural, legal) guardian of said child, do hereby release, relinquish and commit said child to the Children's Home.

I agree that I will in no way interfere with the management or policies of the Children's Home as they pertain to the care, custody and control of herein named child and that I will cooperate and assist to the best of my ability in all decisions made by the Children's Home concerning said child.

I also agree that I understand and will abide by the policies of the Children's Home concerning contact with said child which are as follows:

Parent visitation is scheduled the first and third Sunday afternoons of each month. The only time children are permitted to leave the Children's Home for vacations with parents, sponsors or friends is during the Thanksgiving, Christmas, and/or Easter holidays, and/or two weeks during the summer months, provided previous and proper arrangements have been made. Permission for such vacations shall be granted only if I, or any other person the above named child may visit, do agree not to in any way prevent or delay his/her return to the Children's Home at the end of the designated vacation period. Telephone calls to or from parents should be limited to once a week for a period of five minutes except in unusual circumstances. The said child may send and receive mail while living at the Children's Home.

Such contacts between said child and his/her parents or managing conservator shall be allowed unless the rights of the parents have been terminated by court order or family contact is not in the child's best interest. If restrictions on communications or visits are necessary, these shall be evaluated monthly by a psychiatrist, licensed pshchologist, social worker with a master's degree in social work, or licensed administrator.

I agree to abide by the policies of giving and receiving gifts while said child is in the Children's Home which are as follows:

Children may receive gifts from family and friends while living in the Children's Home. Parents are encouraged to observe birthdays and Christmas with appropriate gifts.

Money may be received as a gift. This should be checked into the child's individual account in the cottage or with the local bank if he/she has an account there.

STUDENT'S NAME ___ LAST ___ FIRST ___ MIDDLE

STUDENT ID NUMBER  34233   ETHNICITY  ANGLO

SOCIAL SECURITY #  _____  F

DATE OF BIRTH  03  27  75   PLACE OF BIRTH  CHILDRENS

PARENTS OR X GUARDIANS NAMES _____
HOME

CURRENT ADDRESS  STREET ___ CITY ___ STATE/ZIP CODE

MOST RECENT FORMER ADDRESS  STREET ___ CITY ___ STATE/ZIP CODE

HOME PHONE ( ) ___ BUSINESS PHONE ( )

SEMS # _____

ACCREDITED WITH TEXAS EDUCATION AGENCY AND SOUTHERN ASSOCIATION

| SCHEDULE | GRADE SCALE | | FOR COURSES DESIGNATED H, C or S |
|---|---|---|---|
| 48 MINUTE PERIODS | A | 90-100 | H  INDICATES HONORS OR ENRICHED COURSE |
| 5 DAY WEEK | B | 80-89 | |
| | C | 75-79 | C  INDICATES BASIC COURSE FOR ACADEMICALLY UNDERDEVELOPED |
| 18 WEEK SEMESTER | D | 70-74 Passing | |
| | F | 0-69 Failing | S  INDICATES SPECIAL EDUCATION COURSE |

## AMARILLO INDEPENDENT SCHOOL DISTRICT
## MIDDLE SCHOOL RECORD

1616 S. Kentucky • Amarillo, Texas 79102 • 806-354-4200

### ENTRANCE AND WITHDRAWAL RECORD

| SCHOOL ENTERED | DATE | SCHOOL LEFT | DATE | CAUSE OF CHANGE | RECORDS SENT | DATE | RECORDS REC'D | DATE | CAUSE OF CHANGE |
|---|---|---|---|---|---|---|---|---|---|
| Austin | 8/3/89 | Austin | 3/3/90 | Berger | Berger | 3/3/90 | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

# EXHIBIT 2

Case 2:26-cv-01811-GMN-DJA   Document 18-5   Filed 07/06/26   Page 15 of 45

# CITY OF PALM SPRINGS BUSINESS LICENSE

3200 E TAHQUITZ CANYON WAY, PALM SPRINGS, CA 92262 (760) 323-8289

PLEASE NOTE THAT IT IS YOUR RESPONSIBILITY TO RENEW AND UPDATE THIS LICENSE ANNUALLY.

BUSINESS NUMBER:  20024219
BUSINESS TYPE:   NANNY/HOUSE CLEANING
OWNER NAME:   ████████████████

BUSINESS NAME:   ██████████LITE SERVICES
BUSINESS ADDRESS:   ████████████████

MORONGO VALLEY, CA 9226

| EXPIRATION | TAX/ADMIN. FEE | CERT NO |
|---|---|---|
| 08/31/2020 | 134.00 | 94492 |
| 08/31/2020 | 21.00 | 94493 |
| 08/31/2020 | 32.00 | 94494 |
| 08/31/2020 | 4.00 | 94495 |

███████ELITE SERVICES
9869 ENCEILA TRL

MORONGO VALLEY          CA          9226

ISSUANCE OF THIS LICENSE DOES NOT ENTITLE THE LICENSEE TO OPERATE OR MAINTAIN A BUSINESS IN VIOLATION OF ANY OTHER LAW OR ORDINANCE.  THIS IS NOT AN ENDORSEMENT OF THE ACTIVITY NOR OF THE APPLICANT'S QUALIFICATIONS.

