CHRISTOPHER M. KELLER, ESQ.
Nevada Bar No. 7399
**HAWKINS MELENDREZ, P.C.**
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Phone: (702) 318-8800
Fax: (702) 318-8801
ckeller@hawkinsmelendrez.com
*Attorneys for Jane Doe*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| AMY GRIFFIN, | Case No. 2:26-cv-01811 |
| Plaintiff, | |
| v. | **DEFENDANT MOTION FOR LEAVE TO FILE SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE** |
| JOLEENE ALTUM, | |
| Defendant. | |

Pursuant to LR 7-2(g), Defendant Joleene Altum ("Ms. Altum" or "Jane Doe" or "Doe") respectfully seeks leave of this Court to file a Supplemental Request for Judicial Notice, pursuant to Federal Rule of Evidence 201.

This Motion is made and based upon the attached memorandum of points and authorities, as well as any arguments that this Court may entertain at the time of a hearing on this matter.

DATED this 10th day of August 2026.

**HAWKINS MELENDREZ, P.C.**

*/s/ Christopher M. Keller*
CHRISTOPHER M. KELLER, ESQ.
Nevada Bar No. 7399
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134

1

HAWKINS MELENDREZ, P.C.
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### FACTUAL BACKGROUND

The present matter arises out of a dispute regarding the Plaintiff's memoir, *The Tell* ("the memoir").

On March 4, 2026, Defendant filed a lawsuit against Plaintiff in the State of California, Case No. 26STCV07012 ("California Case"), seeking damages arising out of the publication of the memoir.

On June 15, 2026, Plaintiff filed the present lawsuit, seeking damages associated with the allegations raised by Defendant in the California Case. (See, Compl., ECF 1).

On July 6, 2026, Defendant filed a Motion to Dismiss ("Motion"). (See, Motion to Dismiss, ECF 17). In conjunction with the Motion, Defendant filed a Request for Judicial Notice of the documents filed in the California Case. (See Request, ECF 18).

On July 20, 2026, Plaintiff filed an Opposition to Defendant's Motion, as well as an Opposition to Request for Judicial Notice. (See Opp., ECF 27 and 28).

On July 27, 2026, Defendant filed her Response to the Opposition to the Motion. (See Resp. ECF 30).

On July 31, 2026, Honorable Richard L. Fruin issued both a Tentative and Final Order in response to an Anti-SLAPP motion brought in the California Case ("Fruin Order"). (See Proposed Supplemental Request for Judicial Notice, Exhibit "A", attached hereto and incorporated herein.) In the Fruin Order, the California Court denied (in large part) an Anti-SLAPP Motion brought by Amy Griffin in the California Case.[1]

. . .

. . .

. . .

---

[1] The Fruin Order is attached as Exhibit "A" to the proposed Request for Judicial Notice.

## II.

## <u>LEGAL ARGUMENT</u>

LR 7-2(g) provides in relevant part:

> (g)    Supplementation prohibited without leave of court.  A party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause.  The judge may strike supplemental filings made without leave of court.

"Good cause may exist either when the proffered supplemental authority controls the outcome of the litigation, or when the proffered supplemental authority is precedential, or particularly persuasive or helpful." *N. Am. Derivatives Exch., Inc. v. Nev. on Rel. of the NV ⌒ Gaming Control Bd.*, 2026 U.S. Dist. LEXIS 28173, *5, 2026 LX 90735, 2026 WL 391369 *quoting Apls Prop. & Cas. Ins. Co. v. Kalicki Collier LLP,* 526 F. Supp. 3d 805, 812 (D. Nev. 2021) (*citing Hunt v. Washoe Cty. Sch. Dist.*, No. 3:18-CV-00501-LRH-WGC, 2019 U.S. Dist. LEXIS 153801, 2019 WL 4262510, at *3 (D. Nev. Sept. 9, 2019)).

In the present matter, the Fruin Order is directly relevant to Defendant's Motion.  (See Motion to Dismiss, ECF  18).   In the ruling, Judge Fruin held that four of the six causes of action asserted in the related action survive. (See, Exhibit "A").  The surviving claims materially overlap with the claims, facts, and issues presented in this action. (See, Exhibit "A").  The Fruin Order also confirms that the California Case remains capable of adjudicating issues that would otherwise be litigated in parallel in the present Action, supporting Defendant's Motion to Dismiss to avoid duplicative proceedings, inconsistent determinations, and unnecessary expenditure of party and judicial resources.  At the very least, the Fruin Order is helpful to this Court when addressing the Motion, providing context and explaining the ongoing dispute in the California Lawsuit.

Federal Rule of Evidence 201 permits judicial notice of facts that are not subject to reasonable dispute and are capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. A federal court may take judicial notice of the existence and legal effect of proceedings and orders in another court, although it may not accept disputed factual assertions within

HAWKINS MELENDREZ, P.C.
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

those records as true. Defendant seeks notice only of the Fruin Order's existence, content, and legal effect, including the Court's disposition of the claims—not the truth of any disputed factual findings or assertions recited in the order.

**III.**

**CONCLUSION**

Because the Fruin Order post-dates the Defendant's Motion and subsequent briefing; and because it bears directly on the duplicative nature of the present lawsuit, Defendant respectfully requests that this Court grants leave, under LR 7-2(g) to file Exhibit "A" as a Supplemental Request for Judicial Notice.

DATED this 10th day of August 2026.

**HAWKINS MELENDREZ, P.C.**

*/s/ Christopher M. Keller*
CHRISTOPHER M. KELLER, ESQ.
Nevada Bar No. 7399
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134

**HAWKINS MELENDREZ, P.C.**
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

4

**HAWKINS MELENDREZ, P.C.**
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

### CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Civil Procedure 5(b), I hereby certify that on the 10th day of August 2026, I served a true and correct copy of the foregoing **SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE** by electronically filing and served upon all parties and counsel of record appearing on the Court's electronic service list through the Court's electronic filing and service system.

/s/ Donna Simpson
An employee of Hawkins Melendrez, P.C.

EXHIBIT "A"

EXHIBIT "A"

CHRISTOPHER M. KELLER, ESQ.
Nevada Bar No. 7399
**HAWKINS MELENDREZ, P.C.**
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Phone: (702) 318-8800
Fax: (702) 318-8801
ckeller@hawkinsmelendrez.com
*Attorneys for Jane Doe*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| AMY GRIFFIN, | Case No. 2:26-cv-01811 |
| Plaintiff, | |
| v. | **DEFENDANT'S REQUEST FOR JUDICIAL NOTICE** |
| JOLEENE ALTUM, | |
| Defendant. | |

Defendant Joleene Altum (hereinafter "Jane Doe" or "Doe") respectfully requests, pursuant to Federal Rule of Evidence 201, that this Court take judicial notice of the July 31, 2026, Minute Order, Tentative Ruling, and Final Order entered by the Superior Court of California, County of Los Angeles, in *Jane Doe v. Amy Griffin, et al.*, Case No. 26STCV07012 (the "California Action"). A true and correct copy of the Minute Order, Tentative Ruling, and Final Ruling is attached hereto as "Exhibit A".

DATED this __day of August 2026.

**HAWKINS MELENDREZ, P.C.**

CHRISTOPHER M. KELLER, ESQ.
Nevada Bar No. 7399
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. The California Minute Order Is Properly Subject to Judicial Notice

Under Federal Rule of Evidence 201(b), a court may take judicial notice of a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Courts routinely take judicial notice of court records and orders in other proceedings for the fact of their issuance and their procedural effect.

The California Minute Order is an official court record of the Superior Court of California, County of Los Angeles, in Case No. 26STCV07012, and can be accurately and readily determined from court files whose accuracy cannot reasonably be questioned. Accordingly, this Court may and should take judicial notice of the existence and contents of that Minute Order.

### II. Description of the California Court's Ruling

On July 31, 2026, the California Superior Court (Hon. Richard L. Fruin, Department 307, Stanley Mosk Courthouse) issued a Minute Order titled "Ruling on Submitted Matter" in *Jane Doe v. Amy Griffin, et al.*, Case No. 26STCV07012. The Minute Order reflects the court's ruling on Defendant Amy Griffin's Special Motion to Strike under California Code of Civil Procedure section 425.16 (Anti-SLAPP motion) directed to Plaintiff Jane Doe's complaint.

The court **granted** the special motion to strike as to the **second and sixth causes of action** and **denied** the special motion to strike as to the **first, third, fourth, and fifth causes of action**. Exhibit A. In denying the motion as to those claims, the California court necessarily found that Jane Doe's remaining causes of action—including her privacy and related tort claims—have sufficient merit to withstand the special motion to strike and to proceed forward to discovery. Orders of the court are fully reflected in the court's written ruling signed and filed on July 31, 2026, as noted in the Minute Order.

