CHRISTOPHER M. KELLER, ESQ.
Nevada State Bar No. 7399
HAWKINS MELENDREZ, P.C.
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
Phone: (702) 318-8800
Fax: (702) 318-8801
ckeller@hawkinsmelendrez.com
*Attorneys for Plaintiff,*
*JANE DOE*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| AMY GRIFFIN,<br><br>Plaintiff,<br>v.<br><br>JOLEENE ALTUM,<br><br>Defendant. | Case No. 2:26-cv-01811-GMN-DJA<br><br>**SPECIAL MOTION TO STRIKE UNDER NRS 41.660,** |

COMES NOW, Defendant JOLEENE ALTUM by and through her attorneys of record, CHRISTOPHER M. KELLER, ESQ., of the law firm of HAWKINS MELENDREZ, P.C. and hereby presents the following Special Motion to Strike under NRS 41.660.

This Motion is made and based upon the attached memorandum of points and authorities, the pleadings on file herein, as well as any and all arguments that this Court will permit at the hearing of this Motion.

DATED this 17th day of August 2026

**HAWKINS MELENDREZ, P.C.**

/s/Christopher M. Keller
CHRISTOPHER M. KELLER, ESQ.
Nevada Bar No. 7399
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134
*Attorneys for Defendant*

# I.

# INTRODUCTION

As will be demonstrated in this motion, Griffin's Complaint fails-and the present Anti-SLAPP should be granted-for five independent reasons:

*First*, Griffin is a public figure who neither adequately pleads nor can prove that Doe acted with actual malice. The Complaint instead directs its malice narrative at the New York Times and its reporter, Katherine Rosman, ascribing to them the preconceived conclusions, leading questions, and investigative zeal on which Griffin's theory depends. (Compl. ¶¶ 8–11, 31–39, 42–45.) Rosman's purported state of mind and so-called "jealousy of Griffin" cannot substitute for facts showing Doe subjectively knew her statements were false.

*Second*, the evidence Griffin signals she will rely upon — the transcript of her conversation with Sergeant Eatley and the transcript of her conversation with Sam Lansky — has already been found unauthenticated and excluded by the Judge Fruin in the California lawsuit of *Jane Doe v. Griffin et al*., Los Angeles Superior Court Case No. 26STCV07012 ("California action").

*Third*, Griffin is an incompetent witness under FRE Rule 602. Her "recovered memories" are the product of illegal psychedelic drugs, and she admits there is no independent corroborating evidence establishes that any of the central rape scenes actually happened to her.[1]

---

[1] One indisputable fact controls this entire action: Amy Griffin admits she cannot confirm that the central events in "*The Tell*"- namely, the rape at the 8th grade dance and the violent rape in the school bathroom- actually happened to her. Despite Griffin's extensive investigation aimed at corroborating her so called "recovered memories" after ingesting MDMA, no independent corroborating evidence exists. In her own words: there were "no witnesses", "no physical evidence", "no tangible proof", and "no smoking gun." (See, *Rosenblatt Decl*aration, attached hereto and incorporated as Exhibit "A", Ex .6 ["*The Tell"* excerpts, Bate Stamp RD 019]). Indeed, Griffin ends her book conceding the point, writing that she "would never know for sure" and would "just have to live with the uncertainty. (Exhibit "A," Exhibit 6 "The Tell" at 262, [Bate Stamp RD 036]).

As such, Griffin's later recordings of herself recounting her own drug-induced visions are **not** memoranda based on personal knowledge; they are recitations of images that ***first*** surfaced while she was under the influence of MDMA, an illegal psychedelic drug. Without confirmation that the events occurred, Griffin lacks the personal knowledge required to testify to their truth.

This admitted fact places Griffin's defamation lawsuit atop an irreconcilable internal contradiction. On one hand, Griffin admits she cannot confirm that the underlying events happened to her. On the other hand, to prevail on her defamation claims, Griffin bears the burden of proving — by clear and convincing evidence — that the central events of *The Tell*- i.e. the rape at the eighth-grade dance and the rape in the middle-school bathroom- actually happened to her and not to Joleene Altum ("Doe" or "Jane Doe" or Ms. Doe"). However, Griffin cannot carry a burden that her own book disclaims- nor can she change her story now to obtain a legal benefit.

Doe stands in stark contrast. Doe never forgot the sexual assaults committed against her at the eighth-grade dance and in the middle-school bathroom, and she required no drugs to remember them. Moreover, Doe presents independent corroborating evidence supporting her account that the rape scenes in "The Tell" happened to her and that she is the basis for the character Claudia by producing testimonials of: (1)

*Fourth*, Griffin misstates the New York Times article; ignores her own writing; and relies on statements protected by the litigation privilege to manufacture this lawsuit.

*Fifth*, this lawsuit is procedurally improper: Griffin's defamation claim is a compulsory counterclaim that belongs, if anywhere, in the pending California action.

For these main reasons and the reasons set forth below, the Court should grant this motion in full and award attorney fees to Ms. Doe.

## II.

## STATEMENT OF FACTS

### A. Parties and Cases

Plaintiff Amy Griffin filed this defamation action in the United States District Court for the District of Nevada on June 15, 2026. (ECF 1, Compl., filed June 15, 2026.) Defendant Joleene Altum is the same person who litigates as "Jane Doe" in the related California action, *Jane Doe v. Griffin et al.*, Los Angeles Superior Court Case No. 26STCV07012 (filed March 4, 2026). Both cases arise from the same book (The Tell), the same New York Times article (Sept. 24, 2025), and the same underlying events in Amarillo, Texas in 1989.

### B. The Tell and the Times Article

"The Tell"[2] was published on March 11, 2025, by Penguin Random House (Dial Press) and was promoted as a nonfiction memoir recounting Griffin's "recovered memories" of childhood sexual abuse. (ECF 1, Compl. ¶ 30; *Rosenblatt Decl., Ex 7,* Doe Opp. Ex. 1.) On September 24, 2025, The New York Times published The Billionaire, the Psychedelics and the Best-Selling Memoir, reporting that Altum (Doe) told reporters the book's central abuse scenes were "eerily similar" to her and that she believed she is the basis for the character "Claudia." (ECF 1, Compl. ¶ 10 & n.3; Exhibit "A", *Rosenblatt Decl., Ex 7*, Doe Opp. at 6–7.)

