Mitchell J. Langberg, Nevada Bar #10118
Thomas A. Clare, P.C.*
Elizabeth M. Locke, P.C.*
Eric D. Hageman*
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
202-628-7401
mitch@clarelocke.com
tom@clarelocke.com
libby@clarelocke.com
eric.hageman@clarelocke.com
**Appearing* Pro Hac Vice

*Attorneys for Plaintiff*
*Amy Griffin*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Amy Griffin,<br>Plaintiff,<br>v.<br>Joleene Altum,<br>Defendant. | Case No.: 2:26-cv-01811-GMN-DJA<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE** |

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 3

ARGUMENT ..... 6

I. Altum Fails to Show that NRS § 41.660 Protects the Relevant Statements. ..... 6

- A. Altum Has Not Shown the Statements Were Connected to an Issue of Public Interest. ..... 7
- B. Altum Has Not Shown that the Statements Are Protected Petitioning. ..... 9
- C. Altum Has Not Shown that Her Statements Were Truthful or Made Without Knowledge of Falsehood. ..... 10

II. Griffin Demonstrates a Probability of Prevailing at Trial. ..... 13

- A. Altum Misidentifies the Governing Standard. ..... 14
- B. The Complaint Pleads Plausible Claims Against Altum. ..... 14
  - 1. Altum Does Not Attack Falsity, Defamatory Nature, or Damages. ..... 14
  - 2. Griffin's Complaint Pleads Unprivileged Publication. ..... 16
  - 3. Griffin's Complaint Sufficiently Pleads Actual Malice. ..... 16
- C. If the Court Reaches the Evidence, the Rule 56 Standard Governs, and the Court Must Permit Discovery Before Issuing a Ruling. ..... 18
- D. Even if the Court Does Not Allow Discovery, Griffin's Evidence Satisfies the *Prima Facie* Standard. ..... 19
  - 1. Altum's Evidentiary Objections Are Misplaced. ..... 19
  - 2. Griffin's Evidence of Actual Malice Satisfies the *Prima Facie* Standard. ..... 21

III. Altum's Compulsory Counterclaim Argument Is Improper. ..... 24

CONCLUSION ..... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988) ..... 16

*Atigeo LLC v. Offshore Ltd., D*,
2014 WL 239096 (W.D. Wash. Jan. 22, 2014) ..... 2

*Bank of Am., N.A. v. Sunset Ridge Ltd. Homeowners Ass'n*,
2019 WL 1440252 (D. Nev. Mar. 29, 2019) ..... 20

*Baral v. Schnitt*,
376 P.3d 604 (Cal. 2016) ..... 9

*Barnes v. Scotch Pine Homeowners Ass'n*,
2022 WL 17087693 (Nev. Nov. 18, 2022) ..... 9, 11

*Bonni v. St. Joseph Health Sys.*,
491 P.3d 1058 (Cal. 2021) ..... 9

*Branda v. Sanford*,
97 Nev. 643 (1981) ..... 15

*Celle v. Filipino Rep. Enters., Inc.*,
209 F.3d 163 (2d Cir. 2000) ..... 21, 22

*Coker v. Sassone*,
432 P.3d 746 (Nev. 2019) ..... passim

*Davis v. Wells Fargo Bank, N.A.*,
2026 WL 1662640 (D. Nev. June 9, 2026) ..... 17

*Del Casal v. Kurt K. Harris, Esq., P.C.*,
553 P.3d 457 (Nev. Ct. App. 2024) ..... 17

*Del Webb Conservation Holding Corp. v. Tolman*,
44 F. Supp. 2d 1105 (D. Nev. 1999) ..... 16

*Delucchi v. Songer*,
396 P.3d 826 (Nev. 2017) ..... 6

*Doe v. Griffin*,
No. 26STCV07012 (Cal. Super. Ct. L.A. Cnty.) ..... 5

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938) ..... 16

*FilmOn.com, Inc. v. DoubleVerify, Inc.*,
439 P.3d 1156 (Cal. 2019) ..... 8

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) ..... 16

*Goldberg v. Barreca*,
2017 WL 3671292 (D. Nev. Aug. 24, 2017) .......... 2

*Goldwater v. Ginzburg*,
414 F.2d 324 (2d Cir. 1969) .......... 21

*Harris v. City of Seattle*,
152 F. App'x 565 (9th Cir. 2005) .......... 21

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989) .......... 21, 22

*Head v. Wilkie*,
784 F. App'x 503 (9th Cir. 2019) .......... 18

*Herbert v. Lando*,
441 U.S. 153 (1979) .......... 21

*Humphries v. Button*,
2025 WL 2421224 (D. Nev. Aug. 20, 2025) .......... 14

*Hutchinson v. Proxmire*,
443 U.S. 111 (1979) .......... 17

*Indep. Towers of Wash. v. Washington*,
350 F.3d 925 (9th Cir. 2003) .......... 24

*K-Mart Corp. v. Washington*,
866 P.2d 274 (Nev. 1993) .......... 15

*Kosor v. Olympia Cos.*,
478 P.3d 390 (Nev. 2020) .......... 7

*LaPeer v. City of Henderson*,
2024 WL 3639922 (D. Nev. Aug. 1, 2024) .......... 11

*Las Vegas Sun v. Franklin*,
329 P.2d 867 (Nev. 1958) .......... 15

*Lieberman v. KCOP Television, Inc.*,
1 Cal. Rptr. 3d 536 (Ct. App. 2003) .......... 7

*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
470 U.S. 373 (1985) .......... 21

*Milk Specialties Co. v. Sandair Corp.*,
753 F. Supp. 3d 1043 (E.D. Cal. 2024) .......... 15, 24

*Moreira-Brown v. Las Vegas Review J., Inc.*,
648 F. Supp. 3d 1278 (D. Nev. 2023) .......... 8

*Padda v. Hendrick*,
2020 WL 1903191 (Nev. Apr. 16, 2020) .......... 7

*Patin v. Ton Vinh Lee*,
429 P.3d 1248 (Nev. 2018) .......... 9

Pegasus v. Reno Newspapers, Inc.,
57 P.3d 82 (2002) .......... passim

*People ex rel. Fire Ins. Exchange v. Anapol*,
150 Cal. Rptr. 3d 224 (Ct. App. 2012) .......... 7

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir. 2018) .......... 6, 14, 19

*Ruth v. Carter*,
2024 WL 4903262 (Nev. Nov. 26, 2024) .......... 2, 10, 13

*Shapiro v. Welt*,
389 P.3d 262 (Nev. 2017) .......... 6, 8, 9

*Spirtos v. Yemenidjian*,
499 P.3d 611 (Nev. 2021) .......... 6, 10

*St. Amant v. Thompson*,
390 U.S. 727 (1968) .......... 21, 23

*Stern v. Cosby*,
645 F. Supp. 2d 258 (S.D.N.Y. 2009) .......... 22

*Tatum v. City & Cnty. of S.F.*,
441 F.3d 1090 (9th Cir. 2006) .......... 19

*Taus v. Loftus*,
151 P.3d 1185 (Cal. 2007) .......... 7

*Taylor v. Colon*,
482 P.3d 1212 (Nev. 2020) .......... 11

*Tyla D. v. MGM Resorts Int'l*,
2024 WL 4839744 (D. Nev. Nov. 19, 2024) .......... 20

*United States v. Haili,*
443 F.2d 1295 (9th Cir. 1971) .......... 20

*Williams v. Lazer*,
495 P.3d 93 (Nev. 2021) .......... 11

*Wilson v. Cable News Network, Inc.*,
444 P.3d 706 (Cal. 2019) .......... 8

*Wynn v. Associated Press*,
555 P.3d 272 (Nev. 2024),
*cert. denied*, 145 S. Ct. 1434 (2025) .......... 11, 14

*Zerangue v. TSP Newspapers, Inc.*,
814 F.2d 1066 (5th Cir. 1987) .......... 21

**Statutes**

Cal. Civ. Code § 47 ........ 16
Cal. Civ. Proc. Code § 425.16 ........ 5, 7
Cal. Civ. Proc. Code § 426.30 ........ 24
NRS § 41.637 ........ *passim*
NRS § 41.660 ........ *passim*
NRS § 41.665 ........ 1, 14

**Rules**

Fed. R. Civ. P. 12 ........ 15
Fed. R. Civ. P. 56 ........ 22
Fed. R. Evid. 801 ........ 23
Fed. R. Evid. 805 ........ 23
Fed. R. Evid. 901 ........ 22

Plaintiff Amy Griffin hereby submits this Memorandum of Points and Authorities in Opposition to Defendant Joleene Altum's Special Motion to Strike.