**MUST BE POSTED IN A CONSPICUOUS PLACE**

10:54    📞 2:46    ••••••••••••    • ▂▃▅ 77

✕    1569082029730_Certificate of...    ⬆



**ACORD®**    ## CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
09/12/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: |
|---|---|
| HANN INSURANCE AGENCY | PHONE (A/C, No, Ext): 760-365-9744    FAX (A/C, No): 760-365-2669 |
| 57380 29 PALMS HWY | E-MAIL ADDRESS: MAIL@HANNINSURANCE.COM |
| YUCCA VALLEY, CA 92284 | PRODUCER CUSTOMER ID #: |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED | INSURER A : CBIC | |
| ▉▉▉▉▉▉ | INSURER B : | |
| | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

**COVERAGES**    **CERTIFICATE NUMBER:**    **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| X | **GENERAL LIABILITY** ✓ COMMERCIAL GENERAL LIABILITY ☐ CLAIMS-MADE ✓ OCCUR | | | C11SM2910 | 08/28/2019 | 08/28/2020 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: ✓ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** ☐ ANY AUTO ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR ☐ EXCESS LIAB ☐ CLAIMS-MADE ☐ DEDUCTIBLE ☐ RETENTION $ | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ Y/N (Mandatory in NH) N/A If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | ☐ WC STATU-TORY LIMITS ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE *Lynzy Kunz* |

© 1988-2009 ACORD CORPORATION. All rights reserved.

ACORD 25 (2009/09)    The ACORD name and logo are registered marks of ACORD

# 06.29.26 Decl Final unsigned

Final Audit Report                                                        2026-06-29

| | |
|---|---|
| Created: | 2026-06-29 |
| By: | Zach Rosenblatt (zachsrosenblatt@gmail.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAoJ7fa5SKOtQE4I1FioYnoAghgqHvjHjK |

## "06.29.26 Decl Final unsigned" History

📄 Document created by Zach Rosenblatt (zachsrosenblatt@gmail.com)
2026-06-29 - 11:43:12 PM GMT

✉️ Document emailed to █████████████████ for signature
2026-06-29 - 11:43:20 PM GMT

📄 Email viewed by ████████████████
2026-06-29 - 11:43:38 PM GMT

✍️ Signer ████████████████ entered name at signing as Jane Doe
2026-06-29 - 11:49:31 PM GMT

✍️ Document e-signed by Jane Doe ████████████████
Signature Date: 2026-06-29 - 11:49:33 PM GMT - Time Source: server - Signature Appearance Selected: MOBILE_DRAW

✅ Agreement completed.
2026-06-29 - 11:49:33 PM GMT

📄 **Adobe Acrobat Sign**

**MARTORELL LAW APC**
Eduardo Martorell, State Bar No. 240027
EMartorell@Martorell-Law.com
Christopher A. Rosario, State Bar No. 326436
CRosario@Martorell-Law.com
Playa District
6100 Center Drive, Suite 1130
Los Angeles, CA 90045
Tel: (323) 840-1200; Fax: (323) 840-1300

**Zach Rosenblatt (SBN# 345034)**
**ZSR LAW**
406 Broadway, #125
Santa Monica CA 90401
Telephone: (310)-529-1213
Email: zachsrosenblatt@gmail.com

Attorneys for Plaintiff,
JANE DOE

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/29/2026 11:49 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Lopez, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>AMY GRIFFIN, AN INDIVIDUAL; SAM LANSKY, AN INDIVIDUAL; PENGUIN RANDOM HOUSE, LLC; DIAL PRESS; DOES 1-50; ROE CORPORATIONS 1-50,<br><br>Defendants. | Case No. 26STCV07012<br><br>Assigned for All Purposes to<br>Hon. Richard L. Fruin, Dept. 307<br><br>**DECLARATION OF PASTOR JODY SHELTON**<br><br>Action Filed:   March 4, 2026<br>Trial Date:   Not Set |

MARTORELL LAW APC

Litigation & Trial Counsel

DECLARATION OF PASTOR JODY SHELTON

## DECLARATION OF PASTOR JODY SHELTON

I, Pastor Jody Shelton, declare as follows:

1.    I have personal and first-hand knowledge of the facts stated in this declaration and if called upon to do so, I could and would competently testify thereto.