HAWKINS MELENDREZ, P.C.
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

### III. Relevance to the Present Federal Action

This federal action involves a defamation claim asserted against Doe, and Doe has asserted (or, if necessary, seeks leave to assert) counterclaims arising from the same nucleus of operative facts—including claims parallel to those asserted in the California Action.

As set forth in Doe's reply briefing on Motion to Dismiss, Stay, and Reply thereto, due to the present procedural posture, these claims are now viable as counterclaims in this forum to the pending defamation claim. The California court's anti-SLAPP ruling confirms that Doe's claims possess sufficient merit under California law to survive an early merits screening under Code of Civil Procedure section 425.16, thereby:

- Demonstrating the non-frivolous nature and substantial merit of Doe's claims in the parallel litigation.

- Underscoring that allowing the Nevada action to proceed without coordinating or accounting for Doe's counterclaims here will essentially duplicate the <u>exact same litigation in two forums</u>, with overlapping parties, facts, and issues.

- Supporting Doe's arguments regarding comity, avoidance of duplicative proceedings, and judicial efficiency, including but not limited to her request that this Court adjudicate her counterclaims together with Plaintiff's defamation claim or otherwise consider appropriate case-management remedies (e.g., stay, consolidation, or coordination).

Judicial notice of the California Minute Order will thus aid the Court in understanding the posture and merit-based assessment already undertaken by the California court and the risk of parallel, duplicative litigation regarding the same speech, publications, and alleged harm.

### IV. Conclusion

For the foregoing reasons, Defendant Jane Doe respectfully requests that the Court:

1.      Take judicial notice, pursuant to Federal Rule of Evidence 201, of the California Superior Court's July 31, 2026 Minute Order in *Jane Doe v. Amy Griffin, et al.*, Case No. 26STCV07012, attached as "Exhibit A"; and

HAWKINS MELENDREZ, P.C.
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

2.    Consider that order, and the California court's denial of the anti-SLAPP motion as to Doe's first, third, fourth, and fifth causes of action, in evaluating Doe's Motion to Dismiss and the risk of duplicative litigation in multiple forums.

DATED this __day of August 2026.

**HAWKINS MELENDREZ, P.C.**

_____
CHRISTOPHER M. KELLER, ESQ.
Nevada Bar No. 7399
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134

**HAWKINS MELENDREZ, P.C.**
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

4

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rules of Civil Procedure 5(b), I hereby certify that on the ___day of August 2026, I served a true and correct copy of the foregoing **REQUEST FOR JUDICIAL NOTICE** by electronically filing and served upon all parties and counsel of record appearing on the Court's electronic service list through the Court's electronic filing and service system.

_____

An employee of Hawkins Melendrez, P.C.

**HAWKINS MELENDREZ, P.C.**
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Telephone (702) 318-8800 • Facsimile (702) 318-8801

5

# EXHIBIT A

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 307

**26STCV07012**                                                      July 31, 2026
**JANE DOE vs  AMY GRIFFIN , et al.**                                3:24 PM

Judge: Honorable Richard L. Fruin          CSR: None
Judicial Assistant: M. Zarate              ERM: None
Courtroom Assistant: None                  Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Ruling on Submitted Matter

The Court, having taken the matter under submission on 07/27/2026 for Hearing on Special
Motion to Strike under CCP Section 425.16 (Anti-SLAPP motion) by Deft Amy Griffin to
Plaintiff's Complaint [279229964121]**-, now rules as follows: The Special Motion to Strike
under CCP Section 425.16 (Anti-SLAPP motion) - Defendant Amy Griffin's Notice of Motion
and Special Motion to Strike Plaintiff Jane Doe's Complaint Under the California Anti-SLAPP
Statute, code of Civil Procedure §§ 425.16 Et Seq. filed by Amy Griffin on 06/15/2026 is
Granted. the special motion to strike as to the second and sixth causes of action and DENIED the
special motion to strike as to the first, third, fourth, and fifth causes of action.

Orders of the Court are fully reflected in the Courts ruling signed and filed this date.

Clerk is to give notice.

Certificate of Service is attached.

**FINAL RULING ON SUBMITTED MOTION**

**JANE DOE v. AMY GRIFFIN, SAM LANSKY, PENGUIN RANDOM HOUSE, LLC, DIAL PRESS, et al.** [26STCV07012]

**SPECIAL MOTION TO STRIKE THE COMPLAINT PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16 OF DEFENDANT AMY GRIFFIN**

On Monday, July 27, 2026, the Court heard argument on defendant Amy Griffin's special motion to strike the complaint filed by plaintiff Jane Doe. On the Friday before the hearing the Court emailed to counsel its Tentative Ruling on the motion. That Tentative Ruling GRANTED the special motion to strike as to the second and sixth causes of action and DENIED the special motion to strike as to the first, third, fourth, and fifth causes of action. At the July 27 hearing, after lengthy argument, the Court took the Tentative Ruling under submission.

The Court concludes that its Tentative Ruling ruled correctly on Griffin's motion. The Court adopts its Tentative Ruling as its Final Ruling on the motion. The Court also adds a slight change to its rulings on the admissibility of certain documentary exhibits that are attached to the Griffin declaration.

This Final Ruling will also provide brief comments on an issue that counsel argued extensively at the hearing. The Court does not intend to otherwise address issues raised at the hearing, because the issues were thoroughly considered and addressed to the extent necessary to prepare the Tentative Ruling. The Court by this reference incorporates herein the Tentative Ruling (now the Final Ruling) that was issued to counsel before the July 27 hearing.

Griffin argued that Doe's case, at its core, requires an inference that Griffin learned private facts about Doe's life—the sexual assaults Griffin described in the Book as happening to herself---based on disclosures that Doe made to a person identifying himself as "Dominque Price." Doe alleges she made such disclosures to Dominque Price in her complaint at paragraphs 20, 21, 49-55, 97, 98, 100 and 139-140. Griffin argues these allegations are false, or at least must be disregarded, because an individual identifying himself as Dominque Price, and having the telephone number that Doe alleges that Price provided to her, filed his own declaration denying those allegations, saying:

> 23. I have reviewed the Complaint, and I have specifically reviewed paragraphs 20-21, 49-55, 97-96, 100, and 139-140. These allegations attribute to me conduct in which I did not participate and events, that, to the best of my knowledge, did not occur. [and]

1

20. I have never had any involvement, direct or indirect, with Amy Griffin, Sam Lansky, Penguin Random House, Dial Press, or any persons acting on their behalf.

Doe in opposition to Griffin's motion provided her own declaration that reiterated she was contacted by and disclosed to Dominque Price "in response to his questions" the details of sexual assaults committed against her "by a teacher at Stepen F. Austin Middle School." See, Doe Decl., paragraphs 32-46.

The Court cannot resolve the conflict between the Dominque Price declaration and that of Jane Doe. However, the evidentiary support offered to oppose Griffin's motion does rely solely on Doe's declaration.

Doe also filed declarations from four individuals, three of whom testified that Jane Doe told them years before Doe made any contact with Dominque Price that she was sexually assaulted by her middle school teacher, with detail that is similar to the sexual assaults described in Griffin's Book. See, the declarations filed in opposition to Griffin's anti-SLAPP motion by William Bryan Jennings, Tonya VanDenBosch, Shawna Bondhus, and Larhonda Barnett. Mr. Jennings, in his declaration dated October 31, 2025 (nearly a year before this action was filed), testified that he carpooled to a school dance in 1988 or '89 with Doe (who was wearing a borrowed dress) and that she told him later with specifics that she had been sexually assaulted at the dance by a teacher. VanDenBosch did not attend the dance, but she testified she helped Doe to wash out a stain in the borrowed dress Doe wore to the dance. Ms. Bondhus testified Doe told her in the 2010-2013 timeframe that she was "raped by an authority figure at a school dance." Ms. Barnett testified that Doe told her in the 2013-2016 timeframe that she was sexually assaulted by a teacher at a school dance and was later assaulted again by the same teacher in a school bathroom, describing on that occasion a boot placed on her back and a bandana stuffed into her mouth. Assuming, for the purposes of an anti-SLAPP motion, that the affidavits are truthful, these four witnesses support Doe's allegations that private facts from her life were in some way included by Griffin in her Book. The procedure under section 425.16 does not permit the Court to weigh witness credibility.