. . .

---

contemporaneous witnesses who were present at the time of the assaults; and (2) witnesses who heard the details now appearing in *The Tell* years before the book was even conceived. (See *Doe Decl., attached hereto and incorporated as Exhibit "B",* ¶¶ 7–21; See also *Jennings Decl*., attached hereto and incorporated as Exhibit "C", ¶¶ 4–9; See also *VanDenBosch Decl*., attached hereto and incorporated as Exhibit "D" ¶¶ 4–8; *Barnett Decl* attached hereto and incorporated as Exhibit "E" ¶¶ 6, 9–12; *Shelton Decl*., attached hereto and incorporated as Exhibit "F", ¶¶ 3–5, Ex. 1.)

[2] Excerpts from" The Tell" are attached to Exhibit "A", Rosenblatt Declaration, as "**Exhibit 6**". The excerpts are cited throughout the Motion as (*Rosenblatt Decl*. Ex .6 [Bate Stamp RD 01-036). For clarity, when the published book is cited, it will also be cited to its corresponding location within as (*Rosenblatt Decl*. Ex .6 [Bate Stamp RD 01-036}

**C. Griffin's MDMA "Recovered Memories" and Lack of Corroboration.**

Griffin states in The Tell that her memories of abuse surfaced during MDMA-assisted therapy sessions beginning in July 2020 and that she has no independent corroboration to establish that the rapes she "recovered" actually happened to her. (See Exhibit "A", *Rosenblatt Decl*. Ex .6 [Bate Stamp RD 015, 019, ]); *Rosenblatt Decl., Ex 7,* Doe Opp. at 9–10.) Griffin writes: "I would never know for sure ... I'd just have to live with uncertainty." (See Exhibit "A", *Rosenblatt Decl*. Ex .6 [Bate Stamp RD 019]). Griffin further acknowledges there were "no witnesses" and "no smoking gun." (See Exhibit "A", *Rosenblatt Decl*. Ex .6 [Bate Stamp RD 019]); *Rosenblatt Decl., Ex 7,* Doe Opp. at 10.)

**D. Altum/Doe's Independent Corroboration**

By contrast, Altum ("Doe") has submitted multiple declarations corroborating core aspects of her account: that she is the basis for "Claudia" and that the central assault scenes in The Tell happened to her. (Exhibit "A", *Rosenblatt Decl., Ex 7,* Doe Opp. at 5–7, 10–14; see also Exhibit "B", *Doe Decl*. ¶¶ 2–3, 7–21; Exhibit "F", *Shelton Decl*. ¶¶ 2–7; Exhibit "C", *Jennings Decl*. ¶¶ 2, 4–9; Exhibit "D", *VanDenBosch Decl*. ¶¶ 2, 4–8; Exhibit "E", *Barnett Decl*. ¶¶ 2, 6, 9–12.) These include the borrowed floral dress for the eighth-grade dance; the assault at the dance and Doe's disheveled return; the return of the stained, bagged dress; the later violent bathroom assault; and Doe's foster-care background, which matches the description of "Claudia" in Griffin's own book proposal. (Exhibit "F", *Shelton Decl*. ¶¶ 3–5, Ex. 1 (Bates 1854).)

**California Anti-SLAPP History.**

Griffin filed an anti-SLAPP motion in the California action on June 15, 2026. (Exhibit "A", *Rosenblatt Decl., Ex 7,* Doe Opp. at 4.) Altum (Doe) opposed on June 29, 2026, submitting eight declarations corroborating her identity as "Claudia" and the occurrence of the assaults. (Exhibit "A", *Rosenblatt Decl., Ex 7,* Doe Opp. at 4, 10–14.) On July 31, 2026, the Hon. Richard L. Fruin denied Griffin's anti-SLAPP motion, allowing four of six claims to proceed. (See Exhibit "A", Order, July 31, 2026, 26STCV07012, the 24-page tentative ruling, which the court adopted, is attached as "**Exhibit 8**" to the Declaration of Zach Rosenblatt.[3])

**Griffin's Evidence Found Inadmissible.**

Within his ruling, Judge Fruin excluded evidence Griffin brought forth as inadmissible. These pieces of evidence include (1) a transcript between Griffin and Sergeant Eatley; (2) a transcript between Griffin and Sam Lansky. The transcripts were found to be unauthenticated. Doe also

[3] A Supplemental Request for Judicial Notice of this Order is the subject of Defendant's Motion for Leave to File Supplemental Pleading. (ECF 31).

objected to them on the basis of hearsay and double hearsay. As to Griffin's recounting of central events that happened in Amarillo (including the rape), Doe contends and objects that Griffin lacks personal knowledge as to the so-called "recovered memories" because they were first recovered after ingesting MDMA—an illegal psychedelic drug—and, according to Griffin's own admissions, there is no independent corroborating evidence that preexisted the drug-induced "recovered memory" sessions. (See Exhibit "A", *Rosenblatt Decl*. Ex .6 [Bate Stamp RD 015, 019, 036])

**Griffin's Refusal to Identify "Claudia**

Despite contending that Doe is not "Claudia," Griffin has refused in discovery to disclose who she contends is the real "Claudia," producing only that Doe is "not Claudia." (See Exhibit "A", *Rosenblatt Decl., Ex 7,* Doe Opp. at 10–11 & nn.2, 4; *Rosenblatt Decl*. ¶¶ 2–4, Exs. 2 & 4.)

**Protected Activity Underlying This Suit**

Griffin's Nevada Complaint predicates her defamation claims on (i) Altum's statements to The New York Times reporters in connection with their public-interest investigation and publication, and (ii) Altum's petitioning activity in the California lawsuit (filing, prosecution, and related litigation communications). (ECF 1, Compl. ¶¶ 1, 10–11, 45–47, 65, 71–76, 78–81, 94–97.) The Complaint incorporates the litigation allegations by reference into both defamation counts. (ECF 1, Compl. ¶¶ 78, 94.)

**Nomenclature; Identity of the Parties for Clarity.**

For clarity in this Nevada motion: "Altum" and "Doe" refer to the same person, Joleene Altum (Jane Doe in the California action). "Griffin" refers to Amy Griffin, Plaintiff in this Nevada case. Moreover, the "book" refers to "The Tell," and "the central rape scenes" or the "underlying events" refer to (1) rape by a teacher at an 8th grade middle school dance in Amarillo at Stephen Austin Middle School and (2) the violent rape in the middle school bathroom at Stephen Austin Middle School..