**INTRODUCTION**

The most important part of Altum's motion is what it does *not* argue: that Griffin stole Altum's story of child sexual abuse to write *The Tell*. The motion does not question that Griffin adequately pleaded that Altum said Griffin appropriated her story, that this statement was false, or that Altum knew it was false. Nor does Altum offer evidence that would call these allegations into question. The motion focuses instead on proving that Altum was abused as a child, a proposition Griffin's complaint does not question, *see* Compl. ¶¶ 2 n.1, 79–80, 96–98. In reality, the gravamen of the complaint is not Altum's childhood but instead Altum's assertion to *The New York Times* that Griffin tracked her down, met her in 2019, and deployed a former reality television star posing as a talent agent to extract the details of Altum's life story. The fact that Altum is unable to defend that account defeats her position at every turn.

Nevada's anti-SLAPP statute serves as a screening device with a narrow and specific purpose: to dispose quickly of meritless lawsuits. *See Coker v. Sassone*, 432 P.3d 746, 748 (Nev. 2019). The analysis proceeds in two steps. At the first step, the movant must establish, by a preponderance of the evidence, that she made a "good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS § 41.660(3)(a). That communication must fall within one of the four categories set forth in NRS § 41.637 and be "truthful or . . . made without knowledge of its falsehood." Only if the movant carries that burden does the burden shift, and then only to require the plaintiff to "demonstrate[] with prima facie evidence a probability of prevailing on the claim." NRS § 41.665(1)–(2). Altum's motion does not satisfy that framework.

At step one, Altum produces declarations attesting that she was sexually assaulted as a child. But the statements that defamed Griffin were that Griffin tracked down and met with Altum in 2019, deployed a reality television personality named Dominique Price to extract the details of her abuse, and published Altum's trauma as her own in *The Tell*. Compl. ¶¶ 79–80, 96–98.

Altum's declarations say nothing about these accusations.[1] In truth, Altum told the *Times* that Griffin employed Price, after which Price told the *Times* that he had never heard of Altum, Griffin, or *The Tell*. Compl. ¶¶ 4, 48–52 & Ex. A (Price Aff.) ¶¶ 5, 15–22.

As to whether Altum made her statements in good faith, Altum argues that Griffin pleaded actual malice as to the *Times*, not as to her. But the Complaint alleges that Altum knew that Griffin did not steal Altum's story—it alleges specifically that Altum did not meet with Griffin in 2019 and that Price did not contact Altum in 2022. Compl. ¶¶ 3–4, 51, 54. Altum could not possibly have believed in good faith that she met with Griffin or was contacted by Price when in fact those events did not occur. *Ruth v. Carter*, 2024 WL 4903262, at *3 (Nev. Nov. 26, 2024) (unpublished table decision) (where plaintiff established the assault "did not and could not have occurred," accuser's statements describing it "would perforce be made with knowledge of their falsity"). And, to be clear, Altum is not even arguing at this juncture that she told the truth about those events. She does not defend the truth of her theory that she met with Griffin or was contacted by Price.[2]

Even if prong one were satisfied, Griffin easily satisfies prong two's prima facie evidence threshold. With regard to falsity, Griffin recorded accounts of abuse as early as 2020, two years before, on Altum's account, Griffin began extracting details of sexual abuse through Price. And in 2021, Griffin gave a two-hour, recorded interview to the Amarillo Police Department. Compl.

---

[1] Altum attaches a declaration from the California proceedings that does discuss these topics but develops no argument on that basis. To the extent that declaration is considered now, it is contradicted by Price's affidavit and other evidence discussed below.

[2] Altum mentions in passing her meeting Griffin for coffee but fails to develop any argument establishing that event's truth. Mot. at 6–7. Her supplemental declaration does not discuss either the coffee meeting or the interactions with Price. *See* ECF No. 32-7, Supplemental Declaration of Joleene Altum ("Altum Decl."). Altum attaches a declaration she filed in the California action that does discuss these topics, but her motion does not cite those portions of that declaration. Any argument that they support her position now is waived. This Court should disregard portions of the declaration that contain "factual arguments, opinions, and plaintiffs' characterizations of the evidence" that are not found "in the motion's memorandum of points and authorities." *Goldberg v. Barreca*, 2017 WL 3671292, at *3 (D. Nev. Aug. 24, 2017); *see id.* ("An affidavit or declaration is not a place for legal and factual argument on the merits of a case . . . ." (citations omitted)); *see also Atigeo LLC v. Offshore Ltd., D*, 2014 WL 239096, at *8 (W.D. Wash. Jan. 22, 2014) (disregarding "new issues and evidence" raised in reply brief in anti-SLAPP inquiry).

¶¶ 6, 26–27, 62, 76 & Ex. F. With regard to actual malice, the complaint alleges that Altum was told before publication that her account was demonstrably false. *Id.* ¶¶ 47, 55. Moreover, Price has avowed that he has never met Altum or Griffin or posed as a talent agent to extract a story.

Altum's remaining arguments fare no better. She invokes the litigation privilege, arguing that Griffin is really attacking claims Altum made in a March 2026 complaint against Griffin. This is wrong. Griffin's two claims arise squarely and solely from statements Altum made to *Times* reporters beginning in June 2025 and published on September 24, 2025—five months before the California complaint existed. Compl. ¶¶ 79–81, 95–97. Altum's California pleading is relevant in that it is evidence of what she told the paper. *Id.* ¶ 46 n.15. But a defendant cannot immunize defamatory statements by later repeating them in a lawsuit.

Finally, the motion "incorporates by reference all arguments" from a separate motion to dismiss and stay and asserts that this action is "the product of forum-shopping." Mot. at 19. But forum and abstention doctrines are not among the determinations set forth in NRS § 41.660.

## FACTUAL BACKGROUND

***Griffin Records and Reports Her Abuse***. Griffin spent years in traditional therapy addressing a persistent sense that something in her childhood was unaccounted for, accompanied by physical symptoms and an inexplicable fixation on a dress she had lent a middle-school classmate. Compl. ¶¶ 18–19, 21; Ex. 1, Declaration of Amy Griffin in Support of Plaintiff's Opposition to Defendant's Special Motion to Strike ("Griffin Decl."), ¶ 4. Griffin began MDMA-assisted therapy in 2020 and came to relearn her memories of abuse across three sessions. The first memory resurfaced within minutes of administration and, according to an expert who reviewed the sessions, before the drug took effect. Compl. ¶¶ 22–25; Griffin Decl. ¶ 7. In those sessions, she encountered detailed memories of repeated, brutal rapes at Stephen F. Austin Middle School in Amarillo, Texas. Compl. ¶¶ 23–24; Griffin Decl. ¶ 7. She recorded the memories in journals beginning in 2020. Compl. ¶¶ 6, 27, 62; Griffin Decl. ¶¶ 9–10.