2.    I am currently a Pastor at Mount Zion Church, 1525 Scenic Hwy Snellville, GA 30078. I attended Steven F. Austin Middle School in Amarillo, Texas with both Amy Mitchell, now known as Amy Griffin, and the individual identified in this action as Jane Doe. We were all in the same grade. I have a copy of the yearbook.

3.    I have personal knowledge of Jane Doe's appearance and circumstances during our time at Steven F. Austin Middle School. Specifically, Jane Doe has blue eyes and had blunt cut bangs. I was also aware that Jane Doe lived in foster care, as I observed her boarding the white bus that transported foster children back to the group home.

4.    I have reviewed a document that contains the following passage that appears in the book proposal of the book at issue in this litigation, identified as GRIFFIN 001854 (attached hereto as "Exhibit 1" is a true and correct copy of such document):

> "Not everyone at school was so fortunate. There was a girl in my grade named Claudia who had blue eyes and blunt cut bangs. I only realized she lived in foster care when I saw her boarding the big white bus that everyone knew took kids back to the group home."

4.    The description of "Claudia" in the passage above matches Jane Doe in every particular: same school, same grade, blue eyes, blunt cut bangs, and foster care placement as evidenced by boarding the white bus.

5.    Recently, I reviewed the yearbook from our time at Steven F. Austin Middle School. Based on my review of the yearbook, no other student in our grade matches the description of "Claudia" set forth in the passage above. Jane Doe is the only individual who fits that description.

6.    Based on my personal knowledge and my review of the yearbook, it is my belief that the character identified as "Claudia" in the passage above refers to Jane Doe.

7.    To my knowledge there was only one other foster kid, but she did not have blonde hair.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

MARTORELL LAW APC
Litigation & Trial Counsel

2
DECLARATION OF PASTOR JODY SHELTON

Executed on __June 8th__, 2026, at __Monroe, GA_____.

By: __/s/_____
Pastor Jody Shelton

DECLARATION OF PASTOR JODY SHELTON

# EXHIBIT 1

was athletic like me. "But I think I should be the leader." It wasn't a surprise when the presidency went to a boy named ███████.

But on the first day of eighth grade, I got a note to my desk directing me to come to the student council homeroom. It was led by my favorite teacher, who had taught me in █████████ ███████████████ a slim, well-groomed man in his late twenties who always wore cowboy boots. He raised his hands when I entered the room. "Amy's here!" he said brightly to the group. "She has to be part of our homeroom." He paused and looked at me. "She's the real leader of this school." It was nice that he saw the truth of who I was, even if the school couldn't ratify it.

How lucky I was—to live in a nice house on a pretty street where I knew all the neighbors, to be seen as a leader at school, to be the girl who could take her friends to the convenience store in town that my family owned, the business that my grandmother had started a generation earlier, to buy Reese's and Funyons and lemon Gatorade for everyone and put it on the tab, even if my dad always reminded me later that someone had to pay for it.

Not everyone at school was so fortunate. There was a girl in my grade named Claudia who had blue eyes and blunt cut bangs; I only realized she lived in foster care when I saw her boarding the big white bus that everyone knew took kids back to the group home. How sad that would be—to not go home to a family.

A few weeks before Austin Day, the big end-of-year celebratory dance, Claudia mentioned, sheepishly, that she didn't have a dress. "I'll lend you one," I said. "I have two options—a floral dress, and a pink dress. Which one do you want?" It made me so happy to be able to give her the dress: I was excited that she would get to feel special. I thought back to that moment many times over the years—not in a self-congratulatory way, but because it crystallized how my parents had raised me. Above all else, be kind. Make others feel good.

7

GRIFFIN001854

# Declaration of Pastor Jody Shelton v_f, Ex. 1 (5pg)pdf

**Final Audit Report**                                           2026-06-09

| | |
|---|---|
| Created: | 2026-06-09 |
| By: | Zach Rosenblatt (zachsrosenblatt@gmail.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAYHHRAEurRuAI3Xo-tb5O4LHc9dk9zcgm |

## "Declaration of Pastor Jody Shelton v_f, Ex. 1 (5pg)pdf" History

- Document created by Zach Rosenblatt (zachsrosenblatt@gmail.com)
  2026-06-09 - 2:21:10 AM GMT

- Document emailed to ███████████████████ for signature
  2026-06-09 - 2:21:14 AM GMT

- Email viewed by ████████████████
  2026-06-09 - 2:23:50 AM GMT

- Signer ████████████████ entered name at signing as Jody Kent Shelton
  2026-06-09 - 2:29:54 AM GMT

- Document e-signed by Jody Kent Shelton ██████████████████
  Signature Date: 2026-06-09 - 2:29:56 AM GMT - Time Source: server - Signature Appearance Selected: MOBILE_DRAW