Doe's admissible evidence, in the Court's view, presents at least minimal merit sufficient to require a denial of Griffin's special motion to strike with respect to certain of her causes of action. Moreover, under the unique circumstances described in the motion, there are other concerns helping to tip the scale against Griffin's special motion to strike the entire complaint. It is unclear on

2

this record whether the therapeutic use of the drug MDMA is medically recognized to assist a user to recover genuine personal memories as opposed to suggesting perceived memories based on information the user has derived from third party sources. Griffin admits in her memoir to having hired investigators to contact persons she knew in middle school to confirm her recently discovered memories. Griffin's motion provides no information about how the investigators proceeded, and who and what sources they investigated, and the Court, therefore, has a degree of uncertainty about the factual basis for the traumatic events portrayed in the Book.

The Court did not receive into evidence Exhibit A to Griffin's declaration—the transcript of Griffin's telephone conversation with the Amarillo police detective. Griffin, in the telephone interview, tells the detective she has recorded the interview; and the officer voices no objection. There is no description, however, of how the underlying audio recording was transcribed and thus no certainty that the version attached to the Griffin declaration is a complete and accurate transcript. The Court agrees with Griffin's argument that her statements made during the interview may, in theory, be received for a non-hearsay purpose—to establish as a fact that Griffin, on March 8, 2022, voiced in an interview with a Amarillo police detective her description of events described in her later published memoir. Even so, the transcript is inadmissible to prove the contents of the underlying audio recording because neither the recording nor the transcription procedure is properly authenticated. The same concern applies to Exhibit K, the transcript of a conversation between Griffin and her collaborator Sam Lansky after their interview with the person identified by the pseudonym Claudia.

Doe's counsel, in his opposition to Griffin's motion, did not note any evidentiary objections against the evidence offered in support of Griffin's motion. But because declarations filed to support or oppose a special motion, and any exhibits offered into evidence, must pass admissibility standards, the Court was required to make evidentiary rulings in its Tentative (and now Final) Ruling.

Griffin is to submit a proposed order to memorialize the Final Ruling within three days. This Final Ruling is to be served by U.S. Mail and email.

DATED: July 31, 2026

_____

RICHARD L. FRUIN
Judge of the Superior Court
County of Los Angeles

3

4

**# 14 B        TENTATIVE RULING              9:15 a.m., Monday, July 27, 2026**

**JANE DOE v. AMY GRIFFIN, SAM LANSKY, PENGUIN RANDOM HOUSE, LLC, DIAL PRESS, et al. [26STCV07012]**

**SPECIAL MOTION TO STRIKE THE COMPLAINT PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16 OF DEFENDANT AMY GRIFFIN**

Defendant Amy Griffin files this motion under CCP 425.16 (the anti-SLAPP statute) to dismiss all causes of action pled in the complaint. On March 4, 2026, Plaintiff, using the pseudonym Jane Doe, filed her complaint listing the following eight causes of action:

1. Invasion of Privacy (Intrusion Upon Seclusion)
2. Invasion of Privacy (Publication of Private Facts)
3. False Light
4. Intentional Infliction of Emotional Distress ("IIED")
5. Negligent Infliction of Emotional Distress ("NIED")
6. Unfair Competition
7. Negligence (Violation of the Unfair Competition Law ("UCL"))
8. Punitive Damages.

Each cause of action arises from the publication of a memoir written by Amy Griffin titled The Tell (hereinafter the Book). Griffin in her Book describes her experience in recovering and processing "recovered memories" of her trauma of childhood sexual abuse by a teacher in her middle school in Amarillo, Texas in the late eighties, early nineties. Griffin recounts her use of MDMA therapy to recover such memories and her related investigation to confirm their validity.

The Court will forego a further description of the parties' contentions; counsel for the parties have filed voluminous pleadings; they are familiar with the alleged facts and contentions.

An anti-SLAPP motion is analyzed under two prongs. Under Prong One, the moving defendant must make a "prima facie" showing that the challenged cause of action "aris[es] from" an act by the defendant "in furtherance of the [defendant's] right of petition or free speech … in connection with a public issue." (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21 (*Simpson*).) Here, because each cause of action against Griffin arises out of her role in researching, writing, and publicizing the Book, as well as the subject matter of the Book itself, Griffin argues that her alleged wrongdoing arises out of speech made in connection with a matter of public concern and is therefore protected activity under the anti-SLAPP statute. Under Section 425.16, subd. (e)(4), protected activity includes "conduct in furtherance of the exercise of …

1

the constitutional right of free speech in connection with a public issue or an issue of public interest."

Much more could be said to demonstrate Griffin's Book constitutes protected speech, but as Jane Doe does not dispute that Griffin has satisfied her initial burden under Prong One, the Court will proceed to a discussion of Prong Two. Under Prong Two, the burden shifts to Doe to establish a probability that she will prevail on the merits of each cause of action asserted against Griffin. (*Simpson*, *supra*, 49 Cal.4th at p. 21.)

Under section 425.16 "a plaintiff 'need only establish that his or her claim has "minimal merit" … to avoid being stricken as a SLAPP.'" (*Key v. Tyler* (2019) 34 Cal.App.5th 505, 515 (*Key*).) That is, the plaintiff must demonstrate "that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).)) "The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." (*Ibid.*) "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (Code Civ. Proc., § 425.16, subd. (b)(2).) **"However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.'"** (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 11 (*Soukup*), emphasis added.) "Thus, the second step of the anti-SLAPP analysis is a 'summary-judgment-like procedure at an early stage of the litigation.'" (*Key*, *supra*, 34 Cal.App.5th at p. 515.) Because the filing of a special motion stays "all discovery" until the motion is decided (section 425.16, subd. (e), the statute invests plaintiff's evidence at this early evaluation with a degree of credibility that may be undeserved once discovery is taken against that evidence.

## I.     Summary of Court's Tentative Rulings:

For the reasons addressed below, the Court finds that Plaintiff has sufficiently demonstrated that that her first, third, fourth, and fifth causes of action have at least minimal merit. However, Plaintiff fails to overcome her burden with respect to the second and sixth causes of action.[1]

---

[1] Griffin argues in a mere footnote that California law should not apply to Doe's claims against Griffin. (Mot., at p. 10, fn. 6.) Griffin also completely omits this contention in her Reply. Simultaneously, Griffin's analysis of each cause of action relies on California law. The Court finds Griffin's minimal argument, which is entirely devoid of a "governmental interest" analysis, is insufficient to overcome Griffin's burden with respect to the application of New York law. By

2

### i.     1st *Cause of Action: Intrusion Upon Seclusion* – DENIED

Plaintiff has adequately demonstrated that her first cause of action has at least minimal merit. To state a cause of action for intrusion into private affairs, the plaintiff must prove all of the following elements: (1) that the plaintiff had a reasonable expectation of privacy in a certain matter; (2) that the defendant intentionally intruded into that private matter; (3) that the defendant's intrusion would be highly offensive to a reasonable person; (4) that the plaintiff was harmed; and (5) that the defendant's conduct was a substantial factor in causing the plaintiff's harm. (CACI, No. 1800.) In deciding whether the plaintiff had a reasonable expectation of privacy in the matter, the factfinder must consider several factors, including: (1) the identity of the defendant; (2) the extent to which other persons had access to the private information; and (3) the means by which the intrusion occurred. (*Ibid*.) In deciding whether the intrusion would be highly offensive to a reasonable person, the factfinder must consider several factors, including: (1) the extent of the intrusion; (2) the defendant's motives and goals; and (3) the setting in which the intrusion occurred. (*Ibid*.)

Here, Plaintiff alleges that "Defendants intentionally intruded upon Plaintiff's private conversations and personal matters by either directly or indirectly benefitting from the tortious actions of third parties for the purpose of extracting intimate personal information from Plaintiff." (Compl., ¶ 95.) Specifically, Plaintiff alleges that Dominique (Doe 1) and Doe 2 were acting as agents of Griffin (as well as Lansky and PRH) when they contacted Plaintiff and solicited her private information for the benefit of and at the direction of Defendants in furtherance of creating content for Griffin's memoir. (*Id.* ¶ 97.) Plaintiff further alleges that Griffin admits in *The Tell* that she hired private investigators to track down information and find corroborating witnesses, and that the investigators identified "Claudia" and created a "transcript" detailing their interviews with "Claudia," suggesting that Griffin directed and authorized an investigative scheme to obtain Plaintiff's private information. (*Id.* ¶ 98.) Alternatively, Plaintiff alleges Defendants ratified Doe 1 and Doe 2's conduct by "knowingly accepting, using, and publishing Plaintiff's private information obtained through a fraudulent scheme." (*Ibid*.) In other words, Plaintiff alleges Griffin is liable for intruding into Plaintiff's private affairs by authorizing and/or ratifying Doe 1 and Doe 2's fraudulent extraction of information regarding Plaintiff's history of sexual abuse in early 2022, and by later using that information in her memoir. (*Id.* ¶¶ 20, 49-55, 98.)