**III.**

**LEGAL ARGUMENT**

**A. STANDARD**

As the Court in *Moreira-Brown v. Las Vegas Review Journal, Inc* states:

"Motions brought under Nevada's anti-SLAPP statute follow a two-step, burden-shifting framework. At the first step, courts "evaluate 'whether the moving party has established, by a preponderance of the evidence,' that he or she made the protected communication in good faith." A party makes that showing if the communication falls into one of the four categories in NRS 41.637 and was truthful or made without knowledge of its falsity. Relevant here, NRS 41.637(3) covers "statement[s] made in direct connection with an issue under consideration by a ... judicial body,"and NRS 41.637(4) covers "[c]ommunication[s] made in direct

> connection with an issue of public interest in a place open to the public or in a public forum [that are] truthful or [are] made without knowledge of [their] falsehood." If the movant prevails at the first step, the burden then shifts to the plaintiff to "demonstrate[ ] with prima facie evidence a probability of prevailing on the claim."

*Moreira-Brown v. Las Vegas Review Journal, Inc.*, 648 F. Supp. 3d 1278, 1284, 2023 WL 24178 (D. Nev. 2023), aff'd, 23-15143, 2024 WL 1596456 (9th Cir. Apr. 12, 2024)

**B. PRONG ONE**

In its threshold determination, in evaluating an anti-SLAPP motion, the Court decides only whether the claims arise from protected activity; the court reviews the parties' pleading, declarations, and other supporting documents to determine what conduct is actually being challenged, not to determine whether the conduct is actional. *People ex rel. Fire Insurance Exchange v. Anapol*, 211 Cal. App. 4th 809, 150 Cal. Rptr.3d 224 (2d Dist. 2012). Griffin's claims arise from two categories of statements, both protected: Doe's statements to the New York Times concern an issue of public interest, NRS 41.637(4); her statements in *Doe v. Griffin* are petitioning activity, NRS 41.637(3); and Doe made all of them in good faith.

**1. The Statements Fall Within NRS 41.637's Protected Categories**

As stated supra, the Complaint alleges that Doe made defamatory statements (1) in connection with the New York Times article (ECF 1, Compl. ¶¶ 1, 10–11, 79–81, 95–97) and (2) in connection with, and in furtherance of, her court filings in the California case (ECF 1, Compl. ¶¶ 11, 17, 65, 71–76). Both claims for relief incorporate the Complaint's litigation allegations by reference. (ECF 1, Compl. ¶¶ 78, 94.) As shown below, every purportedly defamatory statement referenced in the Complaint falls within the ambit of anti-SLAPP protection.

**a. New York Times Article:**

The Times article — The Billionaire, the Psychedelics and the Best-Selling Memoir (ECF 1, Compl. ¶ 10 & n.3) — concerned a matter of public interest under NRS 41.637(4) and § 425.16(e)(3)–(4): the reliability of recovered memories and the use of MDMA-assisted therapy in trauma treatment, reported through interviews with more than 80 people from Amarillo, the publishing industry, the medical and MDMA communities, and Texas law enforcement. (ECF 1, Compl. ¶¶ 8, 38.)

Doe's statements to the Times were made in connection with that investigation and publication. The Times initiated contact after months of reporting and used details from Griffin's book proposal to locate Doe. (ECF 1, Compl. ¶¶ 8–10, 40–42.) After receiving the book from the Times, Doe spoke to the reporters about "eerie similarities" between her own life and The Tell,

including that she is the basis for the character "Claudia" and that she and Griffin met for coffee in 2019. (ECF 1, Compl. ¶¶ 45–46, 96(a), (h).) Those statements constitute protected speech on a public issue and were made "in furtherance of" the Times' newsgathering and publication. *Lieberman v. KCOP Television Inc*., 112 Cal. App. 4th 1331, 1345 (2003); *Taus v. Loftus*, 40 Cal. 4th 683, 703–704, 713 (2007) (prepublication investigation "in furtherance" of free speech).

**b. Litigation Filings:**

The remaining statements arise from court filings. The Complaint repeatedly invokes Doe's March 4, 2026, California lawsuit, alleging that Doe "made the claims again in a lawsuit improperly filed in California," that the Times covered the filing, and that the lawsuit itself constitutes part of the harm Griffin seeks to redress. (Compl. ¶¶ 11, 65, 71–76.) Pleadings and process in a case are petitioning activity under § 425.16(e)(1) and are protected. *Navellier v. Sletten*, 106 Cal. App. 4th 763, 770 (2003); *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006).

Griffin attempts to "insulate" her Complaint from the litigation privilege with a footnote disclaiming that her "defamation claims are not predicated on Ms. Altum's complaint" and recasting the California pleading as mere "evidence." (ECF 1, Compl. ¶ 46 n.15.) But the anti-SLAPP analysis turns on what a plaintiff pleads, not on how the plaintiff labels it. *Navellier v. Sletten*, 29 Cal. 4th 82, 92 (2002). A plaintiff cannot plead around protected activity by a mere disclaimer; courts must examine the allegations themselves, and where allegations of protected activity supply an element of a claim — publication, falsity, malice, or harm — those allegations are subject to a motion to strike regardless of characterization. *Baral v. Schnitt*, 1 Cal. 5th 376, 393–396 (2016)*; Bonni v. St. Joseph Health System*, 11 Cal. 5th 995, 1010–1012 (2021).

Here, the Complaint relies on Doe's petitioning activity (the California filing and related litigation conduct) to supply elements of publication, falsity, malice, and harm. (ECF 1, Compl. ¶¶ 11, 46, 65, 71–76, 78, 94.) Thus, because the litigation allegations supply elements of Griffin's claims rather than mere context, they arise from protected petitioning activity. *Collondrez v. City of Rio Vista*, 61 Cal. App. 5th 1039, 275 Cal. Rptr. 3d 895 (1st Dist. 2021), review denied (June 30, 2021)( "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action, but, rather, the defendant's activity that gives rise to his or her asserted liability- and whether that activity constitutes protected speech or petitioning".); *Club Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309, 319, 86 Cal. Rptr. 3d 288, 196 P.3d 1094 (2008) ("A plaintiff cannot deprive a defendant of the benefits of the anti-SLAPP statute by bringing a complaint based upon both protected and unprotected conduct.").