In 2021, she gave a recorded interview to an Amarillo Police Department detective. *Id.* ¶ 26; *see* Griffin Decl. ¶¶ 12–13, Ex. 1-L (recording of interview) & Ex. 1-A (transcript of same). By March 2022, Griffin had completed a full draft of a long-form article that would eventually

become *The Tell*, which was reviewed by a literary agent. Compl. ¶ 27; Griffin Decl. ¶¶ 16–17, 19. In August 2022, that agent encouraged her to expand the article into a book. Compl. ¶ 28; Griffin Decl. ¶ 19. On or about March 6, 2023, her literary agent circulated the book proposal. Compl. ¶ 29; *see also* Griffin Decl. ¶ 20. On April 21, 2023, while writing, Griffin met a woman later pseudonymized in *The Tell* as "Claudia" at a coffee shop thousands of miles from Palm Springs, in a meeting attended by her collaborator Sam Lansky and documented at the time. Compl. ¶ 5; Griffin Decl. ¶¶ 25–27; Ex. 4, Declaration of Sam Lansky in Support of Plaintiff's Opposition to Defendant's Special Motion to Strike ("Lansky Decl."), ¶¶ 11–12. *The Tell* was published on March 11, 2025. Compl. ¶ 30; Griffin Decl. ¶ 22.

***The Times Goes Looking for "Claudia" and Finds Altum Instead.*** In spring 2025, *Times* reporter Katherine Rosman began investigating the memoir. Compl. ¶¶ 8, 31. With Elisabeth Egan, she spent four months interviewing more than eighty people, working from middle-school yearbook class lists. *Id.* ¶¶ 34–39. The reporters obtained a confidential, watermarked copy of Griffin's book proposal, which stated that Claudia might have grown up in a children's home. This detail was cut from the published book because Griffin met the real Claudia after the proposal circulated and learned Claudia was not raised in a children's home. *Id.* ¶¶ 9, 40. Following that red herring, the reporters found Altum, who did grow up in a children's home, and contacted her by Facebook message on June 17, 2025. *Id.* ¶¶ 10, 41, 42; Ex. 2, Declaration of Mitchell J. Langberg in Support of Plaintiff's Opposition to Defendant's Special Motion to Strike ("Langberg Decl."), ¶ 3 & Ex. 2-A. The *Times* then mailed Altum the book, which she received on or about June 28, 2025. Compl. ¶ 43 & Ex. D. Only afterward did she claim that Griffin had stolen her experiences to write *The Tell*. *Id.* ¶¶ 7, 43.

***Altum's Accusations Prove Untrue.*** Altum's accusations were then proven false to the *Times*. A September 12, 2025, fact check the *Times* sent Griffin shows that Altum told the reporters that she is "Claudia"; that she borrowed a floral-patterned dress from Griffin for a school dance and returned it, stained, at a church youth group meeting at Griffin's home; that she met Griffin for coffee and received from Griffin a pre-addressed postcard; and that Griffin appropriated her experiences of abuse to write *The Tell*. Compl. ¶¶ 45–46, 96; Griffin Decl.

¶¶ 41–42 & Ex. 1-N. Altum separately told Rosman that Griffin had employed Price to pose as a talent agent and extract the details of her abuse. Compl. ¶ 48. Each of those accusations is testable against the documentary record, and none of them survives it.

Altum's Price accusation similarly collapsed even before the article ran. On September 5, 2025, Price told Rosman by telephone that he had never heard of Altum,[3] Griffin, or *The Tell*, had never worked for a talent or casting agency, and had never solicited an abuse narrative from anyone. Compl. ¶¶ 49–52 & Ex. A ¶¶ 5–8, 15–22. The article ran with a silhouetted photograph of Altum taken in Las Vegas, where she lives. *Id.* ¶¶ 10, 66; *see* Langberg Decl. ¶ 14 & Ex. 2-D.

***The California Action.*** On March 4, 2026, Altum sued Griffin in Los Angeles Superior Court, asserting claims for intrusion upon seclusion, publication of private facts, false light, intentional and negligent infliction of emotional distress, unfair business practices, and negligence. Compl. ¶ 71; Langberg Decl. ¶ 11 & Ex. 2-B.[4] Altum's complaint provided substantially more detail as to what she had told the *Times*: that the alleged meeting with Griffin took place in Palm Springs in 2019 but that the two women did *not* discuss sexual abuse at the meeting. On Altum's account, in April 2022, Price reached out to Altum to begin extracting her story. Langberg Decl. ¶ 11 & Ex. 2-B ¶¶ 20–21, 41–43, 49–52. On June 30, 2026, the Superior Court indicated it would sanction Altum's attorneys for failing to produce evidence the complaint itself referenced. Langberg Decl. ¶ 12 & Ex. 2-C (granting defendant's motion to compel further responses to special interrogatories and for monetary sanctions). Griffin moved to strike that complaint under Cal. Civ. Proc. Code § 425.16 and demurred. Langberg Decl. ¶ 13. On July 31, 2026, the court denied the motion as to four of the six claims against Griffin and *sua sponte* declined to consider two transcripts Griffin submitted. Mot. at 4–5; Ex. A (Rosenblatt Decl., Ex. 8).

---

[3] Altum is referred to in Price's affidavit as "a specific woman whose name I did not recognize." Price Aff. ¶ 16.

[4] As set out fully in Griffin's opposition to Altum's motion to dismiss, Altum's claims present legal and factual issues that are distinct from the issues to be decided in this case.

## ARGUMENT

**I. Altum Fails to Show that NRS § 41.660 Protects the Relevant Statements.**

To prevail at the first prong, Altum must show by a preponderance of the evidence that Griffin's claims are based on a communication that fits one of the four categories enumerated in NRS § 41.637 and was "truthful or . . . made without knowledge of its falsehood." *Delucchi v. Songer*, 396 P.3d 826, 833 (Nev. 2017); *Shapiro v. Welt*, 389 P.3d 262, 268 (Nev. 2017) ("no communication falls within the purview of NRS § 41.660 unless it is 'truthful or is made without knowledge of its falsehood'"). She fails on both fronts.

Altum invokes two of the four categories. She cites the fourth category, which encompasses a "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum." NRS § 41.637(4); Mot. at 5–8. But she never shows that her statements concern the public interest, nor does she argue that they were made in a public forum. She also relies on the third category, which covers statements made in litigation. But Griffin's claims are based on what Altum told the *Times*, not her pleadings in California.

As to good faith, Altum attests that she was sexually assaulted as a child but supplies no basis for the accusation that Griffin stole that account and published it as her own. The record refutes it on every checkable detail. *See Spirtos v. Yemenidjian*, 499 P.3d 611, 616 (Nev. 2021) ("NRS 41.660(3)(a) unambiguously provides that the district court should evaluate the statement forming the basis of the plaintiff's complaint").

Because Altum fails at prong one, the Court need not reach prong two. *See Coker*, 432 P.3d at 751. And to the extent her motion mounts a factual rather than a legal challenge, it cannot be granted without discovery. *See Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 833–34 (9th Cir. 2018).

* * *

As an initial matter, Altum briefs prong one almost entirely on California law. Mot. at 6–8. It is true that Nevada has adopted California's guiding principles for determining whether a communication concerns "an issue of public interest" under NRS § 41.637(4). *Shapiro*, 389 P.3d at 267–68. But that borrowing is persuasive, not binding, and it is premised on textual similarity.

*See Padda v. Hendrick*, 2020 WL 1903191, at *2 (Nev. Apr. 16, 2020) (unpublished) ("California's jurisprudence is not relevant where California's anti-SLAPP law differs from Nevada's."); *Kosor v. Olympia Cos.*, 478 P.3d 390, 396 (Nev. 2020) (where Nevada's language differs, foreign precedent "by which we are not bound in any case—becomes even less persuasive"); *Coker*, 432 P.3d at 751 (rejecting a construction that would "render the specific limits set forth in NRS 41.637 meaningless").