- Agreement completed.
  2026-06-09 - 2:29:56 AM GMT

**Adobe Acrobat Sign**

Zach Rosenblatt (SNB# 345034)
**ZSR LAW**
406 Broadway, #125
Santa Monica CA 90401
Telephone: (310)-529-1213
Email: zachsrosenblatt@gmail.com
Attorney for JOLEEN ALTUM

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/30/2026 9:04 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Lopez, Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA,

## COUNTY OF LOS ANGELES

| | |
|---|---|
| JOLEENE ALTUM., | Case No.: 26STCV07012 |
| Plaintiff, | |
| vs. | **DECLARATION OF WILLIAM BRYAN JENNINGS** |
| AMY GRIFFIN, PENGUIN RANDOM HOUSE, DIAL PRESS, G-9 VENTURES, DOES 1-50, ROE CORPORATIONS 1 - 50 | |
| Defendant, | |

1

**DECLARATION OF BRYAN JENNINGS**

## DECLARATION OF WILLIAM BRYAN JENNINGS

I am William Bryan Jennings. I have personal knowledge of the facts set forth herein and am competent to testify thereto. I swear under penalty of perjury that the following is true and correct:

1.    I am a resident of the state of Oklahoma, and I reside at ████████████ ██████████████████

2.    I am acquainted with the Plaintiff in the aforementioned case, Joleene Altum. We were close friends and lived in the same children's group home when we were both around 12 years old in 1988 or 1989. This home was called the Presbyterian Children's Home in Amarillo Texas. I also attended Stephen F. Austin Middle School with Joleene Altum and Amy Griffin.

3.    I virtually had no contact with Joleene Altum from approximately the years 1990 until the year 2025.

4.    I personally recall an incident which occurred when Joleene and I were classmates at Stephen F. Austin Middle School in Amarillo, Texas. I recall the school holding what was called its "Sadie Hawkins" dance, and this event was attended by both Joleene and myself. I also recall that the two of us carpooled to the dance together.

5.    For that Sadie Hawkins dance, I recall that Joleene was dressed in a dress that I would describe as "puffy" and was decorated with flowers on it.

6.    During this time, Joleene and I were close and I had a crush on her, and I kept in close proximity to her. At some point during the dance, I recall Joleene being summoned by one of the male teachers at the school. I then recall seeing the two of them disappearing together alone and leaving the public area of the dance. I then recall seeing Joleene return to the dance, and her hair and clothes were tussled.

2

DECLARATION OF BRYAN JENNINGS

7. I recall that after the Sadie Hawkins dance ended, when we were waiting for our ride to take us back to the group home, I questioned her about what had happened when she and the teacher disappeared alone. While I can't recall the specific words, Joleene conveyed that there was sexual contact between herself and the teacher

8. I believe that others at our school were also aware at the time that there had been sexual contact between Joleene and the teacher at the Sadie Hawkins dance.

9. A short time after the dance, I recall being alone with Joleene and during this private interaction she confirmed that she had sexual relations with the teacher.

10. In 2025, along with others in the community, I had heard that the book "The Tell" by Amy Griffin depicted a number of events that had occurred during the time I had attended Stephen Austin Middle School with both Joleene and Amy Griffin. When I read the book, I observed that there were details in the book which author Amy Griffin had attributed to herself that I recall occurred to Joleene Altum.

11. I believe after reading "The Tell" that Joleene Altum would be identifiable to anyone who we went to school with as the person depicted as "Claudia" in the book "The Tell" by Amy Griffin.

I declare under penalty of perjury under the laws of United States that the foregoing is true and correct

Executed on this 31st day of October, 2025, at Stillwater, Oklahoma.



WILLIAM BRYAN JENNINGS

---

3

**DECLARATION OF BRYAN JENNINGS**

4

**DECLARATION OF BRYAN JENNINGS**

# 10.31.25 Pdf William Bryan Jennings to sign

Final Audit Report                                                    2025-11-01

| | |
|---|---|
| Created: | 2025-10-31 |
| By: | Zach Rosenblatt (zachsrosenblatt@gmail.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAZZZNIZFNhh-hffodCo7zSruc6ZQ71zSX |

## "10.31.25 Pdf William Bryan Jennings to sign" History

📄 Document created by Zach Rosenblatt (zachsrosenblatt@gmail.com)
2025-10-31 – 6:59:44 PM GMT

📧 Document emailed to William Bryan ██████████████████████ or signature
2025-10-31 – 6:59:49 PM GMT

📄 Email viewed by William Bryan ████████████████████
2025-11-01 – 2:16:45 AM GMT

✍️ Signer William Bryan ██████████████████████ entered name at signing as William Bryan Jennings
2025-11-01 – 2:19:02 AM GMT