---

failing to set forth a reasoned analysis, supported by California legal authority, to support the application of New York law here, the Court finds that Griffin has waived this contention for purposes of this Special Motion to Strike.

3

The evidence submitted by Doe, if found to be credible by a jury, is sufficient to corroborate these allegations. First, Doe can easily establish that she had a reasonable expectation of privacy in her sexual assault history. Doe disclosed these events only in limited circumstances, usually to close friends or in confidential settings. (Doe Decl., ¶¶ 5-6, 13-14, 22-25, 32-48; Jennings Decl., ¶¶ 7, 9; Bondhus Decl., ¶¶ 6-7; Barnett Decl., ¶¶ 5-8.) Even to the extent that she shared her history with "Dominique," she was expressly told that the matter would be kept confidential and not shared without a formal contract such that she reasonably believed that she would have creative control over her narrative if it was ever shared publicly. (Doe Decl., ¶¶ 38, 48.) Doe's limited disclosure in what she believed to be confidential settings does not preclude a finding that Doe had a reasonable expectation of privacy in her sexual assault history.

Second, Griffin's intent to intrude into Doe's private memories of childhood sexual abuse is suggested by Doe's declaration that Griffin reached out to her in 2019 (*before* the MDMA sessions ever occurred) and invited Doe to coffee, where she obtained Doe's address. (Doe Decl., ¶¶ 26-27, 30-31.) If Doe is found to be credible, this meeting indicates a premeditated effort to contact Doe to conduct preliminary due diligence. Further, Griffin admits— in both her declaration and in the Book— that she hired private investigators in connection with her "investigation and verification process" after her MDMA therapy experience. (Griffin Decl., ¶ 23; *The Tell*, at pp. 218-220.) Griffin further admits that those investigators contacted individuals that lived in Amarillo in order to find witnesses who could "verify" Griffin's memories. (*Ibid.*) Griffin's knowledge that her investigative agents were interviewing potential witnesses would reasonably suggest to Griffin that any "memories" that appeared in drafts of *The Tell* that did not come from Griffin herself may have been collected by her agents through these interviews with witnesses. Assuming that Plaintiff's testimony and the testimony of her witnesses is found to be credible, the descriptive details of Plaintiff's sexual assaults during middle school which she shared with Dominique and which also appear in *The Tell* are sufficient circumstantial evidence of agency (or, at minimum, ratification of the investigators' conduct) to demonstrate Plaintiff's theory has minimal merit.

Third, the fraudulent circumstances under which Doe was contacted to intrude into her sexual assault history and the publication of her private information without her knowledge or consent would be highly offensive to a reasonable person. Doe declares that she received a call from "Dominique" in or around April 2022 from the telephone number 774-314-1449. (Doe Decl., ¶¶ 32, 33.) Dominique Price (Doe 1) confirms this is his phone number at the time. (Price Decl., ¶ 4.) Doe explains that "Dominique" told her that he was a talent agent or producer and was interested in developing Plaintiff's life story for commercial purposes, such as a film or a book. (Doe Decl., ¶¶ 32, 33.) Doe declares that Doe 1 called her several times during a period of approximately one month,

4

asked detailed questions about Doe's life and childhood in Texas, her time in the Children's Home, and her traumatic experiences. (*Id.* ¶ 35.) Doe declares that she shared details with Doe 1 regarding being sexually assaulted by a teacher at Austin Middle School, the school dance, her floral puffy dress borrowed from Griffin, being led away from the dance floor by a teacher, the dress getting soiled, returning the stained dress, and a bathroom assault involving the teacher's boot on her back, the bandana in her mouth, and being hit with a belt. (*Id.* ¶ 36.) Doe 1 instructed Doe to keep the matter confidential and told Doe that her story would not be used unless she signed a formal contract. (*Id.* ¶ 38.) Later, a woman, "Robbie Banks" (Doe 2) called Doe, told her she was working with Dominique, and invited Doe to Los Angeles for a meeting regarding the project. (*Id.* ¶ 40.) Doe declares that neither Doe 1 nor Doe 2 ever informed Plaintiff that they were connected with Griffin or *The Tell* or that her information would be used in a memoir, and that Doe never consented to any recording or transcription of her conversations. (*Id.* ¶ 47.) Doe further declares that she would not have shared these intimate details of her life if she had known they were being collected for use in the Book or any project that would expose her trauma without her consent. (*Id.* ¶ 48.) The false pretenses and financial motives of the intrusion into Doe's intimate memories of assault contribute to the highly offensive nature of this intrusion. (See CACI, No. 1800.)

Fourth, Doe's declaration confirms that she was harmed. Doe declares that the publication of the details of her childhood sexual assaults without her permission caused her severe emotional distress: she felt violated, betrayed, and re-traumatized; she experiences anxiety, depression, humiliation, and feelings of powerless; and she had to seek treatment from mental health professionals. (Doe Decl., ¶¶ 60-62.) "[T]he damages flowing from an invasion of privacy logically would include an award for mental suffering and anguish." (*Miller v. National Broadcasting Co.* (1986) 187 Cal.App.3d 1463, 1484.) Finally, Doe can also establish that Griffin's conduct was a substantial factor in causing this harm because Doe's emotional distress would not have occurred but for Griffin's role in publishing the Book with either knowledge of or reckless disregard of the fact that Doe's private information was misappropriated.

In her motion, Griffin initially argues that Plaintiff's narrative that she spoke with "Dominique" as early as April 2022 must be fabricated because Plaintiff's own notes may indicate that the call occurred on March 23, 2023 at the earliest. (Mot., at p. 10.) Specifically, Griffin submits a copy of Plaintiff's handwritten notes, produced in discovery, which state, "Dom Talent Agent 774-314-1449 Show??" in the margin of a document which also reflects meeting minutes for a meeting that occurred on March 22, 2023. (Weingarten Decl., Exh. 10, at p. 0065.) Griffin argues that March 2023 was: (i) almost three years after Griffin contends she recovered her memories of abuse (in July 2020) (as documented in Exhibits B and C to the Griffin Declaration), (ii) almost two years after Griffin

5

reported her abuse to law enforcement (as documented in Exhibit A to the Griffin Declaration), (iii) a year after Griffin began writing portions of *The Tell* (as documented in Exhibit E to the Griffin Declaration), and (iv) the same month that Griffin prepared her book proposal. (Mot., at pp. 10-11.)

As discussed above, however, Doe responds by declaring that she received a call from a man who introduced himself as "Dominique" in or around April 2022. (Doe Decl., ¶ 32.) Doe explains that she wrote Dominique's name and phone number down on a piece of paper (as reflected in Griffin's Exhibit 10), and that when she received the call, she had flipped the notebook forward a few pages to write Dominique's information down but kept taking minute notes in the same notebook moving forward. (*Id.* ¶ 33.) If found to be credible, this declaration would reasonably explain why Plaintiff's written note of the caller's name and phone number appear on a page that has a later date than the day of the purported call from "Dom." (*Ibid.*) Even further, consistent with the timeline presented by Doe's declaration, Doe also submits the declarations of two friends who confirm that Doe revealed to them in 2022 that someone who was purportedly working in the entertainment industry had contacted her about making a movie about her life story. (Krajnak Decl., ¶¶ 3-5; Nowak Decl., ¶¶ 2-5.) Critically, the Court is not tasked with weighing credibility at this stage of the proceedings. (*Soukup*, *supra*, 39 Cal.4th at p. 269, fn. 11.) Because Doe has submitted sufficient evidence confirming her allegations that the calls with Dominique began in or around April 2022, the Court must accept this evidence for purposes of the SLAPP analysis.

Griffin identifies only three exhibits which were purportedly created prior to April 2022. First, Griffin's therapy notes from July 2020 contain very limited details and fail to corroborate Griffin's knowledge of any of Doe's "private facts." (Griffin Decl., Exhs. B, C.) Griffin's therapy notes merely state that she leant a dress to [redacted] for Austin Day, hint that she was being kind instead of accepting "what was actually happening," and identifies a potential trauma as a 12-year-old. (*Ibid.*) However, these notes contain no *specific* details of any sexual assault, let alone by a teacher at the middle school during a dance or in a school bathroom. (*Ibid.*) Second, Griffin submits an interview transcript, which Griffin contends is a transcription of her phone interview with a detective in late August 2021. (Griffin Decl., ¶ 7, Exh. A.) While this transcript does describe two assaults that are consistent with Doe's alleged experiences and facts which later appear in *The Tell*, the Court finds that this transcript is inadmissible. (See *infra*, Section IV.) Because Griffin's testimony regarding the date and contents of this purported interview is not independently corroborated, the underlying fact that Griffin knew these details as early as August 2021 is dependent on a credibility determination that cannot be resolved on SLAPP proceedings. Third, while the article draft written by Griffin in March 2022 generally and vaguely describes her traumatic history of being assaulted by a teacher in middle

6

school, but the article lacks specific details about any particular assault (other than identifying that the predator was a teacher who wore cowboy boots[2]) or the character "Claudia" which later appear in *The Tell*. (Griffin Decl., Exh. E.) Ultimately, the Court finds that these documents are insufficient to show that Doe is unable to demonstrate that her claims have minimal merit, as they simply weigh upon the credibility of the parties.