**2. Doe Made the Communications in Good Faith: They Were Truthful or Made Without Knowledge of Their Falsehood**

Finally, Nevada's anti-SLAPP statute requires the movant to establish, by a preponderance of the evidence, that the communication was "truthful or is made without knowledge of its falsehood." NRS 41.637; *Rosen v. Tarkanian*, 135 Nev. 436, 438–41, 453 P.3d 1220, 1222–24 (2019). The movant need not prove her statements true; she need only show she did not know them to be false, and the court considers the "gist or sting" of the communications as a whole. *Rosen*, 135 Nev. at 439–41. A sworn declaration attesting to the declarant's belief in the truth of her statements carries this burden absent contrary evidence. *Stark v. Lackey*, 136 Nev. 38, 43, 458 P.3d 342, 346–47 (2020).

Doe meets that standard. She attests from personal knowledge that her statements to the Times describe her own lived experience: her years in the children's home, the borrowed dress, the assault at the eighth-grade dance, the return of the stained dress, and the later bathroom assault. (See Exhibit "B", *Doe Decl.* ¶¶ 2–3, 7–21; See also *Supplement Doe Decl*., attached hereto and incorporated as Exhibit "G" ¶¶ 1-10) She did not seek out the Times; the Times located her, contacted her, and mailed her the book. (See Exhibit "B", *Doe Decl.* ¶¶ 49–59; Exhibit "G", *Supplement Doe Decl*. ¶¶ 1-10) Multiple percipient witnesses independently corroborate the core details of her account. (See Exhibit "C", *Jennings Decl.* ¶¶ 4–9; Exhibit "C", *VanDenBosch Decl*. ¶¶ 4–8; Exhibit "D", Exhibit "E", *Barnett Decl*. ¶¶ 6, 9–12; Exhibit "F", *Shelton Decl.* ¶¶ 3–5.) Whatever dispute exists about whose story *The Tell* tells, Doe did not speak with knowledge of falsity — she spoke about her own life. Doe has therefore carried her prong-one burden, and the burden shifts to Griffin under NRS 41.665. Doe's evidentiary showing at this step does not alter the standard governing Griffin's burden at step two: NRS 41.660 places the step-one good-faith burden on the movant, while *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828, 833–34 (9th Cir. 2018), governs only the standard applied to the plaintiff's step-two showing.

**C. PRONG TWO**

If the movant prevails at prong one, the burden shifts to the plaintiff to demonstrate with prima facie evidence a probability of prevailing on the claim.NRS 41.665(1). The Nevada Legislature expressly tied this burden to California law: a plaintiff opposing a special motion to dismiss must meet the same burden of proof that a plaintiff has been required to meet pursuant to California's anti-Strategic Lawsuits Against Public Participation law. NRS 41.665(2); *Coker v. Sassone*, 135 Nev. 8, 12–13, 432 P.3d 746, 749–50 (2019) (applying California's second-prong framework under NRS 41.665(2)). The Nevada Supreme Court likewise treats California anti-SLAPP authority as persuasive because the two statutes are functional equivalents. *Shapiro v. Welt*, 133 Nev. 35, 39, 389

P.3d 262, 268 (2017); *Delucchi v. Songer*, 133 Nev. 290, 299, 396 P.3d 826, 833 (2017); *Patin v. Ton Vinh Lee*, 134 Nev. 722, 723, 429 P.3d 1248, 1249 (2018); *Taylor v. Colon*, 136 Nev. 434, 482 P.3d 1212, 1216 (2020). Accordingly, Doe cites California authority throughout this prong-two analysis, as NRS 41.665(2) directs.

For the following reasons, Griffin's claims for defamation should be stricken:

**1. Griffin Is a Public Figure**

As an initial matter, we must answer whether Amy Griffin is a public figure under *New York Times Co. v. Sullivan*. If so, Griffin must demonstrate by clear and convincing evidence that Doe made her allegedly defamatory statements with "actual malice"; that is, "with knowledge of [their] falsity or with reckless disregard for the truth." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974). If Griffin cannot make such a showing, she has no possibility of success on the merits, and the district court should grant Doe's special motion to dismiss.

In *Gertz*, the Supreme Court identified two types of public figures: (1) all-purpose public figures, who occupy positions of such persuasive power and influence that they are deemed public figures for all purposes and (2) limited-purpose public figures, who achieve their status by "thrust[ing] themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." Id. at 345. Because in either case such persons assume special prominence in the resolution of public questions, both categories of public figures are subject to the heightened burden of proof in defamation cases. Id. at 351.

Here, there can be little doubt that Griffin is a public figure. She is a billionaire; she holds herself out as the public face of G9 Ventures; she is a bestselling author; she goes on speaking tours; and holds herself out as a celebrity. She has been featured in numerous articles and has voluntarily entered the spotlight. (ECF 1, Compl. ¶¶ 8, 13, 30–31; Exhibit "B", *Doe Decl*. ¶¶ 49–50.) As such, she is a public figure who has willingly exposed herself to the risk of defamatory falsehood and, in a defamation claim, needs to establish, by clear and convincing evidence, that Doe had actual malice.

**2. Griffin's Defamation Claims Fail Under the Rule 12(b)(6) Standard Because the Complaint is Not Legally Sufficient**

As a procedural matter, Plaintiff—here, Griffin—must demonstrate that the cause of action is legally sufficient. *Navellier v. Sletten*, 29 Cal. 4th 82, 89, 93 (2002). The initial focus is whether the plaintiff has properly alleged—pleaded—a valid cause of action. *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 31 (3d Dist. 2007) (anti-SLAPP motion granted where plaintiff failed to plead a legally sufficient defamation claim: "plaintiff's pleading of his libel claim 'is a paradigm of vagueness and does not even come close to the specificity required to state an actionable libel claim.'").