Two textual differences defeat wholesale importation here. *First*, Nevada's list of protected communications is narrower than California's. California recognizes four categories, the last a catch-all covering "any other conduct in furtherance of" the constitutional rights of petition and free speech "in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(4). Nevada's corresponding category protects only a "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum." NRS § 41.637(4). *Second*, Nevada conditions all four of its categories on good faith. California imposes no such requirement. Thus, Altum's reliance on California precedent that does not address the requirements of NRS § 41.637 is misplaced. *See, e.g.*, Mot. at 6–8 (citing *Lieberman v. KCOP Television, Inc.*, 1 Cal. Rptr. 3d 536, 542 (Ct. App. 2003) (newsgathering was "in furtherance of" free speech under § 425.16(e)(4)); *Taus v. Loftus*, 151 P.3d 1185, 1204 (Cal. 2007) (analyzing researchers' investigation under the same catch-all); *People ex rel. Fire Ins. Exchange v. Anapol*, 150 Cal. Rptr. 3d 224, 228 (Ct. App. 2012) (no discussion of NRS § 41.637's categories or its good-faith clause)).

### A. Altum Has Not Shown the Statements Were Connected to an Issue of Public Interest.

Altum alleges her statements to the *Times* "concerned a matter of public interest under NRS § 41.637(4) and § 425.16(e)(3)–(4): the reliability of recovered memories and the use of MDMA-assisted therapy in trauma treatment."[5] Mot. at 6. Griffin does not dispute that recovered

[5] Altum also seems to suggest that her statements concerned the public interest because they were part of the *Times*' reporting and thus were "in furtherance of" newsgathering. Once again, this argument relies on California's anti-SLAPP statute. There is no such provision in Nevada's

memory and MDMA-assisted therapy are matters of public interest. But the statute asks whether the communication was made "in direct connection with" one. NRS § 41.637(4) . That condition is not met here.

When determining whether a statement was made in direct connection with an issue of public interest, courts look to the principles outlined in *Shapiro*, 389 P.3d at 268. Here, the statements are not covered under at least three of the five principles. The third principle requires "some degree of closeness between the challenged statements and the asserted public interest." *Id.* at 268. Altum claimed that Griffin phoned her, met her for coffee, and hired a man to extract her memories. Compl. ¶¶ 46–48; Langberg Decl. ¶ 11 & Ex. 2-B. Those are assertions about interactions between the two women, not MDMA therapy. *Coker*, 432 P.3d at 750–51; *Wilson v. Cable News Network, Inc.*, 444 P.3d 706, 725–26 (Cal. 2019) (statements about "an isolated plagiarism incident did not contribute to public debate about when authors may or may not borrow without attribution"); *FilmOn.com, Inc. v. DoubleVerify, Inc.*, 439 P.3d 1156, 1165 (Cal. 2019) (courts must ask "what functional relationship exists between the speech and the public conversation").

The fourth principle is that the focus must be "the public interest rather than a mere effort to gather ammunition for another round of private controversy." *Shapiro*, 389 P.3d at 268. Here, there is evidence Altum was building her lawsuit against Griffin long before she filed it, and possibly before she made her statements to the *Times*. Thirty-seven days after the article ran—and 124 days before any complaint was filed—Altum's counsel created and circulated William Bryan Jennings' declaration (which she submits in support of her motion) for signature on pleading paper. ECF No. 32-3, Declaration of William Bryan Jennings ("Jennings Decl.") (audit trail). This creates a plausible inference that the *Times* statements were in furtherance of the lawsuit Altum filed in March.

---

statute. Even if there were, newsgathering and reporting do not immediately fall within the protected categories. *Cf. Moreira-Brown v. Las Vegas Review J., Inc.*, 648 F. Supp. 3d 1278, 1287–88 (D. Nev. 2023) (newspaper and its reporter's article "largely reported on the allegations in [a] complaint," and the court relied on the absence of "evidence suggesting that the defendants were trying to 'gather ammunition for another round of private controversy'").

Finally, the fifth principle is that a speaker "cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people." *Shapiro*, 389 P.3d at 268. Altum swears the assaults were "among the most private and painful facts of [her] life" and that she "did not disclose [her] story to the media or in any public forum." ECF No. 32-2, Declaration of Jane Doe ("Doe Decl.") ¶¶ 6, 23, 25. Indeed, the premise of her California lawsuit is that the information was private, and not in the public interest. Langberg Decl. ¶ 11 & Ex. 2-B ¶¶ 36–40, 102, 105–110; *accord Barnes v. Scotch Pine Homeowners Ass'n*, No. 82348, 2022 WL 17087693, at *2 (Nev. Nov. 18, 2022) (communications "shared privately" that do not affect a substantial number of people). Altum's choice to make her statements to the *Times* does not transform them into a matter of public interest.[6]

**B. Altum Has Not Shown that the Statements Are Protected Petitioning.**

Altum argues that Griffin's complaint attacks statements made in the California lawsuit, which constitute protected petitioning under NRS § 41.637(3). Mot. at 7. That is incorrect. Both counts identify the actionable statements as those made to *Times* reporters "[b]eginning in or about June 2025." Compl. ¶¶ 79–81, 95–96; *see id.* ¶ 46 n.15 ("Griffin's defamation claims are not predicated on Altum's complaint."). "Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." *Baral v. Schnitt*, 376 P.3d 604, 615 (Cal. 2016); *accord Bonni v. St. Joseph Health Sys.*, 491 P.3d 1058, 1068 (Cal. 2021). Independently, statements made between June and September 2025 cannot have been made "in direct connection with an issue under consideration by a . . . judicial body" when no proceeding existed until March 4, 2026. *Patin v. Ton Vinh Lee*, 429 P.3d 1248, 1251 (Nev. 2018). Altum's authorities all concern claims premised on filings or their

[6] NRS § 41.637(4) imposes a second requirement that Altum does not address: the communication must be made "in a place open to the public or in a public forum." It is Altum's burden to prove that NRS § 41.637(4) applies, and the motion does not even attempt to satisfy this second requirement. Altum does not identify where she spoke, does not assert that the place was open to the public, and does not even mention the clause. Thus, Altum has failed to demonstrate her statements are covered by NRS § 41.637(4). *See Coker*, 432 P.3d at 750 (movant's failure to submit evidence defeated the showing required at prong one).

enforcement; none holds that a statement made to the press nine months before suit becomes petitioning because the speaker later files one.

For these reasons, Altum has not shown that her statements fall within NRS § 41.637(3) or (4). The special motion fails for this reason alone. *See Coker*, 432 P.3d at 751.

**C. Altum Has Not Shown that Her Statements Were Truthful or Made Without Knowledge of Falsehood.**

Altum's motion also fails to demonstrate that she made her statements truthfully or believing them in good faith to be true. Altum argues that her supplemental declaration ends the inquiry because she "spoke about her own life." Mot. at 8. It does not. Griffin does not challenge the statements she made to the *Times* regarding her childhood. And nothing in Altum's motion permits the Court to collapse those statements into the defamatory statements. *Cf. Ruth*, 2024 WL 4903262, at *2 (accuser's communications carried two stings—that Carter assaulted her, and that he was a "serial" rapist who assaulted others—which "are distinct and thus [the court] analyze[s] them separately," reaching opposite results). Altum's supplemental declaration attests, in the most general terms, that she said nothing knowingly false to the *Times*. Altum Decl. ¶¶ 5, 8, 10. But this threadbare assertion does nothing to cure this deficiency. *See Spirtos*, 499 P.3d at 618 ("Absent a factual basis for why Spirtos believed his alleged statement regarding Yemenidjian's involvement in corruption was true, Spirtos necessarily failed to establish by a preponderance of the evidence that his statement, as alleged by Yemenidjian, was 'truthful or [was] made without knowledge of its falsehood.'" (quoting NRS § 41.637)). Altum also speculates that Griffin "most certainly could have already known from childhood" that Altum was abused. Doe Decl. ¶ 29. But in the same breath, Altum states that she did not tell Griffin about her abuse as a child. *Id.* ("I did not discuss my own childhood sexual assaults with Amy at this meeting. I did not tell her that I had been assaulted by a teacher at Stephen F. Austin Middle School, nor did I share details about the Sadie Hawkins dance, the soiled floral dress, or the bathroom assault."). She does not ever attest that she told Griffin about her abuse. Instead, she concedes that she had "no meaningful contact with Amy Griffin for decades" after middle school. *Id.* ¶ 5.