✍️ Document e-signed by William Bryan Jennings ████████████████████
Signature Date: 2025-11-01 – 2:19:04 AM GMT – Time Source: server

✔️ Agreement completed.
2025-11-01 – 2:19:04 AM GMT

📕 **Adobe Acrobat Sign**

**Zach Rosenblatt (SNB# 345034)**
**ZSR LAW**
406 Broadway, #125
Santa Monica CA 90401
Telephone: (310)-529-1213
Email: zachsrosenblatt@gmail.com
Attorney for JANE DOE

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/29/2026 11:49 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Lopez, Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES

JANE DOE.,

        Plaintiff,

vs.

AMY GRIFFIN, AN INDIVIDUAL; SAM LANSKY, AN INDIVIDUAL; PENGUIN RANDOM HOUSE, LLC; DIAL PRESS; DOES 1-50; ROE CORPORATIONS 1-50

        Defendants,

Case No.:26STCV07012

**DECLARATION OF TONYA FRANCINE VANDENBOSCH**

DECLARATION OF TONYA FRANCINE VANDENBOSH

## DECLARATION OF TONYA FRANCINE VANDENBOSCH

I, Tonya Francine VanDenBosch, declare as follows:

1.    I currently live at ██████████████████████ I am over 18 years old and competent to testify. I have personal knowledge of the facts stated herein except where indicated. I am familiar with the true identity of "JANE DOE", who is the Plaintiff in this lawsuit.

2.    JANE DOE and I both lived at the Presbyterian Children's home in Amarillo, Texas in the year 1989. I was a year older and a grade higher than she was.

3.    My recollection was that JANE DOE was that she rarely, if ever, got into any trouble, got good grades, and I considered her a "goodie two-shoes."

4.    I specifically remember that JANE DOE went to the 1989 Sadie Hawkins dance for the Stephen F. Austin middle school while we were both living at the Children's Home. I could not attend the dance myself since I was already in 9th grade, but I remember JANE DOE getting ready for the dance. I specifically remember that she wore a fluffy floral dress with puffy shoulders. I recall joking with JANE DOE that she looked like a "football player" because of how puffy the shoulder pads were.

5.    I also remember the dress because there was a rule at the children's home that you weren't allowed to borrow clothes. You were only allowed to wear and use clothes that were stored in the basement of the home. This dress looked expensive and was not from the basement, so I knew JANE DOE had borrowed the dress from someone outside of the home. I also remember that she later got in trouble at the home for doing so.

6.    The day of the Sadie Hawkins dance I also remember my "house father" and his son, William Bryan Jennings, took JANE DOE to the dance.

7.    After the dance, I recall that JANE DOE came to me and asked me to help remove a stain from the dress she had borrowed. I remember she was acting strange and really embarrassed, but she did not tell me what had happened to cause the stain.

8.    I remember that we went into the bathroom of the children's home to try to clean the stain. However, it was not a private bathroom, so anyone else from the home could enter at any time. As a result, we tried to be really fast in trying to remove the stain. We tried to remove it with just some water, but were unsuccessful. Since we had gotten the dress wet, we then hung the dress to dry on a hanger.

**DECLARATION OF TONYA FRANCINE VANDENBOSH**

9.    Also, soon after the dance, I remember that JANE DOE ran away from the children's home. I was shocked by this because it was so out of character for her since she had always seemed happy and had been a "goodie two-shoes".

10.    Soon afterwards, I was moved out of the home for unrelated reasons, and lost touch with JANE DOE for years. We have had little contact since then.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May  02  , 2026, at San Diego, California.

Tonya VanDenBosch (May 3, 2026 19:17:46 PDT)
Tonya Francine VanDenBosch

3
**DECLARATION OF TONYA FRANCINE VANDENBOSH**

# TO SIGN PDF DECLARATION OF TONYA FRANCINE VANDENBOSCH

Final Audit Report                                    2026-05-04

| | |
|---|---|
| Created: | 2026-05-01 |
| By: | Zach Rosenblatt (zachsrosenblatt@gmail.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAATKaj3dWU8ViFGXC2fyjL_CT5tE1zMV0F |

## "TO SIGN PDF  DECLARATION OF TONYA FRANCINE VAND ENBOSCH" History

Document created by Zach Rosenblatt (zachsrosenblatt@gmail.com)
2026-05-01 - 11:06:58 PM GMT

Document emailed to ▮▮▮▮▮▮▮▮▮▮ for signature
2026-05-01 - 11:07:26 PM GMT

Email viewed by ▮▮▮▮▮▮▮▮▮▮
2026-05-04 - 2:15:20 AM GMT

Signer ▮▮▮▮▮▮▮▮▮▮ entered name at signing as Tonya VanDenBosch
2026-05-04 - 2:17:44 AM GMT