Next, Griffin argues that Doe's narrative must be fabricated because Dominique Price declares under oath that he never contacted Doe or elicited information from her and never had any connection with Griffin or *The Tell*. (Price Decl., ¶¶ 5-8.) Further, Griffin also denies that she met Doe for coffee in Palm Springs in 2019, or otherwise, or that she even traveled to Palm Springs between 2018 and 2020. (Griffin Decl., ¶¶ 20-21.) Griffin also denies asking her investigators to contact Plaintiff or otherwise instructing anyone to contact Plaintiff for any reason (prior to the instant lawsuit). (*Id.* ¶ 22.) Even so, while these competing declarations go to Plaintiff's credibility as a witness, they do not demonstrate that Plaintiff (if believed by the jury) is unable to make a prima facie showing that Griffin either authorized or ratified the intrusion into Plaintiff's private affairs as a matter of law. (Code Civ. Proc., § 425.16, subd. (b)(2); *Soukup, supra,* 39 Cal.4th at p. 269; *Key, supra*, 34 Cal.App.5th at p. 515.)Therefore, the Court finds that Doe's intrusion into seclusion claim against Griffin has, at least, minimal merit.

### ii.     *2ⁿᵈ Cause of Action: Publication of Private Facts* – GRANTED

Plaintiff fails to demonstrate that her second cause of action has minimal merit. To state a cause of action for public disclosure of private facts, the plaintiff must prove all of the following elements: (1) that the defendant publicized private information concerning the plaintiff; (2) that a reasonable person in the plaintiff's position would consider the publicity highly offensive; (3) that the defendant knew, or acted with reckless disregard of the fact, that a reasonable person in the plaintiff's position would consider the publicity highly offensive; (4) that the private information was not of legitimate public concern; (5) that the plaintiff was harmed; and (6) that the defendant's conduct was a substantial factor in causing the plaintiff's harm. (CACI, No. 1801.)

The right to privacy "cannot be asserted by anyone other than the person whose privacy has been invaded, that is, plaintiff must plead and prove that *his* privacy

---

[2] Even if the perpetrator's cowboy boots become a relevant detail in *The Tell*, a jury might conclude that this detail initially appears by chance— it would not be unusual to imagine that an adult male in Texas might wear cowboy boots. Further, assuming Doe is credible, there is circumstantial evidence to conclude that Griffin might have known limited details about Doe's assaults prior to having her recovered memories, given that the assaults occurred at a dance that Griffin also attended, Doe returned to the dance disheveled, and Doe returned the dress to Griffin still stained from the first assault.

has been invaded." (*Hendrickson v. California Newspapers, Inc.* (1975) 48 Cal.App.3d 59, 61 (*Hendrickson*).) "It is clear that the publication must contain some direct reference to the plaintiff. The publication must invade the plaintiff's privacy. Where the publication was directed at another individual and referred incidentally to the plaintiff but was not directed at him, no recovery can be had." (*Ibid*.) "Although *complete* lack of identification or identifiability would seemingly defeat a private facts claim, as there could be no injury, an invasion of privacy does not necessarily depend on whether the plaintiff's full name was broadcast or whether she was identifiable to *all* viewers." (*Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 230, fn. 12 (*Shulman*).) As the *Shulman* court explained, "even if plaintiffs' names had been changed in nonfiction book, factual details would have identified them 'to anyone who has known [them] well for a long time (members of their families, for example), or who knew them before they got married; and no more is required for liability either in defamation law [citations] or in privacy law.'" (*Shulman, supra,* 18 Cal.4th at p. 230, fn. 12, quoting *Haynes v. Alfred A. Knopf, Inc.* (7th Cir. 1993) 8 F.3d 1222, 1233.) "[A] statement may support a cause of action … even if it does not specifically identify the plaintiff by name, so long as a recipient of the communication reasonably understands that the statement was intended to refer to the plaintiff." (*Taus v. Loftus* (2007) 40 Cal.4th 683, 718 (*Taus*).)

Here, Plaintiff alleges that Defendants, including Griffin, publicly disclosed private facts about Doe's life by publishing intimate details of her childhood sexual trauma in *The Tell*, a widely distributed memoir. (Compl., ¶¶ 106-107.) Specifically, Doe contends that details of two of her sexual assaults by a middle school teacher were disclosed in *The Tell* (albeit through the lens of Griffin's own "memories"), including Doe's borrowed dress, the school dance, and the bathroom assault involving a boot, bandana, and belt. (Doe Decl., ¶¶ 7-25, 59; *The Tell*, at pp. 87-90, 101-102, 128-129.) As detailed above, Doe submits the declaration of multiple corroborating witnesses who recall Plaintiff's version of events and confirm Doe's knowledge of these events prior to Griffin's MDMA therapy sessions. (See *supra*, Section II.A.)

It cannot be disputed that the publication of an individuals' private sexual assault history would be highly offensive to a person in the survivor's position. Even so, Doe's second cause of action necessarily fails on the first element. Even assuming that Doe can establish that portions of Griffin's sexual assault narrative in *The Tell* were actually drawn from Doe's history, the issue with Plaintiff's public disclosure of private facts claim is that *The Tell* never identifies Doe as the individual who was assaulted. Even if Doe is correct that she is referenced in the Book as "Claudia," the Book does not depict that either of the two sexual assaults happened to the character "Claudia." (*Hendrickson, supra,* 48 Cal.App.3d at p. 61.) Instead, the "highly offensive" factual details of Doe's personal and private sexual assaults are directed *at Griffin* herself. References

8

to Doe (or "Claudia") are merely incidental. In fact, the character "Claudia" repeatedly denies that she was sexually assaulted. (*The Tell*, at pp. 218-220, 240, 250-252.) Thus, even assuming *arguendo* that individuals who have known Doe for a long time could identify her as the character "Claudia," the same individuals would not necessarily understand that Griffin's description of the two sexual assaults at issue were also referring to Doe. (*Shulman, supra,* 18 Cal.4th at p. 230, fn. 12; *Taus, supra,* 40 Cal.4th at p. 718.)

Doe submits no legal authority to support her contention that a publication of a plaintiff's private information which attributes the narrative to another person who shares no identifying details with the plaintiff is sufficient to establish a public disclosure of private fact claim. In fact, Doe's Opposition does not address this issue at all. At most, the incidental references to "Claudia," even if sufficient to implicate Doe, are too attenuated from Griffin's sexual assault narrative to permit a reasonable reader who knows Doe to conclude that Griffin's narrative is based in part on Doe's two assaults.

Thus, Doe cannot demonstrate that her public disclosure of private fact claim against Griffin has even minimal merit. Accordingly, Doe's second cause of action against Griffin is stricken from the Complaint.

### iii.    3rd *Cause of Action: False Light* – DENIED

Plaintiff has adequately demonstrated that her third cause of action has minimal merit. To state a cause of action for false light, a plaintiff must prove all of the following elements: (1) that the defendant publicly disclosed information or material that showed the plaintiff in a false light; (2) that the false light created by the disclosure would be highly offensive to a reasonable person in the plaintiff's position; (3) that there is clear and convincing evidence that the defendant knew the disclosure would create a false impression about the plaintiff or acted with reckless disregard for the truth, or that the defendant was negligent in determining the truth of the information or whether a false impression would be created by its disclosure; (4) that the plaintiff was harmed; and (5) that the defendant's conduct was a substantial factor in causing the plaintiff's harm. (CACI, No. 1802.) Like in a defamation claim, where the plaintiff is a private figure, she is only required to prove negligence rather than actual malice to recover damages, unless she is seeking punitive damages. (*Khawar v. Globe Internat.* (1998) 19 Cal.4th 254, 274.)