In this Court, that legal-sufficiency inquiry proceeds under the federal pleading standard: the Complaint must allege facts that, accepted as true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions couched as factual allegations are disregarded, *Iqbal*, 556 U.S. at 678–79, and courts applying *Iqbal* to public-figure defamation claims require plausible factual allegations — not labels — supporting actual malice. *See, e.g.*, *Biro v. Condé Nast*, 807 F.3d 541, 544–46 (2d Cir. 2015); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701–02 (11th Cir. 2016)

Here, the Complaint against Doe is not adequately pled for numerous reasons, including:

(1) the Complaint is centered around the New York Times publication, not Doe's own statements, with most factual allegations and purported malice directed at the Times and reporter Katherine Rosman rather than Doe (see, e.g., ECF 1, Compl. ¶¶ 8–11, 31–39, 42–45);

(2) the Complaint relies on litigation-privilege-protected statements in the California action as a basis for defamation, which cannot support a separate defamation claim; and

(3) actual malice is ascribed to the New York Times and its reporters, not to Doe, with no factual allegations showing that Doe knew her statements were false or entertained serious doubts about their truth (see, e.g., ECF 1, Compl. ¶¶ 1–2, 8–12, 32–35, 44–45).

Therefore, because the Complaint fails to allege facts sufficient to support a finding of actual malice by clear and convincing evidence *as to Doe*, the defamation claim against Doe is not adequately pled. Moreover, the conclusory nature of these allegations is fully addressed in detail in Section D, infra.

**3. Allegations on Which Complaint Is Based Are Subject to Litigation Privilege**

California's litigation privilege is defined by statute: "A privileged publication or broadcast is one made: ... (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [a writ of mandate]." Cal. Civ. Code § 47(b). As a general matter, the litigation privilege is an "absolute privilege," barring all torts except malicious prosecution: "The privilege is an absolute privilege, and it bars all tort causes of action except a claim of malicious prosecution." *Flatley v. Mauro*, 39 Cal. 4th 299, 322 (2006); *Intermarketing Media, LLC v. Barlow*, 2021 WL 5990190, at *4 (C.D. Cal. May 4, 2021).

Nevertheless, even though they are distinct, the litigation privilege and the anti-SLAPP statute are intertwined. *Id*. (There is a relationship between the litigation privilege and the anti-SLAPP statute.). The litigation privilege has been used to determine whether a defendant has

met the first part of the two-step anti-SLAPP inquiry under § 425.16(e)(1) and (2). *Id.* at 322–23. The litigation privilege will also factor into the second part of the two-step anti-SLAPP inquiry: Where a defendant's conduct is protected by the "absolute" privilege, the plaintiff cannot meet its second-step burden and the claims based on privileged conduct must be stricken. *Id*. at 323.

Therefore, consideration of an anti-SLAPP motion to strike must take into account the interrelatedness of the anti-SLAPP statute and the litigation privilege, but must do so without conflating the two separate statutes, which are not substantively the same or which do not serve the same purposes *Id*. at 323–25. *Intermarketing Media, LLC v. Barlow*, 2021 WL 5990190, at *5.

Here, the absolute litigation privilege applies to numerous statements that Griffin herself places at the center of her defamation claims. The Complaint repeatedly relies on Doe's March 4, 2026, California lawsuit, *Doe v. Griffin*, No. 26STCV07012 (Cal. Super. Ct.), as a source of allegedly "false" accusations, expressly alleging that Doe "made the claims again in a lawsuit improperly filed in California, seeking to capitalize on the harm the Times article had already caused Mrs. Griffin," and that the Times "covered the lawsuit, confirming that [Doe] was the source of its September article." (ECF 1, Compl. ¶¶ 11, 71–72). It further alleges that Doe's California complaint "expands on this storyline with further detail," (ECF 1, Compl. ¶ 46), and then incorporates those litigation allegations as part of the supposed defamatory narrative in this Nevada action. (ECF 1, Compl. ¶¶ 45–47, 71–76).

To the extent Griffin's claims here are predicated on statements made "in the initiation or course of" that California judicial proceeding—including the filing of the complaint and Doe's related litigation and prelitigation communications—those statements fall squarely within Civil Code § 47(b)'s absolute litigation privilege and are therefore non-actionable as a matter of law. Cal. Code Civ. Proc. § 425.16(e)(1); *Navellier v. Sletten*, 29 Cal. 4th 82, 90 (2002). *Intermarketing Media, LLC v. Barlow*, 2021 WL 5990190, at *5 (It provides express protection for statements or writing made in the course of judicial proceedings.).

Therefore, because an absolute privilege not only satisfies the first prong of the anti-SLAPP analysis but also forecloses any possibility that Griffin can carry her second-prong burden on claims based on privileged conduct, all defamation claims predicated on Doe's California pleadings and litigation communications must be stricken for lack of any probability of prevailing.

**4. The Complaint's Actual-Malice Allegations are Conclusory and Fail as a Matter of Law**

In a defamation action where the plaintiff is a public figure, to demonstrate a prima facie case, the plaintiff must demonstrate by "clear and convincing evidence" that the challenged statements

were made with "actual malice." *Conroy v. Spitzer*, 70 Cal. App. 4th 1446, 1451 (1999); *Beilenson v. Superior Court*, 44 Cal. App. 4th 944, 950 (1996). ("The clear and convincing standard requires that the evidence be such as to command the unhesitating assent of every reasonable mind.").Similarly, a plaintiff's failure to present evidence of "actual malice" where a libel matter involved a public figure or public controversy is a frequent basis for dismissal using the anti-SLAPP statute. *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1162–1172 (2004). Conclusory labels ("actual malice," "bad faith," "ill will") are insufficient; the plaintiff must show the defendant subjectively knew the statements were false or entertained serious doubts at the time of publication. *Id.*

Measured against the Complaint alone, Griffin's actual-malice allegations are conclusory. Paragraphs 87(a)–(d) plead only element-tracking labels: that Doe (a) "had actual, subjective knowledge of the falsity of her accusations," (b) "had a preconceived narrative," (c) "published her claims . . . despite not having any evidence to support them," and (d) "published her claims . . . despite knowing they were inherently improbable." (ECF 1, Compl. ¶ 87(a)–(d); *see also id.* ¶¶ 88–89, 104–108.) Under *Iqbal*, these are precisely the "labels and conclusions" a court must disregard. 556 U.S. at 678.