Altum told the *Times* that Griffin telephoned her out of the blue in 2019, met her for coffee in Palm Springs, exchanged postcards, and deployed Price to pose as a talent agent and extract her story. Compl. ¶¶ 45–48, 80, 96(a)–(j); *see* Langberg Decl. ¶ 11 & Ex. 2-B. Her supplemental declaration says those statements were "based on": "my childhood in foster care, my experience involving a borrowed floral dress for the eighth-grade dance, the assault I experienced at that dance, the return of the dress afterward, and the later assault in the school bathroom." Altum Decl. ¶ 6. Every item is an event in Altum's own life in 1989. The present declarations do *not* attest to the truthfulness of her statements about the phone call, the meeting, the postcards, and Price—all the allegations that relate to the theft. Altum thus establishes facts no one disputes while supplying no basis for the accusation actually challenged. *See Spirtos*, 499 P.3d at 618 (declaration "listed several factual bases" for believing a licensing process corrupt but "contained no factual bases for why he believed Yemenidjian was involved," such that the movant "necessarily failed to establish by a preponderance of the evidence" good faith); *Coker*, 432 P.3d at 750 (movant's proof that he bought lithographs in bulk was beside the point where the claim was based on representing them as originals); *see also supra* n.2.

This deficiency is compounded by Griffin's evidence. On prong one, the Court must consider and weigh the record evidence bearing on good faith. *Taylor v. Colon*, 482 P.3d 1212, 1218 (Nev. 2020) ("[C]ontradictory evidence in the record may undermine a defendant's sworn declaration establishing good faith."); *Wynn v. Associated Press*, 555 P.3d 272, 277 (Nev. 2024), *cert. denied*, 145 S. Ct. 1434 (2025) (considering the plaintiff's contradictory evidence at prong one); *Williams v. Lazer*, 495 P.3d 93, 98 (Nev. 2021) (examining whether the plaintiff's declarations "constituted contrary evidence to refute" the movant's affidavit). NRS § 41.660(3)(a) imposes a preponderance standard, and it takes little to defeat an affidavit. *Barnes*, 2022 WL 17087693, at *2 (reversing prong-one dismissal where the opponents' attachments "suggested some degree of falsity . . . and cast doubt on their good faith motivations"); *LaPeer v. City of Henderson*, 2024 WL 3639922, at *8–9 (D. Nev. Aug. 1, 2024) (finding movant's declaration was "not sufficient evidence of the good faith requirement, especially in light of [the

plaintiff's] evidence to the contrary," where movant failed to state affirmatively that his accusations "were truthful or made without knowledge of falsehood").

The record shows that Altum did not believe the theft statements when she made them. *First*, Price has sworn that he never communicated with Griffin, never posed as a talent agent, had never heard of *The Tell*, and that he told Rosman exactly that on September 5, 2025, nineteen days before publication. Price Aff. ¶¶ 5–8, 10–17, 19–22; Compl. ¶¶ 49–52. Altum thus described to the *Times* conversations that, on Price's sworn account, never occurred—and a speaker who recounts a conversation that never happened cannot have believed it did. The only document Altum has produced for the Price calls is a phone number written sideways in the margin of meeting minutes dated March 22, 2023, and her explanation is that she flipped the pages forward. Compl. ¶ 76 & Ex. F; Langberg Decl. ¶ 8; Doe Decl. ¶ 33.

*Second*, Griffin never traveled to Palm Springs in 2018, 2019, or 2020, never telephoned Altum, and never gave her a postcard; Altum has not produced any ticket, receipt, photograph, phone record, or message to the contrary. Griffin Decl. ¶¶ 31-34; Langberg Decl. ¶ 9; Compl. ¶ 46 & Ex. E.

*Third*, Griffin records and relays memories of her abuse before Altum alleges she stole them. On August 31, 2021, Griffin described to Detective Gordon Eatley the Austin Day dance, the "poofy" floral dress, the rape at that dance, the school bathroom, and the teacher's cowboy boot on her back—eight months before Altum alleges Price called her in April 2022, and nineteen months before the March 2023 date her own document supports. Griffin Decl. ¶¶ 13-14 & Ex. 1-A; Langberg Decl. ¶ 18 & Ex. 2-F ("Eatley Aff.") ¶¶ 3–10 (attesting to the Aug. 31, 2021 conversation and authenticating the recording); Ex. 3, Declaration of Jerrod Mills ("Mills Decl."), ¶¶ 2–8 (authenticating redactions to the recording). Griffin also submits portions of her journal entries beginning July 19, 2020, and a complete draft article finished in March 2022. Griffin Decl. ¶¶ 9–10, 16–17 & Exs. 1-B–1-E. Griffin could not have stolen in 2022 or 2023 what she wrote down in 2020 and recounted to a detective in 2021.

*Fourth*, Altum's accounts have shifted as she learns more from Griffin. These indicate that Altum spoke to the *Times* with knowledge of falsity. For example, the dress Griffin lent

"Claudia" is described in *The Tell* as "floral-patterned" to protect the real Claudia's identity; the dress the real Claudia borrowed was pink. Griffin Decl. ¶ 29 & Exs. 1-F–1-G; Lansky Decl. ¶¶ 15-16. Altum did not know this when she spoke to the *Times*, and so she identified the dress in the same way the book did. Compl. ¶ 56; Griffin Decl. ¶ 42 & Ex. 1-N (fact-check document). Then, after Griffin produced evidence in the California action that the dress was actually pink, Griffin Decl. ¶ 29 & Ex. 1-M; Langberg Decl. ¶ 10, Altum started recounting that the dress was "pink and had pastel colors," Doe Decl. ¶ 8, while still calling it "floral" in the same document, *id.* at ¶¶ 9, 15, 21, 29, 36, 52, 55, 62; *see also* Doe Decl. ¶ 8 ("puffy and decorated with flowers – it was pink and had pastel colors").

Taken together with Price's affidavit, the absence of any Palm Springs contact, and Griffin's contemporaneous 2020 and 2021 records, Griffin's evidence "if believed," establishes that the theft "did not and could not have occurred" in the way Altum claims, so her statements were "made with knowledge of their falsity." *Ruth*, 2024 WL 4903262, at *3.

Moreover, the five declarations Altum presents do not corroborate the alleged theft. The Amarillo witnesses attest to events in 1989, and the only one who mentions Griffin reached his conclusion after reading the book. Jennings Decl. ¶¶ 4–10; ECF No. 32-4, Declaration of Tonya Francine VanDenBosch ("VanDenBosch Decl.") ¶¶ 4–8. Barnett's recollection of the boot-and-bandana details surfaced only after she read a *People* article reciting them. ECF No. 32-5, Declaration of LaRhonda Nichole Barnett ("Barnett Decl.") ¶¶ 9–10. Pastor Shelton matched Altum to a description of "Claudia" from Griffin's book proposal. ECF No. 32-6, Declaration of Pastor Jody Shelton ("Shelton Decl.") ¶¶ 4–6 & Ex. 1. None of Altum's witnesses say anything about the theft of a story.

## II. Griffin Demonstrates a Probability of Prevailing at Trial.

Altum argues both that the Complaint "is not legally sufficient" under Rule 12(b)(6), Mot. at 9–13, and that it fails "the Rule 56 standard" because Griffin "cannot prove falsity or actual malice by clear and convincing evidence." Mot. at 13, 15. An anti-SLAPP motion that challenges "the legal sufficiency" of a complaint is evaluated "under the Rule 12(b)(6) standard," but "if it is a factual challenge, then the motion must be treated as though it were a motion for summary

judgment and discovery must be permitted." *Planned Parenthood*, 890 F.3d at 833–34. The complaint survives both challenges.