Document e-signed by Tonya VanDenBosch ▮▮▮▮▮▮▮▮▮▮
Signature Date: 2026-05-04 - 2:17:46 AM GMT - Time Source: server

Agreement completed.
2026-05-04 - 2:17:46 AM GMT

Adobe Acrobat Sign

Zach Rosenblatt (SNB# 345034)
**ZSR LAW**
406 Broadway, #125
Santa Monica CA 90401
Telephone: (310)-529-1213
Email: zachsrosenblatt@gmail.com
Attorney for JANE DOE

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/29/2026 11:49 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Lopez, Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| JANE DOE., | **Case No.:26STCV07012** |
| Plaintiff, | |
| vs. | **DECLARATION OF LARHONDA NICHOLE BARNETT** |
| AMY GRIFFIN, AN INDIVIDUAL; SAM LANSKY, AN INDIVIDUAL; PENGUIN RANDOM HOUSE, LLC; DIAL PRESS; DOES 1-50; ROE CORPORATIONS 1-50 | |
| Defendants, | |

1

**DECLARATION OF LARHONDA NICHOLE BARNETT**

## DECLARATION OF LARHONDA NICHOLE BARNETT

I, LaRhonda Nichole Barnett, declare as follows:

1.      I am over the age of eighteen years and competent to testify to the matters set forth herein. I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently thereto

2.      I worked at Father's Heart Ranch Group Home in Sky Valley, California around the years 2013 through 2016. During that time, I worked with an individual who I have since been informed is the "Jane Doe" of this lawsuit herein.

3.      Father's Heart Ranch was a group home for children who had been victims of sexual abuse. I worked there as a "houseparent", to help provide support to them and create a safe location where these children could heal from their abuse.

4.      Working at this group home, the staff sometimes shared their own past personal experiences with the kids. This was done to bond with them and help make them feel more comfortable to talk about their own abuse.

5.      I remember that these conversations occurred both in small group therapy sessions and one-on-one when a child was going through a crisis (all of which are confidential settings).

6.      While working at this group home in or around 2016, I personally heard "Jane Doe" tell a story about her being sexually assaulted on at least two occasions. I remember that her story involved being sexually assaulted in a bathroom by a teacher in the school she went to while she was growing up in Texas. Some of the specific details I remember from what she talked about in 2016 was that she was assaulted at a school dance, that the teacher involved put his boot on her back, threw her against a wall, and stuffed a bandana in her mouth. I remember those details because they were so specific and disturbing, and they have stuck with me to this day.

7.      I was present at the group home when I heard her tell this sexual assault experience to three different minors who were sexually abused themselves. Their first names were "Randall", "Alex", and "Jonathan" (who was one of twin brothers who stayed at the home).

8.      On at least one occasion I heard her relay this experience in a small group therapy setting where the kids could share stories and offer support to each other. On another occasion, I remember being told that she told this same story to one of the boys individually ("Alex") after he was threatening to commit suicide by jumping off the roof of the building.

2
.
**DECLARATION OF LARHONDA NICHOLE BARNETT**

9.      I had only kept in sporadic contact with "Jane Doe" in the subsequent years since we worked together. In March of 2026 I happened to run across an article in People magazine online about a "Jane Doe" from Amarillo, Texas. The article did not give her real name but said she was involved in a lawsuit about a memoir. The article mentioned that there were stories in a book called "The Tell" about a sexual assault by a teacher in a bathroom. The article also included details from the book about a bandana and a boot being involved.

10.      As soon as I read the details I immediately recognized them as the ones that I and others were told to us by Jane Doe at the Father's Heart Group Home  in or around 2016 .

11.      I then reached out to Jane Doe personally to confirm if my suspicions were correct. I contacted her and asked if the story I had read about in People was the same story of what happened to her that she told me years earlier. She then confirmed that was the case.

12.      I had not read the book "The Tell" nor do I have any acquaintance with Amy Griffin. I am certain that Jane Doe shared these same details of her sexual assault with me as described above approximately nine or so years before the book "The Tell" was published in 2025.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Signed and Executed on this  26  day of  March  2026, in Las Vegas, Nevada.