Here, as described above, Doe alleges that she is depicted in *The Tell* under the pseudonym "Claudia," who is characterized as a fellow classmate that borrowed a dress from Griffin and who Griffin suspects may have also been sexually assaulted by the same teacher. (Compl., ¶¶ 59-61.) In her false light claim, Doe alleges that *The Tell* falsely portrays Doe as a "knowing, willing, and consenting

9

participant in the creation of *The Tell*" by depicting "Claudia" as: (1) being aware that she was speaking with investigators working on behalf of Griffin, (2) voluntarily providing information for use in the memoir, and (3) supporting the publication of her private traumatic experiences. (*Id.* ¶¶ 67-71, 77, 113-114.) *The Tell* also suggests that "Claudia" repeatedly denied having memories of any sexual assault experiences. (*The Tell*, at pp. 218-220, 240, 250-252.)

As a preliminary matter, the Court finds that Doe has made a prima facie showing that the character identified as "Claudia" is identifiable as Doe. As described above, *The Tell* portrays "Claudia" as a girl from Amarillo in Griffin's grade, with "blue eyes and blunt-cut bangs" and a turbulent home life. (*The Tell*, at pp. 26, 240.) Several witnesses confirm that Doe matches this description: a girl with blue eyes and blunt-cut bangs, who grew up in the Children's Home in Amarillo, had an unstable home life, and was classmates with Griffin. (Doe Decl., ¶¶ 1-4, 7-9, 15, 54; Shelton Decl., ¶¶ 2-4; VanDenBosch Decl., ¶ 2.) In *The Tell*, Griffin also repeatedly states that she lent "Claudia" a "floral dress with puffy sleeves" for a "dance," and that "Claudia" returned the dress to Griffin in a plastic bag. (*The Tell*, at pp. 26, 99-100, 217-220, 242-243.) Several witnesses confirm that Doe borrowed a puffy, floral dress for a school dance. (Doe Decl., ¶¶ 7-9, 15, 54; Jennings Decl., ¶¶ 4-5; VanDenBosch Decl., ¶¶ 4-7.) Additional similarities between "Claudia" and Doe, including the 2019 coffee meeting and their postcard exchange, are summarized above. (See *supra*, Section II.A.)

Even more compelling is the description of "Claudia" in Griffin's book proposal: "There was a girl in my grade named Claudia who had blue eyes and blunt cut bangs; I only realized she lived in foster care when I saw her boarding the big white bus that everyone knew took kids back to the group home. … A few weeks before Austin Day, the big end-of-year celebratory dance, Claudia mentioned, sheepishly, that she didn't have a dress. "I'll lend you one," I said. "I have two options— a floral dress, and a pink dress. Which one do you want?"" (Rosenblatt Decl., Exh. 1, at p. 1854.) These additional details, including that "Claudia" lived in foster care and took a white bus to school are also consistent with Doe. (Doe Decl., ¶¶ -2-3; VanDenBosch Decl., ¶ 2; Shelton Decl., ¶ 3.)

Griffin and Lansky both deny that Doe is "Claudia." (Griffin Decl., ¶¶ 14, 19; Lansky Decl., ¶ 5.) Griffin also denies lending Doe a dress for an eighth-grade dance. (Griffin Decl., ¶ 25.) Griffin and Lansky contend that they met with the "real" "Claudia" in Tennessee in April 2023. (*Id.* ¶¶ 16-18; Lansky Decl., ¶ 6.) Defendants submit copies of a text message exchange which purportedly occurred between Griffin and "Claudia" (although the name and phone number is redacted) and email records of the April 2023 meeting. (Griffin Decl., Exhs. H, I, J.) Even so, Griffin still refuses to identity the individual purported to be the "real" "Claudia." Defendants have also failed to produce any declaration from "Claudia" corroborating the hearsay statements purportedly made by the

10

individual who is "Claudia" or confirming that this individual also matches the same description of "Claudia" in *The Tell*. Without such evidence, Defendants' evidence pertaining to the identity of "Claudia" is dependent upon their credibility as witnesses and must be resolved by the jury.

The evidence submitted by Doe, if found to be credible, is sufficient to show that her third cause of action has minimal merit. First, Doe's evidence suggests that Griffin portrayed Doe in a false light in *The Tell*. As detailed above, Doe has made a prima facie showing of the following facts: (1) Doe was sexually assaulted in a manner largely consistent with two of Griffin's assaults described in *The Tell*, (2) Doe was interviewed by "Dominique" and personal details from her interviews later appeared in the Book, (3) the character "Claudia" in *The Tell* fits a description consistent with Doe, (4) *The Tell* depicts "Claudia" as consenting to interviews with Griffin's investigators and a coffee meeting with Griffin where Griffin discussed her memories of abuse, and (5) the "Claudia" repeatedly denies that she was sexually assaulted. (Doe Decl., ¶¶ 8-12, 18-21, 52-53; VanDenBosch Decl., ¶¶ 7-8; Jennings Decl., ¶¶ 6-7, 9; Bondhus Decl., ¶ 7; Barnett Decl., ¶ 6; *The Tell*, at pp. 26, 87-89, 99-102, 128-129, 139-140, 217-221, 238, 240-243, 247-248, 250-252.) Meanwhile, Doe's evidence suggests that Doe was not informed that details from her interviews with "Dominique" would be shared with anyone, let alone Griffin, and that she did not consent to this disclosure. (Doe Decl., ¶¶ 24-25, 46-48.) Assuming Doe and her witnesses are credible, Griffin's suggestion that "Claudia" voluntarily participated in Griffin's investigation and consented to having investigators record her interviews, while repeatedly denying that she herself was sexually assaulted presents Doe (i.e. "Claudia") in a false light.

Second, the false depiction that Doe both knowingly participated in Griffin's investigation and denied that she was personally sexually assaulted would be highly offensive to a reasonable person *in Doe's position*. Doe alleges that Griffin's misleading portrayal of "Claudia" in the Book is "highly offensive" because it gives the impression that Doe was informed about the investigation, voluntarily participated in it, supported Griffin's alleged pursuit of justice, and then consented to the publication of private facts about her sexual molestation in a creative retelling from Griffin's perspective. (Compl., ¶ 115.) A reasonable sexual assault survivor, like Griffin, would find it highly offensive if their intimate, private sexual assault history was extracted under false pretenses and misappropriated as someone else's own story, all while simultaneously portraying the survivor (Doe) as an enthusiastic witness, a supporter of the author (Griffin), and *not* a survivor herself. Griffin argues that the portrayal of "Claudia" in *The Tell* is *not* highly offensive because a reasonable reader would simply be left to conclude that "Claudia" was cooperative, sympathetic, and willing to assist Griffin with her investigation into her recovered memories. (Mot., at p. 13.) This characterization fails to recognize the requirement that the

11

false light must be offensive to a reasonable person *in the plaintiff's position* and entirely omits the fact that "Claudia" is characterized as an individual who was not herself assaulted. (CACI, No. 1802.)

Third, Doe makes a prima facie showing that, at minimum, Griffin was negligent in determining whether a false impression about Doe would be created by the characterization of "Claudia" in the Book. As described above, if Doe is found to be credible, the evidence suggesting that Griffin met with Doe for coffee in 2019, talked about Amarillo and Taco Villa, and exchanged postcards with a photograph of children playing suggests that Griffin knew that details attributed to "Claudia" in *The Tell* were actually attributable to the meeting with Doe. (Doe Decl., ¶¶ 26-27, 30-31; *The Tell*, at pp. 221, 238, 240-243, 247-248, 250-252.) The 2019 meeting also supports an inference that Griffin was acting with premeditation to adopt portions of Doe's stories, given that the meeting occurred prior to Griffin's "recovered memories" in 2020. Likewise, Griffin's admissions that she hired private investigators to "verify" her "recovered memories" suggest that she either knew or should have known the sources of certain details included in the Book. (Griffin Decl., ¶ 23; *The Tell*, at pp. 218-220.) Griffin's overt mischaracterization of Doe's interviews and statements about her assaults, or at minimum, her failure to corroborate the sources and fact-check the characterization of Doe by her ghostwriter, Lansky, suggest that Griffin failed to act with reasonable care when adapting the character "Claudia." (See Lansky Decl., ¶¶ 3-4; Griffin Decl. ¶ 11.)

Fourth, as discussed *supra*, Doe's declaration confirms that she was emotionally harmed as a result of the portrayal of "Claudia" in *The Tell* and that she has had to seek treatment from mental health professionals in relation to this emotional harm. (Doe Decl., ¶¶ 60-62.) Griffin argues that Doe fails to establish special damages, which must be demonstrated in a false light claim where the language at issue is not defamatory on its face. (*Gomes v. Fried* (1982) 136 Cal.App.3d 924, 939.) It can reasonably be inferred that Plaintiff's medical costs constituted a "pecuniary loss" in addition to her emotional harm, which the Court finds sufficient at this stage to demonstrate that Doe incurred special damages. (*Id.* pp. 939-940.) Finally, Doe can also establish that Griffin's conduct was a substantial factor in causing this harm because Doe's distress and mental health treatment would not have occurred but for Griffin's portrayal of Doe (i.e. "Claudia") in the Book.