Stripped of those labels, the Complaint pleads no facts showing Doe's subjective state of mind. It identifies no communication, document, or witness account suggesting that Doe knew her statements were false or entertained serious doubts about their truth when she spoke to the Times. Instead, the Complaint directs its malice narrative at non-parties: it attributes the preconceived conclusions, leading questions, and investigative motives to the New York Times and its reporters, not to Doe. (ECF 1, Compl. ¶¶ 8–11, 31–39, 42–45.) A third party's purported state of mind cannot be imputed to Doe and cannot substitute for factual allegations about Doe's own knowledge.

The remaining allegations fail as a matter of law on the Complaint's face. That Doe knew the Times would publish her statements (ECF 1, Compl. ¶ 11) alleges publication, not knowledge of falsity. That Doe repeated her account in a court filing (ECF 1, Compl. ¶¶ 11, 71–76) alleges privileged petitioning activity, not malice. And that Doe declined to retract after litigation began (ECF 1, Compl. ¶¶ 12, 60) alleges post-publication conduct, which cannot establish her state of mind at the time of publication. Even the Complaint's own timeline undercuts its theory: it alleges Doe made her statements only after the Times located her, contacted her, and mailed her the book (ECF 1, Compl. ¶¶ 40–43) — allegations that describe a person responding to a reporter's inquiry, not one who fabricated a story she knew to be false.

Because the Complaint fails to allege facts plausibly supporting actual malice — an element Griffin must ultimately prove by clear and convincing evidence — the defamation claims fail as a matter of law under the Rule 12(b)(6) standard, and the Court may strike them without reaching any evidentiary question.

**5. In the Alternative, Under the Rule 56 Standard, Griffin Cannot Prove Falsity or Actual Malice by Clear and Convincing Evidence**

At Prong Two, Griffin must produce admissible evidence sufficient to sustain a favorable judgment on her defamation claims. *Sweetwater Union High School District v. Gilbane Building Co*., 6 Cal. 5th 931, 940 (2019); *HMS Capital, Inc. v. Lawyers Title Co*., 118 Cal. App. 4th 204, 212 (2004). Where, as here, the plaintiff is a public figure, that burden is heightened: she must prove falsity and actual malice by clear and convincing evidence. *Conroy v. Spitzer*, 70 Cal. App. 4th 1446, 1451 (1999); *Beilenson v. Superior Court*, 44 Cal. App. 4th 944, 950 (1996). Conclusory labels are insufficient; the evidence must "command the unhesitating assent of every reasonable mind." *Id.*

Griffin's own book forecloses that showing. She expressly admits that the central scenes in The Tell—the eighth-grade dance assault and the violent bathroom assault—cannot be confirmed and rest on "recovered memories" that first surfaced during MDMA-assisted therapy sessions beginning in July 2020. (See Exhibit "A", *Rosenblatt Decl*. Ex .6 [Bate Stamp RD 015, 019, 036]). She writes there were "no witnesses," "no smoking gun," "no physical evidence," and that she "would never know for sure ... [and would] just have to live with uncertainty." (See Exhibit "A", *Rosenblatt Decl*. Ex .6 [Bate Stamp RD 019, 036]).

Those admissions are not merely credibility attacks; they go to foundation and personal knowledge. Under Evidence Code § 602 (and FRE 802(d)(2)), a witness may testify only to matters within her personal knowledge. Griffin's repeated acknowledgments that she lacks independent corroboration and cannot confirm the events actually occurred demonstrate that her testimony about the truth of those events is not the kind of admissible, foundation-sufficient proof that can satisfy the clear-and-convincing standard at the anti-SLAPP stage.

As such, Griffin's statements in "The Tell" are admissions of a party opponent, admissible against her under Federal Rule of Evidence 801(d)(2). Those admissions — "no witnesses," "no smoking gun," "no physical evidence," and that she "would never know for sure" — do more than impeach; they negate the personal knowledge Rule 602 requires before Griffin may testify that the central events occurred. A witness who has publicly and repeatedly disclaimed the ability to confirm an event cannot supply clear and convincing proof of it.

Estoppel principles reinforce this conclusion. Courts refuse to let a party gain a legal advantage by disavowing a position she previously asserted to her benefit. *See New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001) (judicial estoppel prevents parties from "playing fast and loose"); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). In addition, the copyright context supplies a close analogy: under the "asserted truths" doctrine, an author who markets a work to the public as nonfiction may not later recharacterize it to obtain a more favorable legal result. *Corbello v. Valli*, 974 F.3d 965, 978–81 (9th Cir. 2020); *Oliver v. Saint Germain Found.*, 41 F. Supp. 296, 297 (S.D. Cal. 1941). The same logic applies here in mirror image: having sold "*The Tell"* to the public as a nonfiction account in which she conceded she could not verify the underlying sexual assaults, Griffin should not now be heard to assert, for litigation advantage[4], a certainty her own book disclaims.

Notably, the contrast with Doe's certainty is stark. Doe provides a detailed, first-hand account of the dance assault, the borrowed floral dress, the stained return, and the later bathroom assault, corroborated by multiple percipient witnesses. (See Exhibit "B", *Doe Decl.* ¶¶ 7–21; Exhibit "C", *Jennings Decl.* ¶¶ 4–9; Exhibit "D", *VanDenBosch Decl.* ¶¶ 4–8; Exhibit "E", *Barnett Decl*. ¶¶ 6, 9–12; Exhibit "F", Shelton Decl. ¶¶ 3–5.) Griffin, by contrast, admits she has "no witnesses," "no smoking gun," and "no physical evidence," and that she "would never know for sure" whether the events happened to her. (See Exhibit "A", *Rosenblatt Decl*. Ex .6 [Bate Stamp RD 019, 036]). On this record, Griffin cannot produce admissible evidence sufficient to prove, by clear and convincing evidence, that the central events in The Tell actually happened to her and not to Doe. That alone defeats her probability of prevailing on falsity (and, by extension, on actual malice) at Prong Two. (As demonstrated in Section F, *infra*, the transcripts Griffin relies upon are inadmissible and expert testimony cannot cure the deficiency.)