To plead defamation, Griffin must show: "(1) a false and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Humphries v. Button*, 2025 WL 2421224, at *17 (D. Nev. Aug. 20, 2025). When a defamation plaintiff is a public figure, she "must show that the statements were made with 'actual malice.'" *Id*. (citation omitted).

**A. Altum Misidentifies the Governing Standard.**

Altum is correct that if Griffin were a public figure, a jury must find clear and convincing evidence of actual malice, "command[ing] the unhesitating assent of every reasonable mind." Mot. at 13–15 (citation omitted). But that standard does not apply squarely to Altum's motion. Under NRS § 41.665(2), a plaintiff's "evidence at the second prong must be sufficient for a jury to conclude that standard has been satisfied if the evidence is credited." *Wynn*, 555 P.3d at 279. "[T]he requirement that evidence of actual malice if viewed favorably could meet the clear and convincing standard is merely a part of the plaintiff's *prima facie* showing." *Id.* At this stage, Griffin's burden is merely to plead facts that, if taken as true and credited by a jury, would let that jury find actual malice by clear and convincing evidence.

**B. The Complaint Pleads Plausible Claims Against Altum.**

Altum's motion attacks a claim Griffin did not plead. Altum's prong-two argument is devoted to arguing that Griffin cannot prove that Griffin was raped, pointing to acknowledgments in *The Tell* that there were "no witnesses" and "no smoking gun." Mot. at 14–15, 17–18. But the assertion at issue here is that Griffin stole Altum's story. Compl. ¶¶ 1, 80, 96–98. Griffin "takes no position on whether Altum has been sexually abused." *Id.* ¶ 2 n.1. The theft accusation is false regardless of any uncertainty *The Tell* evinces.

**1. Altum Does Not Attack Falsity, Defamatory Nature, or Damages.**

Altum fails to argue that the statements the complaint attacks were not false or defamatory or that Griffin has not pleaded damages. And the complaint sufficiently pleads those elements. It pleads that Griffin did not steal Altum's story. Compl. ¶¶ 2–7, 45–70, 78–107; *see* Griffin Decl.

¶ 8. As discussed above, the motion defends the truth of Altum's account of child sex abuse, not the truth of her theft accusation. A statement is defamatory when, "under any reasonable definition[,] [it] would tend to lower the subject in the estimation of the community and to excite derogatory opinions against him and to hold him up to contempt." *Las Vegas Sun v. Franklin*, 329 P.2d 867, 869 (Nev. 1958). Nevada considers statements defamatory *per se* if they impute the commission of a crime or "the person's lack of fitness for trade, business, or profession." *K-Mart Corp. v. Washington*, 866 P.2d 274, 282 (Nev. 1993).

Griffin's *per se* claim rests on Altum's direct statement to the *Times* that Griffin had stolen her story of abuse. Compl. ¶ 80. Griffin's implication claim is based on a series of factual statements that, taken together, falsely implied Griffin appropriated Altum's account of childhood sexual abuse. *Id.* ¶ 96. Both the direct statement and the implication carry the same defamatory sting: that Griffin stole Altum's story. *Id.* ¶¶ 83, 100. That is defamatory *per se* both because it accuses Griffin of a crime (falsely reporting child sexual abuse to the Amarillo police) and because it maligns Griffin in her profession as an author and public advocate for sexual abuse survivors.[7]

In cases of defamation *per se*, the plaintiff need not set forth proof of special damages but instead may recover general damages, including "harm which normally results from such a defamation." *K-Mart*, 866 P.2d at 284. Altum presents no argument in her motion on Griffin's claim for damages, presumed or actual, and thus any argument on this element is waived. *Cf. Milk Specialties Co. v. Sandair Corp.*, 753 F. Supp. 3d 1043, 1047 n.3 (E.D. Cal. 2024).

Even if the statements were not defamatory *per se*, Griffin adequately pleads special damages. The Nevada Supreme Court has defined "special damages" as "those which 'flow directly from the injury to reputation caused by the defamation; not from the effects of the defamation.'" *Branda v. Sanford*, 97 Nev. 643, 647 n.2 (1981). The Supreme Court has held that actual injury in a defamation action is "not limited to out-of-pocket loss"; it includes "impairment

---

[7] Griffin's claims are not based on other language in the article that was penned by *Times*' reporters. Griffin's claims are based solely on Altum's statements to the *Times* reporters. *See* Griffin Decl. ¶ 42, Ex. 1-N (fact-check document).

of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974). Griffin's Complaint sufficiently pleads each kind. *See* Compl. ¶¶ 67, 70 (alleging severe reputational damage); *id.* ¶¶ 68, 91, 107 (expenses incurred attempting to correct public record); *id.* ¶¶ 13, 69, 90, 106 (loss of business opportunities and investments and diversion of time); *id.* ¶¶ 91, 107 (mental anguish); *see* Griffin Decl. ¶¶ 44-47.

**2. Griffin's Complaint Pleads Unprivileged Publication.**

Altum contends that Cal. Civ. Code § 47(b)'s litigation privilege renders her statements "non-actionable as a matter of law" and forecloses Griffin's ability to carry her prong-two burden on any claim "predicated on [Altum]'s California pleading and litigation communications." Mot. at 10–11. This is wrong for two reasons.

*First*, under *Erie* doctrine, a federal court sitting in diversity applies the substantive state law of the forum, which is Nevada. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). *Second*, the immunity granted by Nevada common law governs liability, not admissibility. "[S]tatements of fact contained in a brief may be considered admissions of the party in the discretion of the court." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988). This Court has looked to a party's statements in separate proceedings as evidence bearing on whether a triable issue existed. *See, e.g.*, *Del Webb Conservation Holding Corp. v. Tolman*, 44 F. Supp. 2d 1105, 1112 (D. Nev. 1999). Altum's factual assertions in her California complaint are evidence, but they are clearly not the statements at the core of Griffin's complaint.

**3. Griffin's Complaint Sufficiently Pleads Actual Malice.**

Altum contends that Griffin is a public figure who must plead actual malice to maintain this action and that Griffin fails to plead it. But Altum does not adequately develop her argument that Griffin was a public figure when Altum made her statements. Nevada recognizes two categories of public figure: general and limited-purpose. A general public figure is a person of such "pervasive fame or notoriety" as to be public "for all purposes and in all contexts." *Gertz*, 418 U.S. at 351. A limited-purpose public figure is someone whose role in an ongoing, public controversy renders her a fair target for legitimate reporting. When determining whether a

plaintiff is a limited-purpose public figure, courts "consider whether (i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected [her]self into the controversy for the purpose of influencing the controversy's ultimate resolution." *Davis v. Wells Fargo Bank, N.A.*, 2026 WL 1662640, at *8 (D. Nev. June 9, 2026).

Here, Altum fails to specify which type of public figure Griffin may be. Altum merely observes that Griffin is a billionaire, a bestselling author, and a speaker. Construed as an argument that Griffin is a general-purpose public figure, it cannot stand. This Court has recently held that reality-television exposure and selling a product nationwide with national marketing may supply "public exposure but not necessarily the level of influence associated with general purpose public figures." *Id.* Indeed, the *Times* found the memoir's success remarkable precisely because "not that many people have ever heard of Amy Griffin." Compl. ¶ 32. Altum asserts that Griffin "holds herself out as a celebrity." *Id.* She provides no evidence to support that proposition. And even if Griffin had held herself out as a celebrity, "[s]elf-identifying as a celebrity does not automatically make [a plaintiff] a public figure under the law." *Davis*, 2026 WL 1662640, at *8.[8]

Even assuming Griffin is a public figure, Griffin adequately pleads actual malice. Actual malice is proven when a statement is published "with knowledge that it was false or with reckless disregard for its veracity." *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 92–93 (Nev. 2002). "Reckless disregard for the truth may be found when the 'defendant entertained serious doubts as to the truth of the statement, but published it anyway.'" *Id.* (citation omitted). Contrary to Altum's assertion that Griffin must plead direct facts showing Altum's state of mind,

---

[8] Construing the motion's position as an argument for status as a limited-purpose public figure fares no better. For this category to apply, "a public controversy" must have "existed when the statements were made." *Id.*; *see Del Casal v. Kurt K. Harris, Esq., P.C.*, 553 P.3d 457, 465 (Nev. Ct. App. 2024). No public controversy existed in June 2025, before Altum defamed Griffin to the *Times*. There was a well-reviewed memoir and no dispute about it at all. Altum's argument fails because "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979).