LaRhonda Barnett (Mar 26, 2026 11:15:58 PDT)
LARHONDA NICHOLE BARNETT

**DECLARATION OF LARHONDA NICHOLE BARNETT**

4

**DECLARATION OF LARHONDA NICHOLE BARNETT**

# 3.26.26 - Corrected Declaration LaRhonda Nichole Barnett Declaration

Final Audit Report                                    2026-03-26

| | |
|---|---|
| Created: | 2026-03-26 |
| By: | Zach Rosenblatt (zachsrosenblatt@gmail.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAATWET6CBFzM-mGa-kZMDSAsQKsnMpopMa |

## "3.26.26 - Corrected Declaration LaRhonda Nichole Barnett Declaration" History

📄 Document created by Zach Rosenblatt (zachsrosenblatt@gmail.com)
2026-03-26 - 5:03:25 PM GMT

📧 Document emailed to ██████████████████ for signature
2026-03-26 - 5:03:29 PM GMT

📄 Email viewed by ██████████████
2026-03-26 - 6:14:11 PM GMT

✍️ Signer ██████████████ entered name at signing as LaRhonda Barnett
2026-03-26 - 6:15:56 PM GMT

✍️ Document e-signed by LaRhonda Barnett (██████████████
Signature Date: 2026-03-26 - 6:15:58 PM GMT - Time Source: server

✅ Agreement completed.
2026-03-26 - 6:15:58 PM GMT

![Adobe Acrobat Sign logo] Adobe Acrobat Sign

**MARTORELL LAW APC**
Eduardo Martorell, State Bar No. 240027
EMartorell@Martorell-Law.com
Christopher A. Rosario, State Bar No. 326436
CRosario@Martorell-Law.com
Playa District
6100 Center Drive, Suite 1130
Los Angeles, CA 90045
Tel: (323) 840-1200; Fax: (323) 840-1300

**Zach Rosenblatt (SBN# 345034)**
**ZSR LAW**
406 Broadway, #125
Santa Monica CA 90401
Telephone: (310)-529-1213
Email: zachsrosenblatt@gmail.com

Attorneys for Plaintiff,
JANE DOE

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/29/2026 11:49 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Lopez, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| JANE DOE, <br><br> Plaintiff, <br><br> v. <br><br> AMY GRIFFIN, AN INDIVIDUAL; SAM LANSKY, AN INDIVIDUAL; PENGUIN RANDOM HOUSE, LLC; DIAL PRESS; DOES 1-50; ROE CORPORATIONS 1-50, <br><br> Defendants. | Case No. 26STCV07012 <br><br> Assigned for All Purposes to Hon. Richard L. Fruin, Dept. 307 <br><br> **DECLARATION OF SHELLIEANN KRAJNAK** |

MARTORELL LAW APC

DECLARATION OF SHELLIEANN KRAJANK

**DECLARATION OF SHELLIEANN KRAJNAK**

I, Shellieann Krajnak, declare as follows:

1. I am over the age of 18 and have personal knowledge of the facts set forth herein, and if called as a witness, could and would testify competently thereto.

2. I am currently a resident of Nevada. My address is ██████████████ ██████████

3. I have been casual friends with Plaintiff Jane Doe since approximately 2018.

4. I can specifically recall a night in 2021 or 2022 when I was physically present with Jane Doe, her boyfriend Jose, and another friend named Joanne Bianchi. We had all met at a place called Old Tavern in Las Vegas, Nevada for karaoke night.

5. During that meeting, Jane Doe explicitly told all of us that someone who was purportedly working in the entertainment industry in Hollywood had contacted her about making a movie about her life story.

6. We discussed this matter in further detail at the time. I recall that my own reaction was supportive, however Ms. Bianchi's reaction was skeptical. I specifically recall Ms. Bianchi asking Jane Doe questions about this proposed movie, and about who or why someone in Hollywood would be interested in making a movie about her life story.

7. I recall Ms. Bianchi asking Jane Doe a series of skeptical questions, including questions about the background and experience of the people who contacted her. I also recall Jane Doe telling us that she did not have much information about who this person from Hollywood was or how he had found her.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on ___June 17___, 2026, in Las Vegas, Nevada.



Shellieann Krajnak

MARTORELL LAW APC

2

DECLARATION OF SHELLIEANNE KRAJNAK

DECLARATION OF SHELLIEANNE KRAJNAK

# Decl. of Shellie Ann v. final. PDF TO sign

**Final Audit Report**                                              2026-06-17

| | |
|---|---|
| Created: | 2026-06-02 |
| By: | Zach Rosenblatt (zachsrosenblatt@gmail.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAyqnEMFc71ztDalur0ASeM0yhJCyX5Wdi |

## "Decl. of Shellie Ann v. final. PDF TO sign" History

📄 Document created by Zach Rosenblatt (zachsrosenblatt@gmail.com)
2026-06-02 – 0:47:20 AM GMT

✉ Document emailed to ▮▮▮▮▮▮▮▮▮▮ or signature
2026-06-02 – 0:47:24 AM GMT

📄 Email viewed by ▮▮▮▮▮▮▮▮
2026-06-17 – 5:01:38 PM GMT

✍ Signer ▮▮▮▮▮▮▮▮▮▮ entered name at signing as ShellieAnn Krajnak
2026-06-17 – 5:05:45 PM GMT