Therefore, the Court finds that Doe's false light claim against Griffin has, at least, minimal merit.

      iv.     ***4th and 5th Causes of Action: IIED and NIED – DENIED***

Plaintiff has adequately demonstrated that her fourth and fifth causes of action have minimal merit. To state a cause of action for IIED, a plaintiff must prove all of the following elements: (1) that the defendant's conduct was outrageous; (2) that the defendant intended to cause the plaintiff emotional distress or that the defendant acted with reckless disregard of the probability that the plaintiff would suffer emotional distress; (3) that the plaintiff suffered severe emotional distress; and (4) that the defendant's conduct was a substantial factor in causing the plaintiff's severe emotional distress. (CACI, No. 1600.) ""[I]t is not essential to liability that a trier of fact find a malicious or evil purpose. It is enough that defendant 'devoted little or no thought' to probable consequences of his conduct." (*KOVR-TV, Inc. v. Superior Court* (1995) 31 Cal.App.4th 1023, 1031–1032 (*KOVR-TV*).)

"A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' …" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050–1051 (*Hughes*); *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 209.) In deciding whether the defendant's conduct was outrageous, the fact-finder is permitted to consider the following factors: (1) whether the defendant abused a position of authority or a relationship that gave them real or apparent power to affect the plaintiff's interests; (2) whether the defendant knew that the plaintiff was particularly vulnerable to emotional distress; and (3) whether the defendant knew that their conduct would likely result in harm due to mental distress. (CACI, No. 1602; see *Molko v. Holy Spirit Ass'n* (1988) 46 Cal.3d 1092, 1122.) "[W]hether conduct is outrageous is 'usually a question of fact.'" (*Bock v. Hansen* (2014) 225 Cal.App.4th 215, 235; see *Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1614 [where reasonable men can differ, the jury determines whether the conduct has been extreme and outrageous to result in liability].)

Similarly, to state a cause of action for NIED, the plaintiff must prove the following elements: (1) the defendant was negligent; (2) the plaintiff suffered serious emotional distress; and (3) the defendant's negligence was a substantial factor in causing the plaintiff's serious emotional distress. (CACI, No. 1620.) "'[The] negligent causing of emotional distress is not an independent tort but the tort of negligence . . . .' 'The traditional elements of duty, breach of duty, causation, and damages apply. Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and upon a weighing of policy considerations for and against imposition of liability.' " (*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588.) "[D]uty is found where the plaintiff is a 'direct victim,' in that the emotional distress damages result from a duty owed the plaintiff 'that is "assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two."'" (*McMahon v. Craig* (2009) 176 Cal.App.4th 1502, 1510.)

Here, with respect to her IIED claim, Doe alleges that Defendants' conduct in retaining investigators to obtain her private and intimate information and then exploiting and publishing that information for commercial and financial gain while falsely portraying her as agreeable was extreme and outrageous. (Compl., ¶¶ 121, 125.) With respect to her NIED claim, Doe alleges that Defendants owed her a duty to refrain from negligent conduct that would foreseeably cause emotional distress when they initiated contact and solicited her private information, and that they breached that duty through the reckless handling of Plaintiff's private information and their failure to exercise reasonable care in verifying the truth of statements published about her. (*Id.* ¶¶ 129-130.) As a result, Doe alleges that she suffered severe emotional distress. (*Id.* ¶ 126, 132.)

The evidence submitted by Doe, if found to be credible, is sufficient to support these allegations. First, Doe has made a prima facie showing that Griffin's conduct in ratifying the fraudulent extraction, misappropriation, and publication of Doe's intimate, private memories was "outrageous," even apart from the intrusion into Doe's privacy. Griffin argues that Doe cannot reasonably argue that she was distressed by Defendants' conduct when she was simultaneously seeking potential financial gain through her conversations with Doe 1 and Doe 2. (Mot., at p. 14.) However, this argument ignores the crux of Doe's emotional distress claims: it was not the mere public disclosure, but the exploitation and mischaracterization of her personal, traumatic memories of childhood sexual abuse without her consent (or her creative control) that caused Doe's severe emotional distress. Doe contends that she was promised her conversations with "Dominique" would remain confidential and that no details would be used unless pursuant to a contract. (Doe Decl., ¶¶ 46-48.) A reasonable juror could conclude that the non-consensual publication of Doe's traumatic memories through the lens of her former classmate's "recovered memories" and the fraudulent exploitation of her memories for commercial purposes exceeded all bounds of human decency. (See *Hughes, supra,* 46 Cal.4th at pp. 1050–1051.)

Notably, Griffin argues that Doe is not "Claudia" and thus, her only involvement in this narrative is through the filing of this litigation. (Mot., at p. 14.) This argument ignores the fact that it is the exploitation and misappropriation of Doe's memories of childhood sexual abuse, not merely the alleged references to Doe as "Claudia" that was "outrageous." (Compl., ¶¶ 121, 130.) As discussed above, *The Tell* does not indicate that "Claudia" was subjected to the two sexual assaults at issue. (See *supra*, Section II.C.ii.) Instead, *The Tell* characterizes the two assaults as if they happened to Griffin. A reasonable jury could conclude that it was "outrageous" for Griffin, a childhood acquaintance of Doe, to participate in an exploitative scheme to collect childhood memories from Doe only to publicly portray them as her own experiences for financial gain. The

14

references to "Claudia" (assuming they are identifiable as Doe herself) simply add to the already "outrageous" circumstances. (See *supra*, Section II.C.iii.)

Second, Doe makes a prima facie showing of the "intent" element, as required for IIED (or negligence, as required for NIED). Griffin argues that her use of pseudonyms in *The Tell* affirmatively demonstrates that she respected the privacy of individuals, including "Claudia." (Mot., at p. 14.) Even so, the "intent" element of IIED is satisfied by a showing that the defendant acted in reckless disregard of the probability that the plaintiff would suffer emotional distress. *(Little v. Stuyvesant Life Insurance Co.* (1977) 67 Cal.App.3d 451, 462; *Cervantez v. J.C. Penney Co.* (1979) 24 Cal.3d 579, 593.) As described above, Doe's evidence is sufficient to support her claim that Griffin ratified the exploitative conduct of her investigative agents by reframing traumatic memories from third-party witnesses, including Doe, as Griffin's own "recovered memories" to enhance the dramatic narrative of her memoir. (See *supra*, Sections II.C.i, iii.) At minimum, the same evidence supporting the "intent" element of Doe's two privacy claims above demonstrate that Griffin "devoted little or no thought" the probable consequences of misappropriating another person's sexual abuse history to enhance her own memoir. (*KOVR-TV, supra,* 31 Cal.App.4th at pp. 1031–1032.) Whether "Claudia" is identified as a pseudonym is entirely irrelevant to the allegation that Griffin used Doe's sexual abuse narrative as her own in reckless disregard for (or a lack of reasonable care for, in the case of NIED) Doe's likely emotional distress.

Finally, as discussed *supra*, Doe's declaration confirms that she suffered "severe" emotional distress and Griffin's role in creating/publishing the Book was a substantial factor in causing her distress. (Doe Decl., ¶¶ 60-62.)

Therefore, the Court finds that Doe's IIED and NIED claims against Griffin have, at least, minimal merit.

### v.    *6ᵗʰ Cause of Action: Violation of the UCL* – GRANTED

Plaintiff fails to demonstrate that her sixth cause of action has minimal merit. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising…" (Bus. & Prof. Code, § 17200.) The UCL "can constitutionally restrict speech properly classified as commercial." (*Serova v. Sony Music Entertainment* (2022) 13 Cal.5th 859, 874 (*Serova*).) Expressive speech which merely conveys the defendant's "points of view" is non-commercial speech which is entitled to the protection of the First Amendment. (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 967.) In determining whether speech is "commercial" in nature, "the United States Supreme Court has indicated that economic motivation is relevant but not conclusive and perhaps not even necessary." (*Id.* at p. 968.) "Sometimes speech will have commercial

15

and noncommercial components. If a legal command or law of nature makes it 'impossible' to separate the commercial components from the noncommercial, the two are '"inextricably intertwined,"' and we bestow noncommercial status on both components." (*Serova, supra,* 13 Cal.5th at pp. 880–881.)