Should the Court reach the evidence under the Rule 56 standard, the record affirmatively refutes any inference of actual malice. Despite Griffin's claim Doe has "no evidence", Doe's declarations show she spoke truthfully about her own lived experiences and recognized matching details in The Tell only after the Times contacted her. (See, Exhibit "B", *Doe Decl*. ¶¶ 49–59; Exhibit "C", *Jennings Decl*. ¶¶ 10–11; Exhibit "E", *Barnett Decl*. ¶¶ 9–12.) Multiple percipient witnesses corroborate core details of Doe's account (the borrowed puffy floral dress, the dance assault and stained return, the later bathroom assault, and her foster-care background), while Griffin admits she

[4] In addition, it must be noted: while there is caselaw that pertains to "repressed memories" in the context of sexual abuse, counsel is aware <u>of no case law where repressed memories of childhood sexual abuse serve as the basis for a defamation claim</u>.

has "no witnesses," "no smoking gun," "no physical evidence" and "would never know for sure" whether the events happened to her. (See Exhibit "A", *Rosenblatt Decl*. Ex .6 [Bate Stamp RD 019, 036]) *compare with* (Exhibit "B", *Doe Decl.* ¶¶ 7–21; Exhibit "C", *Jennings Decl*. ¶¶ 4–9; Exhibit "D", *VanDenBosch Decl*. ¶¶ 4–8; Exhibit "E", *Barnett Decl*. ¶¶ 6, 9–12; Exhibit "F", *Shelton Decl*. ¶¶ 3–5; The Tell at 100–101, 112, 262.)

In sum, Griffin's own admissions in The Tell—that she lacks corroboration and "would never know for sure"—preclude her from producing admissible evidence that commands the unhesitating assent of every reasonable mind that the central events happened to her. Because she cannot meet that clear-and-convincing burden, she cannot show a probability of prevailing on falsity or actual malice, and her defamation claims must be stricken under Prong Two.

**6. In the Alternative Griffin's Anticipated Evidence Is Inadmissible and Cannot Support Clear-and-Convincing Proof at Prong Two**

Griffin's defamation claims fail as a matter of law for the reasons set forth above, and the Court may strike them under the Rule 12(b)(6) standard without reaching any question of evidence. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) (anti-SLAPP challenges to the legal sufficiency of a complaint are evaluated under the Rule 12(b)(6) standard). Doe presents the following evidentiary analysis in the alternative: even if the Court were to treat this motion as a challenge to factual sufficiency under the Rule 56 standard, *id.*, and even after any discovery Griffin might obtain, the evidence Griffin forecasts is inadmissible and cannot establish falsity or actual malice by clear and convincing evidence.

**a. Admissibility of Evidence in an Anti-SLAPP Motion**

As stated supra, Plaintiff must submit admissible evidence to succeed. To satisfy Prong Two, the plaintiff must submit admissible evidence that, if credited, is sufficient to sustain a favorable judgment against the legal theories asserted by the defendant. *Tuchman Development Enterprises, Inc. v. San Diego Unified Port District*, 107 Cal. App. 4th 1219, 1237 (2003). In Prong Two, a plaintiff seeking to demonstrate the merit of a claim may not rely solely upon its complaint, even if verified; instead, its proof must be made upon competent, admissible evidence. *Sweetwater Union High School District v. Gilbane Building Co*., 6 Cal. 5th 931, 940 (2019) ("Sweetwater"); *HMS Capital, Inc. v. Lawyers Title Co*., 118 Cal. App. 4th 204, 212 (2004) ("In opposing an anti-SLAPP motion, the plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial.").

Importantly, if the evidence relied upon cannot be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the

face of an objection. *Sweetwater*, at 949. An affidavit or declaration supporting or opposing an anti-SLAPP motion must be based on personal knowledge and not include hearsay, legal argument, or inadmissible opinions. *Morrow v. Los Angeles Unified School District*, 149 Cal. App. 4th 1424, 1444–1446 (2007). Moreover, a party may be barred from prevailing on issues by force of collateral estoppel, issue preclusion, or waiver. *Miller v. City of Los Angeles*, 169 Cal. App. 4th 1373, 1382 (2008).

Here, it is anticipated that Griffin will attempt to rely on the following evidence:

(i) a transcript between herself and Sergeant Eatley;

(ii) a transcript between herself and Sam Lansky;

(iii) her own testimony stating she has personal knowledge of the facts that a rape occurred to her in 1990 within a school bathroom and at an 8th-grade dance (even though those so-called recovered memories only occurred after she took MDMA and Griffin has no other independent corroborating evidence to support those allegations).

For the following reasons, all that evidence must be rejected.

**b. The Transcripts Are Inadmissible Under the Federal Rules of Evidence**

Doe anticipates that Griffin will rely on (1) a transcript of a conversation between Griffin and Sergeant Eatley and (2) a transcript of a conversation between Griffin and Sam Lansky. Both are inadmissible under the Federal Rules of Evidence, which govern in this Court.

*First*, neither transcript is authenticated. Griffin must produce "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Neither transcript identifies its preparer, its source recording, or its chain of custody, and no witness with knowledge has attested to its accuracy.

*Second*, both transcripts are hearsay. Each consists of out-of-court statements offered to prove the truth of the matters asserted — that Griffin recounted specific "memories" of abuse at specific times. Fed. R. Evid. 801(c), 802. Critically, the party-admission exemption offers Griffin no help: Rule 801(d)(2) permits a statement to be offered *against* the party who made it, not *by* that party in her own favor. Griffin's own prior recorded statements, offered by Griffin to corroborate Griffin, are textbook self-serving hearsay. *See Williamson v. United States,* 512 U.S. 594, 599, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) ("Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true"…. finding that "[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-

inculpatory parts [which are hearsay]");*United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000). The Lansky transcript compounds the problem with hearsay within hearsay, each layer of which requires its own exemption. Fed. R. Evid. 805. None applies.

*Third*, the Superior Court has already sustained these precise objections. In ruling on Griffin's anti-SLAPP motion in the California action, the Hon. Richard L. Fruin excluded both transcripts as unauthenticated. (Exhibit "A", *Rosenblatt Decl.* Ex. 8 [July 31, 2026, Order].) Griffin — the same party, offering the same documents, over the same objections — could not carry her foundational burden even under California's evidentiary standards. That ruling is at minimum persuasive authority that the transcripts cannot be admitted here, and to the extent the order is final under California preclusion law, issue preclusion independently bars Griffin from relitigating the question. *See* 28 U.S.C. § 1738; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (federal courts give a state ruling the preclusive effect the rendering state would give it).

Whether by preclusion or on this Court's independent application of Rules 901, 801, 802, and 805, the transcripts cannot be considered, and Griffin cannot use them to carry her clear-and-convincing burden.