"[r]ecklessness or actual malice may be established through cumulative evidence of negligence, motive, and intent." *Id.*

The Complaint sufficiently pleads Altum's state of mind. It alleges that Altum did not know *The Tell* existed until *Times* reporters contacted her on June 17, 2025, that the *Times* then mailed her the book, and that she accused Griffin of theft only after she received and read it. Compl. ¶¶ 7, 41–43 & Exs. C & D. It alleges what Altum knew when she made those statements: that she did not meet Griffin in 2019, that Griffin had never telephoned her or given her a postcard, that she never told Griffin about her abuse, and that Price never extracted her story. *Id.* ¶¶ 53–54(a)–(h), 57. The Complaint alleges that Griffin's counsel told the *Times* before publication that the account was demonstrably false and that the *Times* relayed as much to Altum during fact-checking. *Id.* ¶¶ 47, 55. It alleges that a detail Altum offered as corroboration—the "floral" dress—tracked the published book rather than her own life because the dress the real Claudia borrowed was pink, a detail altered to protect Claudia's identity. *Id.* ¶ 56. It alleges that Griffin recorded these memories in journals beginning in 2020, recounted them to an Amarillo detective in 2021, and completed a draft in March 2022, all before Altum says the appropriation began. *Id.* ¶¶ 6, 26–27, 62, 76 & Ex. F.[9]

### C. If the Court Reaches the Evidence, the Rule 56 Standard Governs, and the Court Must Permit Discovery Before Issuing a Ruling.

Griffin submits the following argument out of an abundance of caution and does not concede that it is proper to adjudicate Altum's fact-based arguments before Griffin conducts discovery. *Head v. Wilkie*, 784 F. App'x 503, 506 (9th Cir. 2019) (unpublished) (discovery should be allowed where "a summary judgment motion is filed . . . before a party has had any realistic opportunity to pursue discovery relating to [her] theory of the case"). As set out in Griffin's pending Motion to Extend the Briefing Schedule (ECF No. 35), Altum asks the Court to resolve her Motion "under the Rule 56 standard" and to hold that Griffin "cannot prove falsity

---

[9] The motion asserts that the complaint "plead[s] only element-tracking labels." But Paragraph 87, which Altum cites in her motion, begins with the statement "[f]or the reasons set forth in detail above."

or actual malice by clear and convincing evidence." Mot. at 13, 15. Altum raises a factual challenge, and so her "motion must be treated as though it were a motion for summary judgment and discovery must be permitted." *Planned Parenthood*, 890 F.3d at 833–34; *see Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1100–01 (9th Cir. 2006). Accordingly, Griffin respectfully requests that the Court deny Altum's Motion or defer consideration and allow Griffin's opposition to be supplemented after discovery.

**D. Even if the Court Does Not Allow Discovery, Griffin's Evidence Satisfies the *Prima Facie* Standard.**

As noted above, Griffin relies on Altum's statements as reflected in the *Times*' fact-check and article. Griffin's claims are based on Altum's statements to the *Times* reporters, not on statements penned by the *Times*' reporters. The *Times* details many of Altum's claims in the fact-check document it sent Griffin. Griffin Decl. ¶¶ 41–42 & Ex. 1-N.

Altum's accusations are refuted by the timeline: Griffin recorded her abuse in her journals beginning in 2020, reported it to police in 2021, and completed a full draft by March 2022, all before Altum says Price began extracting her story over the phone in April 2022. Griffin Decl. ¶ 9 & Exs. 1-B & 1-C (journal entries); ¶¶ 12–13 & Exs. 1-A & 1-L (Detective Eatley interview); ¶ 16 & Ex. 1-E (first draft). The meeting Altum described is refuted by Griffin's absence from Palm Springs in 2018, 2019, or 2020 and by Altum's own discovery responses producing nothing to corroborate it. Compl. Ex. E; Langberg Decl. ¶ 9. Even more obviously false is Altum's allegation of how Griffin stole her story. Price posing as a talent agent is refuted by Price's sworn affidavit. Price Aff. ¶¶ 5–8, 15–22. Additionally, the dance and dress details that Altum cites in an attempt to support her accusation track the published book rather than the real events: the dress the real Claudia borrowed was pink, not floral, and the change was made in editing, as the drafting record Griffin produced establishes. These facts are set out at greater length above.

**1. Altum's Evidentiary Objections Are Misplaced.**

Altum raises several evidentiary objections that are premature. Under Rule 56(c), evidence opposing summary judgment need not itself be admissible but only *potentially* admissible at trial. Fed. R. Civ. P. 56(c)(2); *see, e.g.*, *Bank of Am., N.A. v. Sunset Ridge Ltd.*

*Homeowners Ass'n*, 2019 WL 1440252, at *6 n.2 (D. Nev. Mar. 29, 2019) (rejecting authentication, personal-knowledge, and disclosure objections to an affidavit, finding its contents "could be provided in admissible form at trial"). And even if Altum's evidentiary objections were ripe, they fail on their own terms.

***Griffin's Statements are Admissible.*** Altum asks the Court to take judicial notice of Griffin's memoir and argues that the manner in which Griffin recovered her memories makes them inadmissible. Mot. at 13. While the Court can take judicial notice of the fact that the book exists, that does not amount to noticing the *contents*. *See Tyla D. v. MGM Resorts Int'l*, 2024 WL 4839744, at *5 (D. Nev. Nov. 19, 2024) (declining to take notice of truth of statements inside a book). Perceived weakness in how a witness recalls an experience goes to the weight of the testimony, not admissibility. *See United States v. Haili,* 443 F.2d 1295, 1299 (9th Cir. 1971) (allowing testimony of a witness who admitted to being under the influence of heavy drug use at the time of the incident). In any event, the memories that are relevant now are Griffin's recollection that she did not steal Altum's story to write *The Tell*. Those memories were not recovered via MDMA therapy.

***The Eatley Recording and Lansky Transcript Are Authenticated and Offered for a Non-Hearsay Purpose.*** Detective Gordon Eatley has attested that he interviewed Griffin on August 31, 2021, regarding her report of childhood sexual abuse, that the interview was recorded, and that the recording is accurate. Eatley Aff. ¶¶ 2–10; Griffin Decl. ¶¶ 12–13 & Exs. 1-A & 1-L. This satisfies knowledge and voice identification. Fed. R. Evid. 901(b)(1), (b)(5). The recording's transcript is not hearsay because it is offered only to establish that Griffin described these events to a law enforcement officer on that date, well before Altum claims Price began extracting her story. *See* Fed. R. Evid. 801(c)(2). Because the recording is not offered for its truth, Altum's discussion of Rule 801(d)(2), *Williamson*, and Rule 805, *see* Mot. at 16–17, is beside the point.[10] The same can be said of the Lansky transcript, which is offered only to prove

[10] Altum argues that Judge Fruin's July 31, 2026, order declining to consider the Eatley transcript binds this Court. Mot. at 17–18. But that ruling applied the California Evidence Code on a record without Detective Eatley's affidavit. And even if the California court had applied federal rules,

the fact that the meeting with the real Claudia occurred in 2023, at a coffee shop far from Palm Springs. *See* Griffin Decl. ¶ 27 & Ex. 1-K; Lansky Decl. ¶¶ 12–14.