✍ Document e-signed by ShellieAnn Krajnak ▮▮▮▮▮▮▮▮▮▮
Signature Date: 2026-06-17 – 5:05:47 PM GMT – Time Source: server – Signature Appearance Selected: MOBILE_DRAW

✅ Agreement completed.
2026-06-17 – 5:05:47 PM GMT

**▮ Adobe Acrobat Sign**

**MARTORELL LAW APC**
Eduardo Martorell, State Bar No. 240027
EMartorell@Martorell-Law.com
Christopher A. Rosario, State Bar No. 326436
CRosario@Martorell-Law.com
Playa District
6100 Center Drive, Suite 1130
Los Angeles, CA 90045
Tel: (323) 840-1200; Fax: (323) 840-1300

**Zach Rosenblatt (SBN# 345034)**
**ZSR LAW**
406 Broadway, #125
Santa Monica CA 90401
Telephone: (310)-529-1213
Email: zachsrosenblatt@gmail.com

Attorneys for Plaintiff,
JANE DOE

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/29/2026 11:49 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Lopez, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| JANE DOE,<br><br>        Plaintiff,<br><br>    v.<br><br>AMY GRIFFIN, AN INDIVIDUAL; SAM LANSKY, AN INDIVIDUAL; PENGUIN RANDOM HOUSE, LLC; DIAL PRESS; DOES 1-50; ROE CORPORATIONS 1-50,<br><br>        Defendants. | Case No. 26STCV07012<br><br>Assigned for All Purposes to Hon. Richard L. Fruin, Dept. 307<br><br>**DECLARATION OF SHELLIEANN KRAJNAK** |

MARTORELL LAW APC

DECLARATION OF SHELLIEANN KRAJANK

## DECLARATION OF SHELLIEANN KRAJNAK

I, Shellieann Krajnak, declare as follows:

1.     I am over the age of 18 and have personal knowledge of the facts set forth herein, and if called as a witness, could and would testify competently thereto.

2.     I am currently a resident of Nevada. My address is █████████████

3.     I have been casual friends with Plaintiff Jane Doe since approximately 2018.

4.     I can specifically recall a night in 2021 or 2022 when I was physically present with Jane Doe, her boyfriend Jose, and another friend named Joanne Bianchi. We had all met at a place called Old Tavern in Las Vegas, Nevada for karaoke night.

5.     During that meeting, Jane Doe explicitly told all of us that someone who was purportedly working in the entertainment industry in Hollywood had contacted her about making a movie about her life story.

6.     We discussed this matter in further detail at the time. I recall that my own reaction was supportive, however Ms. Bianchi's reaction was skeptical. I specifically recall Ms. Bianchi asking Jane Doe questions about this proposed movie, and about who or why someone in Hollywood would be interested in making a movie about her life story.

7.     I recall Ms. Bianchi asking Jane Doe a series of skeptical questions, including questions about the background and experience of the people who contacted her. I also recall Jane Doe telling us that she did not have much information about who this person from Hollywood was or how he had found her.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on __June 17__, 2026, in Las Vegas, Nevada.



Shellieann Krajnak

MARTORELL LAW APC

MARTORELL LAW APC

3

DECLARATION OF SHELLIEANNE KRAJNAK

# Decl. of Shellie Ann v. final. PDF TO sign

Final Audit Report                                                    2026-06-17

| | |
|---|---|
| Created: | 2026-06-02 |
| By: | Zach Rosenblatt (zachsrosenblatt@gmail.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAyqnEMFc71ztDalur0ASeM0yhJCyX5Wdi |

## "Decl. of Shellie Ann v. final. PDF TO sign" History

📄 Document created by Zach Rosenblatt (zachsrosenblatt@gmail.com)
    2026-06-02 - 0:47:20 AM GMT

📧 Document emailed to ▊▊▊▊▊▊▊▊▊▊ or signature
    2026-06-02 - 0:47:24 AM GMT

📄 Email viewed by ▊▊▊▊▊▊▊▊
    2026-06-17 - 5:01:38 PM GMT

✍ Signer ▊▊▊▊▊▊▊▊▊▊ entered name at signing as ShellieAnn Krajnak
    2026-06-17 - 5:05:45 PM GMT

✍ Document e-signed by ShellieAnn Krajnak ▊▊▊▊▊▊▊▊▊▊
    Signature Date: 2026-06-17 - 5:05:47 PM GMT - Time Source: server - Signature Appearance Selected: MOBILE_DRAW

✅ Agreement completed.
    2026-06-17 - 5:05:47 PM GMT

Adobe Acrobat Sign