Here, Doe cannot dispute that *The Tell* is, at least partially, an expressive, non-commercial work. Griffin's alleged economic motive in promoting MDMA therapy through the Book, and the economic value of the Book itself are, standing alone, insufficient to transform *The Tell* into a purely commercial endeavor. (Compl., ¶ 160.) At its core, *The Tell* is a memoir, based at least in part on Griffin's true childhood, which explores Griffins' perspective on the nature of memory through the lens of Griffin's purported "recovered memories" of her childhood. Even if Doe is able to establish that details from *The Tell* were partially fictionalized or not based entirely on Griffin's true memories, any commercial motives or factual distortions are "inextricably intertwined" from the non-commercial nature of the Book as a whole. (*Serova, supra,* 13 Cal.5th at pp. 880–881.) Further, Plaintiff's Opposition is entirely silent on this issue.

Accordingly, the Court finds that Doe is unable to establish that her UCL claim against Griffin has even minimal merit. Thus, the sixth cause of action against Griffin is stricken from the Complaint.

Therefore, Griffin's Special Motion to Strike is GRANTED with respect to Plaintiff's first, third, fourth, and fifth causes of action and DENIED with respect to Plaintiff's second and sixth causes of action.

## II.    GRIFFIN'S DEMURRER TO THE COMPLAINT – CONTINUED

Griffin demurs to each cause of action asserted against her in the Complaint, in addition to Doe's claim for punitive damages, pursuant to Code of Civil Procedure section 430.10, subdivision (e).

As described above, the Court notes that Griffin's counsel made limited and unsuccessful efforts to meet and confer in-person, by video conference, or telephonically in compliance with the statutory requirements of California Code of Civil Procedure Section 430.41. (Weingarten Decl., ¶¶ 4-6.) Under the circumstances (particularly considering that the parties now have an initial ruling on the preliminary merits of each cause of action against Griffin), the Court believes that further meet and confer efforts on the demurrer to any remaining causes of action would be potentially fruitful.

At this juncture, for sake of judicial efficiency, the Court declines to provide a tentative ruling on Griffin's demurrer and will provide a ruling, to the extent necessary, after a final ruling is entered on Griffin's Special Motion to Strike.

16

## III.   EVIDENTIARY OBJECTIONS

The Court, on its own motion, deems the following facts and documents inadmissible: (1) Griffin Decl., ¶ 18, Exh. F and Lansky Decl., ¶ 6 (to the extent they purport to communicate the contents of "Claudia's" out-of-court statements), are inadmissible hearsay; (2) Griffin Decl., Exh. K (the contents of the purported conversation between Lansky and Griffin after the meeting with "Claudia"), is inadmissible double-hearsay and the transcript/underlying recording are not properly authenticated, (3) Griffin Decl., Exh. A (the contents of the purported detective phone interview transcript), is in admissible because the transcript itself is hearsay and the transcript/underlying recording are not properly authenticated.

The Court also notes that co-defendants PRH have attempted to lodge a copy of *The Tell* in its entirety. (Laidman Decl., Exh. C.) Pursuant to its analysis under Evidence Code section 352, the Court notifies the parties that it has read the following pages only and will permit only these pages to be admitted into evidence: Griffin Decl., Exh. D, at pp. 11-13, 88-103, 160-162, 217-222; Rosenblatt Decl., Exh. 6, at pp. 27, 67, 77, 79, 81-83, 87-103, 106-109, 112-113, 116-117, 120-121, 124-129, 132-135, 138-141, 172-173, 200-201, 212-213, 216-221, 232-233; Laidman Decl., Exh. C, p. 26, 237-244, 247-252.

Griffin objects to the Declaration of Jane Doe (nos. 1-55). The following evidentiary objections are SUSTAINED: 1 in part (Exh. 1 only), 4 in part (Exh. 1 only) (lacks foundation); 11 in part (at p. 3:19-20), 16 in part (at p. 4:7-8), 26 (speculative); 12 in part ("as described in *The Tell*"), 44, 46 in part (at p. 8:8-10), 47 in part (at p. 8:12-13) (secondary evidence rule); 48-49 (secondary evidence rule, speculative); 50 in part (at p. 8:23-24) (secondary evidence rule); and 51 (improper lay opinion, speculative). The following objections are OVERRULED: 1 in part (Paragraph 2, excluding Exh. 1), 2-3, 4 in part (Paragraph 7, excluding Exh. 1), 5-9, 10 and 11 in part (at p. 3:17-18) (the contents of Plaintiff's outcry statements to Jennings are not considered for their truth but are admitted to show Plaintiff's knowledge of relevant facts in 1989 and to lay foundation for Jenning's testimony), 12 in part (remaining paragraph), 13-15, 16 in part (at p. 4:4-6), 18-19, 20 (the contents of Plaintiff's disclosures are not considered for their truth but to support her testimony that she considered the matter private), 21-22, 23-24 (opposing party statement; Plaintiff's indication that she told Griffin that she was working as a cleaning lady is not offered for its truth, but to establish context for Exh. 2), 25, 27 (opposing party statement), 28, 29 (the contents of Dominique's statements are not admitted for their truth; to the extent that Plaintiff contends that Griffin in vicariously liable for Dominique's negligence in handling Plaintiff's private information, these statements are also admissible as vicarious statements of the opposing party's agent), 30, 31-32

17

(see preceding comment); 33 (the contents of Plaintiff's statements to Dominique are not considered for their truth but are admitted to show Plaintiff's knowledge of relevant facts in April 2022, as well as Defendants' knowledge of these statements); 34-43, 45, 46 in part (at p. 8:10-12), 47 in part (at p. 8:14-15), 50 in part (at p. 8:25-28), and 52-55.

Griffin objects to the Declaration of Dana Bullard (nos. 1-2). The following evidentiary objection is SUSTAINED: 1 in part (at p. 2:10-11) (irrelevant). The following objections are OVERRULED: 1 in part (at p. 2:9) and 2.

Griffin objects to the Declaration of Janet Nowak (nos. 1-6). The following evidentiary objections are SUSTAINED: 4-5 (irrelevant, prejudicial, speculative); and 6 (lack of personal knowledge, prejudicial, speculative). The following objections are OVERRULED: 1 (the content of Doe's statement to Nowak is not admitted for its truth but to demonstrate that Doe had knowledge of relevant facts in May or June 2022), 2, and 3.

Griffin objects to the Declaration of Larhonda Nichole Barnett (nos. 1-10). The following evidentiary objections are SUSTAINED: 6 in part (at p. 2:27-28) (hearsay); 7-8 (secondary evidence rule, hearsay, lacks foundation); and 9 (hearsay, prejudicial). The following objections are OVERRULED: 1-3, 4-5 (the contents of Doe's statements to Barnett are not admitted for their truth but to establish Doe's knowledge of relevant facts in 2016), 6 in part (at p. 2:25-26), and 10.

Griffin objects to the Declaration of Pastor Jody Shelton (nos. 1-7). The following evidentiary objections are SUSTAINED: 1, 5, and 6 (lacks foundation, improper authentication, secondary evidence rule, speculative); and 7 (lacks foundation, lacks personal knowledge). The following objections are OVERRULED: 2, 3, and 4.

Griffin objects to the Declaration of Shawna Bondhus (nos. 1-3). The following evidentiary objections are SUSTAINED: 1 (prejudicial, misleading); and 2 in part (at "I recall mentioning this observation to Jane Doe herself" and "I told her that I had also been sexually assaulted…") (hearsay, irrelevant). The following objections are OVERRULED: 2 in part (at "She then shared with me that she had been sexually assaulted when she was young") and 3.

Griffin objects to the Declaration of Shellieann Krajnak (nos. 1-3). The following evidentiary objections are SUSTAINED: 2-3 (irrelevant, hearsay). The following objections is OVERRULED: 1 (the content of Doe's statements are not admitted for their truth, only her knowledge of the facts in 2021/2022).

18

Griffin objects to the Declaration of Tonya Francine VanDenBosch (nos. 1-8). The following evidentiary objections are SUSTAINED: 1 and 7 (irrelevant, prejudicial); and 10 (irrelevant). The following objections are OVERRULED: 2-6.

Griffin objects to the Declaration of William Bryan Jennings (nos. 1-9). The following evidentiary objections are SUSTAINED: 1 (irrelevant); 6 (speculative); 8 (hearsay, secondary evidence rule, improper lay opinion); 9 (speculative, improper lay opinion). The following objections are OVERRULED: 2-4, 5 and 7 (the content of Plaintiff's statements to Jennings are not admitted for their truth, but to show that Plaintiff had knowledge of relevant facts in 1989).

**Defendant Amy Griffin to serve notice of the rulings. This tentative ruling ("TR") shall be the order of the Court unless changed at the hearing and shall by this reference be incorporated into the Minute Order.**

**This TR was emailed to counsel and posted to the court's website on Friday, July 24, 2026 at 2 p.m.**

19