**c. Griffin's Testimony About the Dance and Bathroom Assaults Lacks Foundation and Cannot Satisfy the Clear-and-Convincing Standard**

With respect to Griffin's testimony that she was raped in a school bathroom or at the dance, Doe contends that Griffin, under FRE § 602 lacks the requisite personal knowledge to testify to the truth of those events because she has already admitted that she cannot confirm the events actually happened to her. (See e.g. Exhibit "A", *Rosenblatt Decl*. Ex .6 [Bate Stamp RD 019]) ("There was no smoking gun, no physical evidence, no tangible proof. There had been no witness."). Throughout the book, Griffin writes that she is uncertain and unsure that the underlying events at the core of this lawsuit even happened to her or are an admixture of other people's experiences. (*See* Exhibit "A", *Rosenblatt Decl*. Ex .6 [Bate Stamp RD 015]) ("Through the prism of Claudia I experienced the horror of what was being done to me"). For the reasons stated in Section V.E, supra, testimony resting on those admittedly unverifiable memories cannot supply clear-and-convincing proof of falsity or actual malice.

**d. Even Under the Rule 56 Standard, the Expert Opinion Forecast in the Complaint Is Inadmissible and Cannot Carry Griffin's Burden.**

The Complaint forecasts expert testimony that Griffin's memories "were recovered before the drug took effect." (ECF 1, Compl. ¶ 25.) Even if the Court reaches the evidence under the Rule 56 standard, that opinion fails for several reasons.

*First*, the opinion cannot satisfy Rule 702. The proponent of expert testimony must demonstrate by a preponderance of the evidence that the opinion rests on sufficient facts, reliable principles, and a reliable application of those principles to the case. Fed. R. Evid. 702 (as amended Dec. 1, 2023); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–95 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). No methodology permits an expert to determine, years after the fact and without contemporaneous pharmacological data, the precise moment at which MDMA "took effect" in a particular patient — much less that specific memories surfaced before that moment. The opinion necessarily rests on a single input: Griffin's own subjective, after-the-fact self-report of her internal experience. An opinion that merely repackages the party's say-so is inadmissible *ipse dixit*. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.).

*Second*, to the extent the expert would go further and opine that Griffin's recovered memories are accurate — that the events they depict actually occurred — the testimony is barred as vouching. An expert "has no personal knowledge" of the alleged abuser's conduct and cannot testify as to the credibility of Plaintiff's specific allegations of abuse." *Doe v. County of Los Angeles*, 2025 WL 3190789, at *4 (C.D. Cal. Oct. 28, 2025); *R.D. v. Shohola, Inc.*, 2019 WL 6053223, at *6 (M.D. Pa. Nov. 15, 2019) (courts "uniformly agree" such testimony is improper) (collecting cases); *see also Isely v. Capuchin Province*, 877 F. Supp. 1055, 1067 (E.D. Mich. 1995) (expert may describe memory science generally but may not opine on whether the plaintiff's memories are true).

*Third*, even if admitted, the opinion proves nothing material. When a memory surfaced says nothing about whether the remembered event occurred. The expert does not — and cannot — supply the corroboration Griffin admits does not exist, restore the personal knowledge Rule 602 requires, or establish by clear and convincing evidence that the central events happened to Griffin rather than to Doe. An opinion about the sequence of a therapy session cannot substitute for evidence of a rape that Griffin concedes she "would never know for sure" occurred. (See Exhibit "A", *Rosenblatt Decl*. Ex .6 [Bate Stamp RD036]). Accordingly, whether the Court evaluates this motion under the Rule 12(b)(6) standard or the Rule 56 standard, Griffin cannot demonstrate a probability of prevailing.

**7. Griffin's Complaint Is Intended to Silence Doe's Voice—The Exact Harm the Anti-SLAPP Statute Was Designed to Prevent**

Anti-SLAPP targets meritless litigation used to punish and silence speech on public issues. *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002). Here, Griffin filed this Nevada defamation action on the same day she filed her anti-SLAPP motion in California (which she lost on Order, July 31, 2026,

26STCV07012), and while refusing in discovery to identify who she claims is the real "Claudia." (See Exhibit “A”, *Rosenblatt Decl*. ¶¶ 2–4, Exs. 2 & 4.) The Complaint itself shows Doe's statements arose from a public-interest investigation and publication, and from protected petitioning activity in the California lawsuit. (ECF 1, Compl. ¶¶ 1, 10–11, 45–47, 65, 71–76, 78–81, 94–97.) That repackaging of the same dispute in a second forum is precisely the litigation abuse the anti-SLAPP statute remedies; the Court should grant this motion and award Doe her fees and costs.

### D. THE PRESENT ANTI-SLAPP MOTION IS SUBJECT TO THE PREVIOUSLY FILED MOTION TO DISMISS AND MOTION TO STAY

As stated in Doe's filing on July 1, 2026, Doe contends that the merits of the present anti-SLAPP motion are intertwined with the previously filed motion to dismiss and motion to stay because this action requires examination of a compulsory counterclaim that should, if anywhere, be litigated in the pending California action. (See Motion to Dismiss, ECF 17). Accordingly, Doe incorporates by reference all arguments from her motion to dismiss and motion to stay and abate, including those under Colorado River principles. Specifically, Doe contends that the present defamation claim is the product of forum-shopping and is purposefully designed to create duplicative litigation in order to scatter Ms. Doe's limited resources.

## III.

## CONCLUSION

For the foregoing reasons, Doe respectfully requests that the Court grant this special motion, strike Griffin's defamation claims in their entirety, and award Doe her attorney fees and costs under NRS 41.670.

DATED this 10th day of August 2026.

**HAWKINS MELENDREZ, P.C.**

*/s/ Christopher M. Keller*
CHRISTOPHER M. KELLER, ESQ.
Nevada Bar No. 7399
1645 Village Center Circle, Suite 160
Las Vegas, Nevada 89134

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rules of Civil Procedure 5(b), I hereby certify that on the 17th day of August 2026, I served a true and correct copy of the foregoing **SPECIAL MOTION TO STRIKE UNDER NRS 41.660** by electronically filing and served upon all parties and counsel of record appearing on the Court's electronic service list through the Court's electronic filing and service system.

*/s/ Donna Simpson*
An employee of Hawkins Melendrez, P.C.