***Griffin Is Not Offering an Expert Opinion.*** Altum asks the Court to exclude in advance an expert opinion that Griffin's memories "were recovered before the drug took effect." Mot. at 17–18. Griffin has not disclosed any experts, so there is nothing for the Court to evaluate.

**2. Griffin's Evidence of Actual Malice Satisfies the *Prima Facie* Standard.**

Altum's contention that Griffin must point to some single, dispositive admission to prove actual malice has no basis in Nevada law. Because actual malice is a subjective standard, its direct proof (if any) usually lies in the defendant's possession, and courts have long recognized that it is rarely amenable to summary disposition before discovery. *See, e.g.*, *Herbert v. Lando*, 441 U.S. 153, 170 (1979) ("plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself"). It follows that "a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *see also Pegasus*, 57 P.3d at 92–93.

The categories of circumstantial evidence courts treat as indicators of actual malice include: the defendant's possession of information contradicting the published claim;[11] publication of a claim that is inherently improbable;[12] an account that is fabricated or "the product of [the defendant's] imagination";[13] setting out to publish in conformity with a preconceived storyline;[14] failure to conduct a sufficient investigation, and in particular the purposeful

---

the deficiency Altum invokes now has been cured. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (state ruling has the effect state court would give it).

[11] *Harte-Hanks*, 491 U.S. at 682, 692; *Celle v. Filipino Rep. Enters., Inc.*, 209 F.3d 163, 182–83 (2d Cir. 2000); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1070 (5th Cir. 1987).

[12] *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *Celle*, 209 F.3d at 183.

[13] *St. Amant*, 390 U.S. at 732.

[14] *Harris v. City of Seattle*, 152 F. App'x 565, 568 (9th Cir. 2005); *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2d Cir. 1969).

avoidance of the truth;[15] reliance on a source the defendant knew to be unreliable—or on no source at all;[16] and ill will, bias, or improper motive.[17] These categories are addressed below.

***Altum's accusation of theft is fabricated.*** Before June 2025, Altum did not know *The Tell* existed. She had no story of stolen abuse to tell because she did not yet know what the book said. Everything she later told the *Times*—that she is "Claudia," that the dress was "floral" and "poofy," that Griffin "appropriated her experiences"—she learned from *The Tell*. Altum asserts that she "spoke truthfully about her own lived experiences and recognized matching details in *The Tell* only after the *Times* contacted her." Mot. at 14. The book's "Claudia" is a real person Griffin met on April 21, 2023, at a coffee shop far from Palm Springs, in a documented meeting attended by Lansky. Griffin Decl. ¶ 25 & Exs. 1-I–1-J; Lansky Decl. ¶¶ 9–12. The dress the real Claudia borrowed was pink; the published description as "floral" resulted from an editorial change made to obscure her identity, as the drafting record produced to Altum on May 29, 2026, establishes. Griffin Decl. ¶ 29 & Exs. 1-F, 1-G & 1-M; Langberg Decl. ¶ 10; Lansky Decl. ¶¶ 15–16.

Griffin was not in Palm Springs in 2018, 2019, or 2020 and has never telephoned Altum. Griffin Decl. ¶¶ 32–33. Altum has produced no document, communication, photograph, receipt, or travel record substantiating the meeting. Langberg Decl. ¶ 9.

Finally, Altum's account requires that Price began extracting her story in April 2022. Doe Decl. ¶ 32. After twice responding in discovery that she "does not possess any written documents or communications with Price" and that she "is unable to comply with the request as the category of documents are no longer accessible because they took place using an old smartphone that [she] no longer possesses," Altum produced on June 10, 2026, a note in the margins of meeting minutes dated March 22, 2023. Compl. Exs. B, E & F; Langberg Decl. ¶¶ 6–8.

---

[15] *Harte-Hanks*, 491 U.S. at 667–68, 688, 692–93.

[16] *Stern v. Cosby*, 645 F. Supp. 2d 258, 278 (S.D.N.Y. 2009).

[17] *Harte-Hanks*, 491 U.S. at 668; *Celle*, 209 F.3d at 183; *see Pegasus*, 57 P.3d at 92–93 ("motive, and intent").

***Altum's account is inherently improbable.*** On her retelling, Griffin identified a classmate she had not seen in three decades, resolved in 2019 to appropriate her undisclosed history, underwent MDMA-assisted therapy in 2020 to stage a false recovery, reported the fabricated memories to the Amarillo Police Department in 2021, and then, months later, dispatched an agent to learn what she had already written. Griffin Decl. ¶¶ 5–9; Doe Decl. ¶¶ 27–31, 32–48. That accusation is "so inherently improbable that only a reckless [person] would have put [it] in circulation." *St. Amant*, 390 U.S. at 732.

***Altum is in possession of information contradicting her claim.*** Price has sworn under oath that he has never communicated with Griffin, Lansky, Penguin Random House, or The Dial Press, never worked for a casting or talent agency, and never solicited an abuse narrative from anyone. Price Aff. ¶¶ 5–8, 15–22. He told Rosman as much on September 5, 2025. *Id.* ¶ 10. Without that link, nothing connects Griffin to Altum's memories at all. Altum knew before publication that the *Times* had run the claim to ground and could not sustain it.

Price was then entirely omitted from the *Times*' article. It is implausible that Altum first learned at the time of publication that her central accusation had been investigated and abandoned. Altum was told, or at a minimum understood, that the *Times* could not verify her claims involving Price. That should have provided Altum "serious doubts as to the truth of the statement." *Pegasus*, 57 P.3d at 92–93. Moreover, Altum has never retracted, including after receiving Price's sworn affidavit on June 11, 2026, and a written retraction demand on June 14, 2026. Langberg Decl. ¶ 16 & Ex. 2-E.

In sum, the record shows Altum did not know the book existed until a *Times* reporter told her; Altum learned its contents from that reporter and then adopted them as her own; Altum named a stranger as the instrument of a conspiracy; Altum very likely knew the *Times* contacted the alleged conspirator and received a denial; and Altum has not produced a single document connecting her to Griffin in the last three decades and has given contradictory explanations for that failure. In any event, Griffin need not prove any of this conclusively today. Griffin need only make a *prima facie* showing. Griffin easily satisfies this burden and does so on a record largely of Altum's own making.

### III. Altum's Compulsory Counterclaim Argument Is Improper.

Finally, Altum states that "the merits of the present anti-SLAPP motion are intertwined with the previously filed motion to dismiss and motion to stay," and then "incorporates by reference all arguments from her motion to dismiss and motion to stay and abate, including those under *Colorado River* principles." Mot. at 19. Courts in this Circuit do not entertain contentions that a litigant has not "specifically and distinctly" advanced. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003). She has waived the point. *See Milk Specialties*, 753 F. Supp. 3d at 1047 n.3. Furthermore, NRS § 41.660 does not encompass *forum non conveniens* or *Colorado River* theories, both of which are methods by which a court declines to exercise jurisdiction over a lawsuit regardless of the lawsuit's merit. In any event, California's compulsory cross-complaint statute applies only to claims brought *after* the defendant in the first-filed action has answered. Cal. Civ. Proc. Code § 426.30(a). Griffin has not answered in California and does not intend to. Langberg Decl. ¶ 13.

## CONCLUSION

The Court should deny Altum's motion. Alternatively, the Court should defer any ruling until after discovery has proceeded in the manner described above.

DATED this 31st day of August, 2026.

Respectfully submitted,

CLARE LOCKE LLP

By: */s/ Mitchell J. Langberg*
Mitchell J. Langberg (#10118)
Thomas A. Clare *
Elizabeth M. Locke*
Eric D. Hageman*
**Appearing* Pro Hac Vice

*Attorneys for Plaintiff*
*Amy Griffin*

LR IA 11-1(b)(2) Designation (for service only):

Travis Chance, Esq.
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone: 702-464-7096
Facsimile: 702-382-8135
Email: tchance@bhfs.com